00273826

# CLASSICAL RECEIVABLES FUNDING COMPANY, L.L.C.

## Government Receivables Financing Program

## LOAN AGREEMENT

dated as of

July 15, 1996

| | |
|---|---|
| **LENDER:** | Classical Receivables Funding Company, L.L.C., a Tennessee limited liability company |
| **BORROWER:** | American Renovation & Construction Company |
| **BORROWER ENTITY TYPE:** | Corporation |
| **BORROWER JURISDICTION:** | California |
| **BORROWER'S ADDRESS (CHIEF EXECUTIVE OFFICE):** | 3645 Camino Del Rio South<br>San Diego, California 92108-4004<br>Attention: Kimberly K. McMahon, Treasurer<br>Telecopy No.: (619) 284-8120 |
| **GUARANTOR(S):** | Ivan Velasquez, Anthony P. Dethloff, Kimberly K. McMahon, Francis N. Todd, II, Blanche Richardson and Anthony J. Jemison |
| **COMMITMENT DATE:** | April 26, 1996 |
| **COMMITMENT ACCEPTANCE DATE:** | May 22, 1996 |
| **INITIAL COMMITMENT AMOUNT:** | U.S. $2,000,000 |
| **INITIAL MANAGEMENT FEE:** | U.S. $343,583.00 |
| **ADVANCE RATE:** | ninety percent (90%) |
| **COMMITMENT TERMINATION DATE:** | August 22, 1997 |

**DATE OF LATEST FINANCIAL STATEMENTS:** April 30, 1996

**INTEREST RATE:**

Variable rate of two percent (2.0%) per annum above the prime rate for commercial loans as announced or quoted from time to time by First Union National Bank of North Carolina from its principal offices in Charlotte, North Carolina (the "Prime Rate"), computed on the basis of the actual number of days elapsed over a year of 360 days.

**LOAN PERIOD COMMENCEMENT DATE(S):** The 15th day of each calendar month.

**PROCESSING AND ADMINISTRATION FEE:** $75.00 per Request for Advance.

**SERVICER:** Classical Receivables Funding Company, L.L.C.

**SERVICER'S ADDRESS:**

4646 Poplar Avenue
Suite 213
Memphis, Tennessee 38117-4432
Attn: Dennis R. Terhune, Operating Manager
Facsimile No.: (901) 682-6022

**THIS LOAN AGREEMENT** is made by and between Borrower and Lender identified on the cover page hereof.

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars ($10.00) in hand paid, the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree as follows:

## ARTICLE 1. Definitions.

For the purposes of this Agreement, the terms *"Lender"*, *"Borrower"*, *"Borrower Entity Type"*, *"Borrower Jurisdiction"*, *"Borrower's Address"*, *"Guarantor"*, *"Commitment Date"*, *"Commitment Acceptance Date"*, *"Initial Commitment Amount"*, *"Initial Management Fee"*, *"Advance Rate"*, *"Commitment Termination Date"*, *Date of Latest Financial Statements"*, *"Loan Period Commencement Date(s)"*, *"Processing and Administration Fee"*, *"Servicer", and "Servicer's Address"* shall have the meanings set forth on the cover page hereof, and, unless the context otherwise requires, the terms defined in this Section shall for all purposes of this Agreement have the following meanings:

*"Account"* shall mean any right to payment for goods sold or leased or for services rendered or for expenses incurred or advanced which is not evidenced by an instrument or chattel paper, whether or not earned by performance.

*"Account Debtor"* shall mean any Person who is or may become obligated in respect of an Account.

*"Additional Management Fee"* shall mean any Management Fee as shall become payable by Borrower hereunder from time to time other than the Initial Management Fee, as shall be set forth in a Supplemental Commitment Letter.

*"Advance"* or *"Advances"* shall mean the amount advanced by Lender to Borrower as proceeds of the Loan pursuant to Article 2 hereof on the occasion of any borrowing to fund performance by Borrower of a Designated Contract.

*"Agreement"* shall mean this Agreement.

*"Agreement Date"* shall mean the date as of which this Agreement is dated, as set forth on the cover page hereof.

*"Applicable Law"* shall mean in respect of any Person, all provisions of constitutions, statutes, rules, regulations and orders of governmental bodies or regulatory agencies applicable to such Person, and all orders and decrees of all courts and arbitrators in

proceedings or actions to which the Person in question is a party or by which such Person or its properties are bound.

*"Assignment"* shall mean the Assignment and Security Agreement dated as of the Agreement Date, from Borrower to Lender and assigned by Lender to the Collateral Trustee, in form and substance approved by Lender.

*"Assignment of Claims Act"* shall mean the federal Assignment of Claims Act of 1940 (31 U.S.C. Section 203 et seq., as amended).

*"Authorized Signatory"* shall mean such senior personnel of Borrower as may be duly authorized and designated in writing by Borrower to execute documents, agreements and instruments on behalf of Borrower.

*"Borrowing Base"* shall mean, at any date of the determination thereof, an amount equal to the lesser of (a) the amount of the Commitment, or (b) an amount equal to the product of the Advance Rate multiplied by the net amount of Eligible Receivables. For purposes hereof, the net amount of Eligible Receivables of Borrower at any time shall be the face amount of such Eligible Receivables less any and all returns, rebates, discounts (which may, at Lender's option, be calculated on shortest terms), sales taxes, credits, allowances or excise taxes of any nature at any time issued, owing, claimed by the Account Debtors, granted, outstanding or payable in connection with such Eligible Receivables at such time.

*"Borrowing Base Certificate"* shall mean a certificate signed by an Authorized Signatory certifying to Lender the Borrowing Base as of a specific date, in substantially the form of Exhibit A hereto attached and incorporated herein by this reference or in such other form and detail as Lender shall hereafter approve from time to time.

*"Business Day"* shall mean any day other than a Saturday, Sunday or other day on which banks are required or authorized by law to remain closed in Atlanta, Georgia.

*"Collateral"* shall mean and include all Property of Borrower, whether now owned or hereafter acquired by Borrower or in which Borrower has or hereafter acquires any interest, with respect to which Lender has, or is entitled or intended to have, a Lien pursuant to the terms of the Loan Documents.

*"Collateral Trust Agreement"* shall mean the Collateral Trust and Collection Agency Agreement dated as of July 15, 1996, between Lender, the Collateral Trustee and the Funding Source therein named, as amended and supplemented. In the event that the Loan shall hereafter be assigned to a trustee under an agreement other than the Collateral Trust and Collection Agency Agreement referred to in the foregoing sentence (including without limitation the Master Collateral Agreement dated as of August 15, 1995, between Lender and the Collateral Trustee), the term "Collateral Trust Agreement" shall be deemed hereafter to refer to such subsequent Trust Agreement, and if the Trustee thereunder is other

than Reliance Trust Company, the Trustee serving as such under such subsequent Agreement shall be deemed to be the successor to Reliance Trust Company as the Collateral Trustee within the meaning of this Agreement.

"*Collateral Trustee*" shall mean Reliance Trust Company, a Georgia bank having trust powers, in its capacity as the collateral trustee under the Collateral Trust Agreement, and its successors and assigns as the collateral trustee thereunder.

"*Commitment*" shall mean the obligation of Lender to make a Loan to Borrower in an aggregate principal amount not to exceed the Commitment Amount, subject to the terms and conditions hereof.

"*Commitment Amount*" shall mean the Initial Commitment Amount as it may be adjusted from time to time by amendment to this Agreement.

"*Commitment Letter*" shall mean the commitment letter from Lender to Borrower dated the Commitment Date and accepted by Borrower and the Guarantor on the Commitment Acceptance Date pursuant to which Lender shall have committed to provide the financial accommodations described herein to Borrower.

"*Commitment Termination Date*" shall mean the date identified as such on the cover page hereof, as such date may be extended from time to time at the option of Lender, or such earlier date as the Commitment shall be terminated as provided herein..

"*Default Rate*" shall mean a per annum interest rate equal to the interest rate set forth on the cover page hereof, plus five (5.0) percentage points.

"*Designated Contract*" shall mean a contract for sale or lease of goods or for services to be rendered between Borrower and the United States of America or any department, agency or instrumentality thereof which is identified as a Designated Contract under the Assignment or any supplement thereto.

"*Effective Advance Date*" for any Advance shall be the Loan Period Commencement Date next preceding the date of such Advance, unless the date of such Advance is a Loan Period Commencement Date, in which case the Effective Advance Date shall be the date of such Advance.

"*Effective Credit Date*" for repayment of the Loan in whole or part shall be the last day of the Loan Period when such repayment is received by Lender.

"*Eligible Receivable*" shall mean an Account arising under a Designated Contract in the ordinary course of Borrower's business, in which the Collateral Trustee has a first-priority Lien therein for the benefit of Lender pursuant to the Loan Documents, and as to which (i) Borrower shall have assigned its right to payment of such Account to the Collateral

Trustee or other designee of Lender, in a manner satisfactory to Lender, so as to comply with the Assignment of Claims Act; (ii) the Account shall have been approved for payment in writing by a supervisory federal officer on behalf of the Account Debtor; and (iii) the Collateral Trustee shall have received evidence of such approval for payment and the authority of the person executing such approval satisfactory to Lender. Without limiting the generality of the foregoing, no Account of Borrower shall be an Eligible Receivable (and any Account which was formerly an Eligible Receivable shall cease to be such) if:

(a) It is unpaid for more than seventy-five (75) days after the original due date shown on the related invoice;

(b) It is due or unpaid more than one hundred five (105) days after the original invoice date;

(c) Any covenant, representation or warranty contained in any Loan Documents with respect to such Account has been breached;

(d) The Account Debtor has disputed liability with respect to such Account, or the Account Debtor has made any claim with respect to any other Account due from such Account Debtor to Borrower, or the Account is or may become subject to any right of setoff by the Account Debtor;

(e) It arises from a sale to the Account Debtor on a bill and hold, guaranteed sale, sale or return, sale on approval, consignment or any other repurchase or return basis;

(f) The goods giving rise to such Account have not been delivered to and accepted by the Account Debtor or the services giving rise to such Account have not been performed by Borrower and accepted by the Account Debtor or the Account otherwise does not represent a final sale with respect to such goods or services;

(g) The Account is evidenced by chattel paper or an instrument, or has been reduced to judgment;

(h) Borrower has made any agreement with the Account Debtor for any deduction therefrom, except for discounts and allowances which are made in the ordinary course of business for prompt payment and which discounts and allowances are reflected in the calculation of the face value of each invoice related to such Account; or

(i) Borrower has made any agreement with the Account Debtor to extend the time of payment thereof.

"*Funding Source*" shall mean, at any time of determination, the financial institution or other lender which has committed to provide moneys to Lender for the purposes of providing moneys to fund Advances made hereunder and other loans which Lender may have committed to make to other borrowers.

"*GAAP*" shall mean, as in effect from time to time, generally accepted accounting principles consistently applied.

"*Guaranty Agreement*" shall mean that certain Guaranty, dated as of the Agreement Date, from a Guarantor in favor of Lender, in form and substance approved by Lender.

"*Lien*" shall mean, with respect to any Property, any security deed, mortgage, deed to secure debt, deed of trust, lien, pledge, assignment, charge, security interest, title retention agreement, levy, execution, seizure, attachment, garnishment, or other encumbrance of any kind in respect of such property, whether or not choate, vested, or perfected.

"*Loan*" shall mean and include all loans and advances made by Lender to or for the benefit of Borrower hereunder or under any of the Loan Documents.

"*Loan Documents*" shall mean this Agreement, the Note, the Assignment, the Guaranty Agreement, the Uniform Commercial Code financing statements required by Applicable Law to perfect the Liens of Lender or the Collateral Trustee for the benefit of Lender, in the Collateral, and all other documents or other instruments or agreements now or hereafter executed in connection herewith.

"*Loan Period*" shall mean the period beginning on each Loan Period Commencement Date and ending on the day immediately preceding the next successive Loan Period Commencement Date.

"*Management Fee*" shall mean the amounts payable by Borrower to Lender under the terms of Section 2.4(a) hereof, and is comprised of the Initial Management Fee and all Additional Management Fees.

"*Materially Adverse Effect*" shall mean the effect of any event or condition which, alone or taken together with all other events or conditions occurring or existing contemporaneously therewith, (a) has or may reasonably be expected to have a material adverse effect upon the business, operations, Properties or condition (financial or otherwise) of Borrower; (b) has or may reasonably be expected to have any material adverse effect whatsoever upon the validity or enforceability of this Agreement or any of the other Loan Documents; (c) has or may reasonably be expected to have any material adverse effect upon the Collateral, the Liens of Lender or the Collateral Trustee for the benefit of Lender with respect to the Collateral, or the priority of such Liens; or (d) materially impairs the ability of Borrower or any Guarantor to perform its obligations under this Agreement or any other Loan Document to which they are respectively a party, or of Lender to enforce and collect

the Obligations of Lender, or the Collateral Trustee for the benefit of Lender, to realize upon any of the Collateral in accordance with the Loan Documents and Applicable Law.

"*Maximum Rate*" shall mean the maximum non-usurious rate of interest permitted by Applicable Law that at any time, or from time to time, may be contracted for, taken, reserved, charged or received on the Indebtedness in question, or, to the extent permitted by Applicable Law, under such Applicable Law that may hereafter be in effect and which allow a higher maximum non-usurious interest rate than Applicable Law now allows.

"*Necessary Authorizations*" shall mean all authorizations, consents, approvals, permits, licenses and exemptions of, filings and registrations with, and reports to, all governmental and other regulatory authorities, whether federal, state or local, and all agencies thereof.

"*Note*" shall mean the promissory note issued by Borrower in the face principal amount of the Commitment Amount, payable on demand to the order of Lender, which indicates by its terms that it is intended to be the "Note" referred to in this Agreement, together with all amendments and supplements thereto, and any other notes executed and delivered by Borrower to Lender hereunder.

"*Obligations*" shall mean all payment and performance duties, liabilities, and obligations of Borrower to Lender, whether now existing or hereafter created, incurred, or arising, and whether direct or indirect, absolute or contingent, primary or secondary, due or to become due, including without limitation, all liabilities now or at any time or times hereafter owing to Lender under this Agreement, the Note and the other Loan Documents.

"*Organizational Documents*" shall mean the charter and other organizational documents of Borrower providing for the incorporation, organization, formation and operation of Borrower, including, without limitation (and as applicable) its articles of incorporation, certificate of incorporation, bylaws, partnership agreement or partnership certificate, articles of organization or operating agreement.

"*Overadvance Condition*" shall mean, at any date, a condition such that the aggregate principal amount of the Loan outstanding to Borrower on such date exceeds the Borrowing Base on such date.

"*Person*" shall mean an individual, corporation, partnership, trust, limited liability company or unincorporated organization, or a government or any agency or political subdivision thereof.

"*Property*" shall mean any interest in any kind of property or asset, whether real or personal, tangible or intangible.

*"Receivables"* shall mean all Accounts arising under Designated Contracts and other Collateral of Borrower in which Lender, or the Collateral Trustee for the benefit of Lender, shall have been granted a Lien pursuant to the Loan Documents.

*"Request for Advance"* shall mean a certificate designated as a "Request for Advance" and signed by an Authorized Signatory requesting an Advance hereunder, which shall be in substantially the form of <u>Exhibit B</u> hereto attached and incorporated herein by this reference.

*"Servicer"* shall mean the servicing institution to whom responsibility for servicing the Loan hereunder has been delegated by Lender, which for all purposes of this Agreement until notification to the contrary is delivered to Borrower by Lender, shall be the Servicer designated on the cover page hereof.

*"Solvent"* shall mean, as to any Person, that such Person has capital sufficient to carry on its businesses and transactions in which it is about to engage and is able to pay its debts as they mature and owns property having a value, both at fair valuation and at present fair saleable value, greater than the amount required to pay its debts.

*"Supplemental Commitment Letter"* shall mean a supplemental commitment letter from Lender to Borrower and accepted by Borrower which provides for change of the Commitment Amount, extension of the Commitment Termination Date, funding with respect to one or more additional Designated Contracts, or other change to or amendment of the provisions of the financial accommodations provided by Lender to Borrower under the terms of this Agreement.

Each definition of a document in this Article 1 shall include such document as amended, modified, supplemented, extended or renewed from time to time in accordance with the terms thereof. Except where the context otherwise requires, definitions imparting the singular shall include the plural and vice versa. Except where specifically restricted, reference to a party to a Loan Document includes that party and its heirs, executors, administrators, personal representatives, successors and permitted assigns.

## ARTICLE 2. The Loan

**2.1** <u>The Loan</u>. Lender agrees, upon the terms and subject to the conditions of this Agreement, to make Advances to Borrower on any Business Day prior to the Commitment Termination Date, upon receipt by Lender of a Request for Advance, in amounts which in the aggregate at any one time outstanding do not exceed the Commitment; <u>provided</u>, <u>however</u>, that Lender shall have no obligation whatsoever to make any Advances to Borrower if, at the time of Borrower's request therefor, the aggregate principal amount of the Loan then exceeds, or would exceed after funding of such Advance, the Borrowing Base. Advances made pursuant to this Section may be repaid and reborrowed in accordance with the terms hereof.

2.2 Manner of Borrowing. Borrower shall request each Advance of the Loan by delivering to Lender a written Request for Advance, accompanied by a current Borrowing Base Certificate, at least three (3) Business Days prior to the day on which the Advance is requested to be made. Notices received no later than 10:00 A.M. (Memphis, Tennessee time) on a Business Day will be deemed to have been received on the date of receipt. Notices received after 10:00 A.M. (Memphis, Tennessee time) on a Business day or at any time on a date which is not a Business Day shall be deemed to have been received on the next Business Day.

2.3 Interest.

(a) On Advances. Subject to the provisions of Section 2.3(b) below, Borrower shall pay interest on the unpaid principal amount of the Advances of the Loan outstanding from the Effective Advance Date with respect to each Advance through the Effective Credit Date for each repayment of principal on the Loan at the fixed per annum interest rate specified on the cover page hereof. Interest on each Advance for the initial Loan Period shall be due and payable in advance on the date such Advance is funded and deducted from the Advance with respect to which the interest is payable, and interest for each successive Loan Period or portion thereof that such Advance is outstanding shall be due and payable, in advance, on the first day of each successive Loan Period, whether or not such Advance remains outstanding for the entire Loan Period. No interest on the Loan which has become payable shall be refundable except to the extent and under the circumstance specified in subdivision (d) of this Section 2.3.

(b) Default Rate/Late Payment Fee. Overdue payments of principal and (to the extent permitted by Applicable Law) interest shall bear interest at the Default Rate and, if not paid within ten (10) days following the due date thereof, shall also be subject to a late payment charge, as and to the extent provided in the Note.

(c) Computation of Interest at a Variable Rate. If the interest rate specified on the cover page hereof is a variable rate of interest, interest will be calculated on a daily basis (computed on the actual number of days elapsed over a year of 360 days) on the principal balance of the Loan outstanding at any time or from time to time. The calculation of interest on the basis of a 360-day year, as opposed to a year of 365 days, results in a higher effective rate of interest hereunder. If the interest rate on the Loan changes during a Loan Period due to a change in the Prime Rate, resulting in an increase or decrease in the amount of interest payable with respect to such month, any such increase shall be payable on the first day of the next succeeding Loan Period and any decrease shall be credited to the interest payment due on the first day of the next succeeding Loan Period.

(d) Maximum Interest. Regardless of any provision contained in this Agreement, the Note or any of the other Loan Documents, in no contingency or event whatsoever shall the aggregate of all amounts that are contracted for, charged or collected pursuant to the terms of this Agreement, the Note or any of the other Loan Documents and that are deemed

interest under Applicable Law, exceed the highest rate permissible under any Applicable Law. No agreements, conditions, provisions or stipulations contained in this Agreement, the Note or any of the other Loan Documents, or Lender's right to demand payment at any time of all or any portion of the Obligations, or the exercise of any option whatsoever contained in any of the Loan Documents, or the prepayment by Borrower of any of the Obligations, or the occurrence of any contingency whatsoever, shall entitle Lender to charge or receive in any event, interest or any charges, amounts, premiums or fees deemed interest by Applicable Law (such interest, charges, amounts, premiums and fees referred to herein collectively as "Interest") in excess of the Maximum Rate, and in no event shall Borrower be obligated to pay Interest exceeding the Maximum Rate, and all agreements, conditions or stipulations, if any, which may in any event or contingency whatsoever operate to bind, obligate or compel Borrower to pay Interest exceeding the Maximum Rate shall be without binding force or effect, at law or in equity, to the extent only of the excess of Interest over the Maximum Rate. If any Interest is charged or received in excess of the Maximum Rate ("Excess"), Borrower acknowledges and stipulates that any such charge or receipt shall be the result of an accident and bona fide error, and the Excess, to the extent received, shall be applied first to reduce the principal of the Obligations and the balance, if any, returned to Borrower, it being the intent of the parties hereto not to enter into a usurious or otherwise illegal relationship. For the purpose of determining whether or not any Excess has been contracted for, charged or received by Lender, all Interest at any time contracted for, charged or received from Borrower in connection with any of the Loan Documents shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated and spread in equal parts throughout the full term of the Obligations. The provisions of this Section shall be deemed to be incorporated into every Loan Document (whether or not any provision of this Section is referred to therein).

2.4 Fees.

(a) Management Fee. As consideration to Lender for processing the application of Borrower for the Loan to be made hereunder and in consideration of the agreement of Lender to manage and facilitate collection of the Accounts arising under Designated Contracts through the Commitment Termination Date, Borrower agrees to pay to Lender the Initial Management Fee. As consideration to Lender for processing the application of Borrower for any change in the Commitment (including an application of Borrower for a Loan or Loans with respect to one or more Designated Contracts in addition to the Designated Contract or Designated Contracts specified in the Commitment Letter) and managing and facilitating collection of Accounts arising under any such additional Designated Contracts and during the period of any extension of the Commitment specified in a Supplemental Commitment Letter Borrower agrees to pay to Lender such Additional Management Fees as may be specified from time to time in one or more Supplemental Commitment Letters executed by Lender and accepted by Borrower.

The Initial Management Fee is payable to Lender only with respect to the Designated Contract or Designated Contracts specified in the Assignment and only with respect to the

Commitment of Lender through the Commitment Termination Date, and is due and payable (subject to the provision for payment in installments hereinafter set forth) on the Agreement Date notwithstanding the fact that Lender has not received all documents required herein to obligate Lender to make the initial Advance hereunder, such fee being fully earned on the Agreement Date and non-refundable when paid. In the event that the Loan Documents are amended to provide for funding by Lender of any additional Designated Contracts or to extend the Commitment Termination Date or to increase the Commitment Amount, Borrower shall pay to Lender the Additional Management Fee (if any) set forth in the Supplemental Commitment Letter with respect thereto, which shall be due and payable (subject to the provision for payment in installments hereinafter set forth) on the date of the amendment of the Loan Documents made pursuant to the Supplemental Commitment Letter (the "Amendment Date") notwithstanding the fact that Lender has not received all documents required herein to obligate Lender to make the any additional Advances contemplated in such Supplemental Commitment Letter, such fee being fully earned on the Amendment Date and non-refundable when paid. The Initial Management Fee shall be paid in a number of equal installments equal to the lesser of (i) ten, or (ii) the number of whole calendar months from the date of the first Advance hereunder until the Commitment Termination Date in effect on the date of such Advance. The first such installment shall be payable on the date of such first Advance, and the remainder of such installments shall be payable on the first day of each month thereafter until such Management Fee shall have been paid in full.

Each Additional Management Fee shall be paid in a number of equal installments equal to the lesser of (i) ten, or (ii) the number of whole calendar months from the date of the first Advance hereunder made subsequent to the Amendment Date until the Commitment Termination Date in effect on the date of such Advance. The first such installment of an Additional Commitment Fee shall be payable on the date of such first Advance subsequent to the Amendment Date, and the remainder of such installments shall be payable on the first day of each month thereafter until such Management Fee shall have been paid in full.

Notwithstanding the foregoing provisions providing for payment of Management Fees in installments, if at any time the aggregate amount of Eligible Receivables pledged under the Loan Documents is less than the aggregate amount of all Obligations (including Management Fees) payable to Lender hereunder, the remaining balance of all such Management Fees shall be immediately due and payable to Lender.

(b) <u>Processing and Administration Fee</u>. Borrower shall pay to Lender the Processing and Administration Fee with respect to each Request for Advance submitted to Lender hereunder, payable at the time each such Advance is made. Such fee shall, at the option of Lender, be deducted from the Advance with respect to which such fee is payable.

(c) <u>Reimbursement of Expenses</u>. Borrower agrees to pay to Lender (i) the legal fees and expenses of legal counsel for Lender associated with preparation of the Commitment Letter and any Supplemental Commitment Letter, preparation of the Loan Documents and all amendments and supplements thereto, supervision of closing, preparation of all required legal

opinions and associated review and legal research, and (ii) the actual out-of-pocket expenses incurred by Lender in administering this Agreement, the Loan Documents and the financial transaction contemplated herein and therein, including communications costs, express document delivery services, filing fees, costs of credit reports and record searches, and the like; provided, that no charge shall be made by Lender to Borrower for salaries or compensation of Lender's regularly employed personnel or charges constituting an allocation of Lender's office overhead expenses. All such expenses incurred through closing of execution and delivery of this Agreement and the related transactions shall be charged to Borrower at the time of closing, and all such expenses not charged to Borrower at the time of closing (whether such charges had not been accrued or had not been billed to Lender in sufficient time to be charged to Borrower at the time of closing) will be charged to Borrower from time to time thereafter as incurred. Any such expenses not paid by Borrower prior thereto shall at the option of Lender be deducted from any Advance to be made to Borrower, any amounts collected by Lender or the Collateral Trustee from Accounts pledged hereunder (at the option of Lender either prior to or after application of such collections to other Obligations of Borrower), or from any other funds of Borrower held by or paid to Lender or the Collateral Trustee from time to time.

2.5 <u>Repayment of the Loan</u>.

(a) Borrower's obligation to pay the principal of and interest on the Loan shall be evidenced by the Note. The principal of the Loan, and all other Obligations of Borrower not otherwise paid or provided for to the satisfaction of Lender, including, without limitation, interest, fees and expenses, shall be paid by Borrower to Lender upon the earliest of: (i) the receipt by Borrower, Lender or the Collateral Trustee on behalf of Lender of any proceeds of any of the Collateral, to the extent of such proceeds, (ii) the date on which payment in full of the Obligations is demanded by Lender in a written notice to Borrower, or (iii) the Commitment Termination Date, with or without demand by Lender. Interest accrued on the principal amount of the Loan outstanding from time to time shall be calculated and paid as provided in Section 2.3 hereof.

(b) Notwithstanding anything to the contrary contained elsewhere in this Agreement, if an Overadvance Condition shall exist, Borrower shall, without the necessity of a demand, repay the outstanding Loan in an amount sufficient to reduce the aggregate unpaid principal amount of the Loan outstanding by an amount equal to such excess.

2.6 <u>Manner of Payment</u>.

(a) Each payment (including prepayments) by Borrower on account of the principal of or interest on the Loan, fees, interest, expenses and any other amount owed to Lender under this Agreement, the Note or any other Loan Document shall be made not later than 11:00 A.M. (Memphis, Tennessee time) on the date specified for payment under this Agreement or other Loan Document to Lender in lawful money of the United States of

America in immediately available funds. Amounts received after such time shall be deemed to have been received on the next Business Day.

(b) If any payment under this Agreement or the Note shall be specified to be made upon a day which is not a Business Day, it shall be made on the next succeeding day which is a Business Day, and such extension of time shall in such case be included in computing interest and fees, if any, in connection with such payment.

(c) Borrower agrees to pay principal, interest, fees, expenses and all other amounts due hereunder or under the Note without set-off or counterclaim or any deduction whatsoever.

(d) If some but less than all amounts due from Borrower are received by Lender, Lender shall apply such amounts in the following order of priority: (i) to the payment of any fees and expenses then due and payable, in such order or priority as Lender may determine in its sole discretion; (ii) to the payment of all other amounts not otherwise referred to in this Section 2.6(d) then due and payable hereunder or under the Loan Documents; (iii) to the payment of interest then due and payable on the Loan; and (iv) to the payment of principal then due and payable on the Loan.

2.7 Statement of Account. Lender will account to Borrower monthly with a statement of the Loan, charges and payments made pursuant to this Agreement, and such accounting rendered by Lender shall be final, binding and conclusive upon Borrower unless Lender is notified by Borrower in writing to the contrary within thirty (30) days after the date on which such accounting is deemed to have been sent pursuant to Section 7.1 hereof. Such notice shall only be deemed an objection to those items specifically objected to therein.

2.8 Term of Commitment. Subject to Lender's right to demand payment in full of the Obligations at any time and thereupon terminate the Commitment, the Commitment shall remain in full force and effect until the Commitment Termination Date; provided, that Borrower may request the earlier termination of the Commitment at any time upon written notice to Lender and by paying to Lender all outstanding principal, accrued interest, fees, expenses and other charges owing under the terms of this Agreement and the other Loan Documents. On the Commitment Termination Date, the Commitment shall expire and Lender shall have no further obligation to make Advances to Borrower hereunder. Notwithstanding such termination, the Liens of Lender and of the Collateral Trustee for the benefit of Lender in all of the Collateral shall remain in full force and effect until all of the Obligations owing to Lender have been paid and satisfied in full.

## ARTICLE 3. Conditions Precedent to Each Advance.

The obligation of Lender to make each Advance, including but not limited to the initial Advance, is subject to the fulfillment of each of the following conditions immediately prior to or contemporaneously with such Advance:

3.1 Conditions Precedent to Initial Advance. Borrower shall have satisfied all of the conditions precedent to the making of the initial Advance specified in the Commitment Letter.

3.2 Conditions Precedent to All Advances. Notwithstanding any of the provisions of this Agreement or the other Loan Documents, and without affecting in any manner the rights of Lender under the other sections of this Agreement, it is understood and agreed that Lender will have no obligation to make any Advance (including the initial Advance) unless and until, in addition to the conditions set forth in Section 3.1 hereof, each of the following conditions is satisfied.

(a) No Violation. No violation of any Obligation of Borrower hereunder or under any of the other Loan Documents to which it is a party, and no violation of any obligation of the Guarantor under the Guaranty Agreement, shall have occurred and be continuing.

(b) No Overadvance Condition. No Overadvance Condition shall have occurred and be continuing, and funding of such Advance will not cause an Overadvance Condition to exist.

(c) Delivery of Documents. Lender shall have received a Request for Advance duly executed by an Authorized Signatory and copies of all other documents, reports and information required to be delivered to Lender under this Agreement or any of the other Loan Documents.

(d) Representations and Warranties of Borrower. The representations and warranties contained in Article 4 of this Agreement and in the other Loan Documents shall be true and correct in all material respects, except for changes in the nature of Borrower's business or operations that would render the information contained herein or in any schedule attached hereto either inaccurate, incomplete or misleading, so long as Lender has consented to such changes or such changes are expressly permitted by this Agreement.

(e) Performance of Loan Documents. All covenants and agreements on the part of Borrower to be performed under this Agreement and the other Loan Documents shall have been performed and all conditions precedent referred to in Section 3.1 hereof shall have been fulfilled.

(f) Assignment of Receivables under Designated Contracts. As to any Advance to be funded with respect to a Receivable arising from an invoice or other request for payment (an "Invoice") issued by Borrower under a Designated Contract:

(i) Borrower shall have delivered to Lender a true and correct copy of Borrower's Invoice(s) together with a copy of a Notice of Assignment of such Invoice and all amounts payable thereunder to the Collateral Trustee and evidence satisfactory to Lender that such Notice of Assignment has been delivered to the Account Debtor and to all sureties, if any, on the Designated Contract;

(ii) The Designated Contract shall include or have incorporated by reference the "no setoff" commitment contained in Alternative I of the clause set forth at Sec. 52.232-23 of the Federal Acquisition Regulations and referred to at 48 C.F.R. §32.806;

(iii) Borrower will certify that the proceeds of such Advance will be applied to payment of costs associated with performance of the Designated Contract;

(iv) All steps necessary to perfect the Collateral Trustee's security interest in the proceeds of the Designated Contract shall have been completed to Lender's satisfaction, including, without limitation, obtaining the agreement of any creditors of Borrower with conflicting security interests to subordinate such conflicting security interest to the security interest of the Collateral Trustee therein;

(v) The Account Debtor shall have been properly notified of the Assignment in accordance with the Assignment of Claims Act and, with respect to each Invoice to be funded pursuant to this Agreement, the goods or services (or both, as applicable) and other amounts covered by each such Invoice shall have been fully and unconditionally accepted by the Account Debtor, as evidenced by a written certification of an authorized representative of the Account Debtor; and

(vi) Borrower shall be in full compliance with the Loan Documents and all other assignment and funding agreements in effect between Borrower and Lender with respect to other government contracts.

(g) Approval of Advance by Funding Source. The undertaking of Lender to make loans to Borrower hereunder shall in all instances be conditioned upon the approval of each Advance by Lender's Funding Source and the availability to Lender of funds from its Funding Source for the purpose of funding each Advance.

3.3 Waiver of Conditions Precedent. If Lender makes any Advance prior to the fulfillment of any of the conditions precedent set forth in Sections 3.1 and 3.2 hereof, the making of such Advance shall constitute only an extension of time for the fulfillment of such condition and not a waiver thereof, and Borrower shall thereafter use its best efforts to fulfill such condition promptly, but in any event within such extended time frame as Lender shall require.

ARTICLE 4. Representations and Warranties.

4.1 Representations and Warranties. Borrower hereby represents and warrants that:

(a) Organization; Power; Qualification. Borrower is an entity of the type specified on the cover page hereof duly organized or formed, validly existing, and in good standing under the laws of the State or other jurisdiction specified on the cover page hereof opposite the heading "Borrower Jurisdiction," has the power and authority, corporate, partnership and otherwise, to own or lease and operate its Properties and to carry on its business as now being and hereafter proposed to be conducted, and is duly qualified and is in good standing as a foreign entity and authorized to do business in each jurisdiction in which the character of its Properties or the nature of its business requires such qualification or authorization and in which failure to so qualify would have a Materially Adverse Effect.

(b) Authorization; Enforceability. Borrower has the power, corporate, partnership and otherwise, and has taken all necessary action, to authorize it to execute, deliver, and perform this Agreement and each of the other Loan Documents to which it is a party in accordance with the terms thereof and to consummate the transactions contemplated hereby and thereby. This Agreement and each other Loan Document to which it is a party have been duly executed and delivered by Borrower, and are legal, valid, and binding obligations of Borrower, enforceable in accordance with their respective terms.

(c) Compliance with Laws, Organizational Documents and Other Documents; Governmental Consents; Creation of Other Liens. The execution, delivery, and performance of this Agreement and each of the other Loan Documents in accordance with their terms and the consummation of the transactions contemplated hereby and thereby do not and will not (i) violate any Applicable Law, (ii) conflict with, result in a breach of, or constitute a default under the Organizational Documents of Borrower or any indenture, agreement, or other instrument to which Borrower is a party or by which it or any of its Properties may be bound, (iii) require any consent, approval, order, authorization or designation of, or any registration, declaration or filing with, any federal, state or local governmental authority or public body on the part of Borrower (except for the filing of Uniform Commercial Code financing statements and for any actions required to be taken by the appropriate federal governmental authorities pursuant to the Assignment of Claims Act in order to effectuate the assignment of Eligible Receivables to Lender or the Collateral Trustee for the benefit of

(j) Broker's or Finder's Commissions. No broker's or finder's fee or commission is or will be payable by Borrower with respect to the issuance of the Note, and no other similar fees or commissions are or will be payable by Borrower for any other services rendered to Borrower ancillary to the transactions contemplated herein, except as set forth in Schedule 1 hereto.

(k) Name of Borrower. Borrower has not been known as or used any fictitious or trade name other than its own name, or previously had any name other than the name of Borrower specified on the cover page hereof, except as set forth in Schedule 1 hereto.

(l) Chief Executive Office. Borrower's chief executive office is located at the Borrower's Address set forth on the cover page hereof.

**4.2** **Survival of Representations and Warranties, etc.** All representations and warranties made under this Agreement shall be deemed to be made, and shall be true and correct, at and as of the Agreement Date and at and as of the date of each Advance, except to the extent previously fulfilled in accordance with the terms hereof and to the extent subsequently inapplicable, and except to the extent (if any) as may be specifically set forth in a written statement of Borrower filed with Lender at or prior to the time any Request for Advance is delivered to Lender. Borrower acknowledges that funding of any Advance hereunder is conditioned, among other things, on approval of any exceptions so disclosed by Borrower to Lender. All representations and warranties made under this Agreement shall survive, and not be waived by, the execution hereof by Lender, any investigation or inquiry by Lender, or the making of any Advance under this Agreement.

## ARTICLE 5. General Covenants.

So long as any of the Obligations is outstanding and unpaid or Borrower shall have the right to borrow hereunder (whether or not the conditions precedent to borrowing have been or can be fulfilled), and unless Lender shall otherwise consent in writing:

**5.1** **Preservation of Existence and Similar Matters.** Borrower shall (a) preserve and maintain its existence, rights, franchises, licenses, and privileges in its jurisdiction of incorporation or formation, including, without limitation, all Necessary Authorizations, and (b) qualify and remain qualified and authorized to do business in each jurisdiction in which the character of its Properties or the nature of its businesses requires such qualification or authorization.

**5.2** **Compliance with Applicable Law.** Borrower shall comply with all requirements of Applicable Law, non-compliance with which could have a Materially Adverse Effect.

5.3 Accounting Methods and Financial Records. Borrower shall maintain a system of accounting, established and administered in accordance with GAAP, and shall keep adequate records and books of account in which complete entries shall be made in accordance with such accounting principles, consistently applied and reflecting all transactions required to be reflected by such accounting principles.

5.4 Payment of Taxes and Claims. Borrower shall pay and discharge all taxes, assessments, and governmental charges or levies imposed upon it or upon its income or profits or upon any Properties belonging to it prior to the date on which penalties attach thereto, and all lawful claims for labor, materials, and supplies which, if unpaid, might become a Lien or charge upon any of its Properties.

5.5 Visits and Inspections. Borrower shall permit representatives of Lender, the Collateral Trustee, the Servicer, or any Funding Source identified by written notice to Borrower executed by Lender or the Servicer to (a) visit and inspect the properties of Borrower during normal business hours, (b) inspect and make extracts from and copies of its books and records, and (c) discuss with its principal officers its businesses, assets, liabilities, financial positions, results of operations and business prospects relating to Borrower.

5.6 Use of Proceeds. Borrower shall use the proceeds of all Advances made with respect to any Designated Contract to fund costs of Borrower associated with performance of the Designated Contract with respect to which such Advance is made.

5.7 Further Assurances. Borrower shall promptly cure, or cause to be cured, defects in the creation and issuance of the Note, the execution and delivery of the other Loan Documents (including this Agreement), and the perfection of any Liens in favor of Lender or the Collateral Trustee for the benefit of Lender. Borrower, at its expense, shall promptly execute and deliver to Lender or the Collateral Trustee for the benefit of Lender, or cause to be executed and delivered to Lender or the Collateral Trustee, all such other and further documents, agreements and instruments in compliance with or accomplishment of the covenants and agreements of Borrower in the Loan Documents, or to evidence further and more fully describe the Collateral or to correct any omissions in the other Loan Documents, or more fully to state the obligations set out herein or in any of the Loan Documents, or to perfect, protect or preserve the assignment of the Collateral to or for the benefit of Lender and any Liens created pursuant to any of the Loan Documents, or to make any recordings, to file any notices or to obtain any consents, all as may be necessary or appropriate in connection therewith as may be reasonably requested by Lender.

5.8 Broker's Claims. Borrower hereby indemnifies and agrees to hold Lender harmless from and against any and all losses, liabilities, damages, costs and expenses (including reasonable attorneys' fees and expenses) which may be suffered or incurred by Lender in respect of any claim, suit, action or cause of action now or hereafter asserted by a broker or any Person acting in a similar capacity arising from or in connection with the execution and delivery of this Agreement or any other Loan Document or the consummation

of the transactions contemplated herein or therein, other than claims with respect to fees or commissions claimed to be due by a broker or any Person acting in a similar capacity under a written agreement specifically obligating Lender to pay a brokerage fee, finder's fee or similar fee or commission executed by Lender.

5.9 Location of Collateral. All of the Collateral and all records of Borrower pertaining to the Collateral shall at all times be kept by Borrower at its chief executive office referred to in Section 4.1(l) hereof and the other locations, if any, as are specified in Schedule 1 hereto. Without the prior written consent of Lender, the Collateral shall not be moved therefrom, except upon (a) at least thirty (30) days prior written notice to Lender and (b) execution and delivery by Borrower, at its expense, of such documents, instruments, agreements and certificates (including, without limitation, additional financing statements) as Lender in its sole discretion shall determine are necessary or advisable to perfect or preserve the perfection of any Lien on the Collateral created under the Loan Documents and to otherwise protect the interests of Lender or the Collateral Trustee for the benefit of Lender in connection with the transactions contemplated by this Agreement.

5.10 Protection of Collateral. All expense of protecting, storing, handling, maintaining and shipping the Collateral, and all excise, property, sales and use taxes imposed by any Federal, state or local authority on any of the Collateral, shall be borne and paid by Borrower. If Borrower fails to pay promptly any portion thereof when due, Lender may, at its option, but shall not be required to, pay the same and charge Borrower therefor. Lender shall not be liable or responsible to Borrower in any way for the safekeeping of any of the Collateral or for any loss or damage thereto or for any diminution in the value thereof, or for any act or default of the Collateral Trustee or any other Person whomsoever, but the same shall be at Borrower's sole risk.

5.11 Lockbox Account. Borrower shall cause payments on all Receivables to be made to the Collateral Trustee or to a lockbox designated by the Collateral Trustee for deposit by the Collateral Trustee. All remittances received by Borrower on account of the Receivables, together with the proceeds of any other Collateral, shall be held as Lender's property by Borrower as trustee of an express trust for the benefit of Lender, and Borrower shall immediately notify Lender, the Servicer and the Collateral Trustee of the receipt thereof by Borrower and remit the same to the Collateral Trustee for such purpose.

5.12 Bank Charges. Borrower shall pay to Lender, ON DEMAND, all fees, costs and expenses which Lender or the Collateral Trustee pays to a bank or other similar institution arising out of or in connection with (a) the forwarding to Borrower or any other Person on behalf of Borrower by Lender or the Collateral Trustee of proceeds of the Advances made by Lender to Borrower pursuant to this Agreement and (b) the depositing for collection by Lender or the Collateral Trustee of any check or item of payment received or delivered to Lender or to the Collateral Trustee for application to the Obligations.

## ARTICLE 6. Information Covenants.

So long as any of the Obligations is outstanding and unpaid or Borrower has a right to borrow hereunder (whether or not the conditions precedent to borrowing have been or can be fulfilled) and unless Lender shall otherwise consent in writing, Borrower will furnish or cause to be furnished to Lender as provided in Section 7.1 hereof:

6.1 __Annual Financial Statements and Information: Accountants Report; Certificate of No Default__. Within ninety (90) days after the end of each fiscal year of Borrower, the balance sheets of Borrower as at the end of such fiscal year and the related statements of income, retained earnings, and changes in cash flow of Borrower for such fiscal year, setting forth in comparative form the figures as at the end of and for the previous fiscal year and accompanied by a compilation letter of the independent certified public accountants whose compilation report or compilation letter accompanied the most recent financial statements of Borrower delivered to Lender prior to the date of this Agreement or other independent certified public accountants reasonably satisfactory to Lender, whose compilation report or compilation letter shall be in scope and substance satisfactory to Lender, and who shall have authorized Borrower to deliver such compilation report or compilation letter and accompanying financial statements to Lender pursuant to this Agreement. The annual financial statements of Borrower shall be accompanied by a certificate of the chief executive officer or chief financial officer of Borrower to the effect that the officer of Borrower executing such certificate has conferred with the accountants which prepared the accountants' report accompanying the financial statements of Borrower concerning the subject matter of such certificate, and either (a) that Borrower is in compliance with all covenants and requirements of this Agreement and the Assignment and no Overadvance Condition existed as of the last day of the fiscal year of Borrower to which such financial statements pertain, or (b) describing in detail any such breach, noncompliance or Overadvance Condition which then existed and indicating whether such condition continues to exist as of the date of such certificate and the steps being taken by Borrower to remedy such noncompliance or eliminate such Overadvance Condition.

6.2 __Monthly Financial Statements and Information__. Within thirty (30) days after the last day of each month, the unaudited operating statements of Borrower as of the end of such month showing in reasonable detail the revenues, expenses and profit (or loss) of Borrower for such month and for the elapsed portion of the year ended with the last day of such month, which shall either be prepared in accordance with GAAP or be prepared on a cash accounting basis and be accompanied by a report of all accounts payable and other liabilities of Borrower as of the end of such month, all certified by the chief financial officer of Borrower to be, in his opinion, complete and correct in all material respects and to present fairly the financial position of Borrower as at the end of such period and the results of operations for such period, and for the elapsed portion of the year ended with the last day of such period, subject only to normal year-end adjustments.

6.3 Copies of Other Reports. From time to time and promptly upon each request, such data, certificates, reports, statements, opinions of counsel, documents, or further information regarding the Collateral or the business, assets, liabilities, financial position, projections, results of operations, or business prospects of Borrower as Lender may reasonably request.

6.4 Notice of Litigation and Other Matters. Prompt notice of the following events after Borrower has, or in the exercise of reasonable diligence should have, received notice thereof:

(a) The commencement of any proceeding or investigation by or before any governmental body or any action or proceeding in any court or before any arbitrator (i) against, or (ii) (to the extent known to Borrower) in any other way relating adversely to, Borrower or any of its assets or businesses which, if adversely determined, could singly or when aggregated with all other such proceedings, investigations, and actions, if adversely determined, have a Materially Adverse Effect;

(b) Any material adverse change with respect to the business, assets, liabilities, financial position, results of operations, or business prospects of Borrower, other than changes in the ordinary course of business the effects of which have not had, and are not likely to have, a Materially Adverse Effect; and

(c) Any violation of this Agreement or any of the other Loan Documents to which Borrower is a party, or the occurrence or non-occurrence of any event or condition which constitutes, or which with the passage of time or giving of notice (or both) would constitute, a default by Borrower under any material agreement other than this Agreement or the other Loan Documents to which Borrower is a party or by which its properties may be bound;

in each case giving the details thereof and specifying the action proposed to be taken with respect thereto.

6.5 Borrowing Base Certificate. Borrower shall keep accurate and complete records with regard to the Eligible Receivables and the Loan and shall submit a Borrowing Base Certificate to Lender with each Request for Advance submitted by Borrower to Lender hereunder, and on such other periodic basis as Lender shall request.

## ARTICLE 7. Miscellaneous.

7.1 Notices.

(a) All notices and other communications required or permitted under this Agreement shall be in writing and, if mailed by prepaid first-class mail or certified mail, return receipt requested, at any time other than during a general discontinuance of postal

service due to strike, lockout or otherwise, shall be deemed to have been received on the earlier of the date shown on the receipt or three (3) Business Days after the postmarked date thereof and, if telecopied, shall be followed forthwith by letter and shall be deemed to have been received on the next Business Day following dispatch and acknowledgment of receipt by the recipient's telecopy machine. In addition, notices hereunder may be delivered by hand or overnight courier, in which event the notice shall be deemed effective when delivered. All notices and other communications to any party under this Agreement shall be given to the parties hereto at the following addresses:

| | |
|---|---|
| If to Borrower: | To Borrower's Address set forth on the cover page hereof |
| If to Lender: | Classical Receivables Funding Company, L.L.C.<br>4646 Poplar Avenue, Suite 213<br>Memphis, Tennessee 38117<br>Attn: Operating Manager<br>Facsimile No.: 901-682-6022<br><br>with a copy to the Servicer at the Servicer's Address set forth on the cover page hereof |
| If to the Collateral Trustee: | Reliance Trust Company<br>950 East Paces Ferry Road, Suite 2840<br>Atlanta, Georgia 30326<br>Attn: Susan L. Adams,<br>Senior Vice President<br>Facsimile No.: 404-365-7946 |

(b) Any party hereto may change the address to which notices shall be directed under this Section 7.1 by giving ten (10) days' written notice of such change to the other parties.

(c) Personal delivery to a party or to any officer, partner, agent, or employee of such party at its address herein shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received also shall constitute receipt.

7.2 Expenses. Borrower shall promptly pay:

(a) Upon closing of this Agreement, all out-of-pocket expenses of Lender (including, without limitation, attorneys' fees and expenses) in connection with the preparation, negotiation, execution, and delivery of the Commitment Letter, this Agreement, the Note and the other Loan Documents, including all post-closing matters, and the

transactions contemplated hereunder and thereunder and the making of the initial Advance hereunder, whether or not the initial Advance is made; and

(b) All costs and reasonable out-of-pocket expenses in connection with the administration of the Loan Documents, including the restructuring, refinancing and "work-out" of the transaction herein contemplated, the delivery of any amendment or waiver, or obtaining performance under this Agreement or the other Loan Documents, and all costs and out-of-pocket expenses of collection or enforcement, which in each case shall include fees and expenses of counsel for Lender.

7.3 Waivers. The rights and remedies of Lender under this Agreement and the other Loan Documents shall be cumulative and not exclusive of any rights or remedies which it would otherwise have. No failure or delay by Lender in exercising any right shall operate as a waiver of it. Lender expressly reserves the right to require strict compliance with the terms of this Agreement in connection with any funding of a request for an Advance. In the event Lender decides to fund a request for an Advance at a time when Borrower is not in strict compliance with the terms of this Agreement, such decision by Lender shall not be deemed to constitute an undertaking by Lender to fund any further requests for Advances or preclude Lender from exercising any rights available to Lender under the Loan Documents or at law or equity. Any waiver or indulgence granted by Lender shall not constitute a modification of this Agreement, except to the extent expressly provided in such waiver or indulgence, or constitute a course of dealing by Lender at variance with the terms of this Agreement such as to require further notice by Lender of Lender's intent to require strict adherence to the terms of this Agreement in the future. In order to be effective as a waiver or indulgence under this Agreement, any such waiver or indulgence must be in writing, signed on behalf of Lender, approved by the Servicer and filed with the Collateral Trustee.

7.4 Assignment. Borrower may not assign or transfer any of its rights or obligations hereunder or under the Note without the prior written consent of Lender. Lender may at any time sell, assign, transfer, or otherwise dispose of, all or any portion of the Obligations of Borrower outstanding pursuant to this Agreement, the Note and the other Loan Documents. Borrower hereby agrees that any assignee or transferee of all or any portion of any amount owed by Borrower under this Agreement and the Note shall be entitled to the benefits of the provisions of this Agreement and the other Loan Documents as Lender hereunder. Borrower agrees that it shall use its best efforts to assist and cooperate with Lender in any manner reasonably requested by Lender to effect the sale of participations in or assignments of any of the Loan Documents or any portion thereof or interest therein, including without limitation assignment to the Collateral Trustee as contemplated in the Collateral Trust Agreement, and agrees that Lender may disclose credit information regarding Borrower to any potential Funding Source, participant or assignee. Except as specifically set forth in this Section, nothing in this Agreement or the Note, expressed or implied, is intended to or shall confer on any Person other than the respective parties hereto and thereto and their successors and assignees permitted hereunder and thereunder any

benefit or any legal or equitable right, remedy, or other claim under this Agreement or the Note.

7.5 Assignment of Loan Documents to Collateral Trustee. Borrower acknowledges that Lender anticipates that it will secure funds for the purpose of making Advances hereunder through funding arrangements with one or more Funding Sources from time to time, and that Lender will assign its right, title and interest in, to and under the Loan Documents to the Collateral Trustee as security for Lender's obligations in connection with such funding arrangement. Borrower hereby (i) agrees that the Collateral Trustee for all purposes of the Loan Documents constitutes a financing institution participating in the financing of Receivables under a Designated Contract for the benefit of Borrower, (ii) agrees that, as provided in the Assignment and Section 3.2(f) hereof, it will execute and deliver to the Collateral Trustee a separate assignment of each Designated Contract and each Account resulting from an Invoice pertaining to each Designated Contract as a condition to any Advance hereunder, and (iii) consents to each such pledge and assignment by Lender to the Collateral Trustee.

7.6 Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

7.7 Acceptance of Loan Documents by Lender. This Agreement, the Note and all other Loan Documents, following execution thereof by Borrower, shall be submitted to and shall be subject to approval by Lender at its loan processing office located at 12065 King Road, Roswell, Georgia 30075. Such approval by Lender shall be evidenced either by execution of this Agreement on behalf of Lender or by Advance of funds by Lender. This Agreement and the Commitment of Lender hereunder shall in no event be binding on Lender until so submitted and approved.

7.8 Governing Law. This Agreement and the Note shall be construed in accordance with and governed by the laws of the State of Georgia, without regard to its conflict of laws principles.

7.9 Severability. Any provision of this Agreement which is prohibited or unenforceable under Applicable Law shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof in that jurisdiction or affecting the validity or enforceability of such provision in any other jurisdiction.

7.10 Interest and Charges. Borrower and Lender hereby agree that (a) the only charge imposed by Lender upon Borrower for the use of money in connection with the Loan is and shall be the interest expressed herein, as provided in Section 2.3 hereof and in the Note, and (b) all other charges imposed by Lender upon Borrower in connection with the Loan, including, without limitation, any commitment fees, management fees, administrative and processing fees, late payment charges and charges for taxes and reserve requirements,

are and shall be deemed to be charges made to compensate Lender for administrative services and costs, and other services and costs performed and incurred, and to be performed and incurred, by Lender in connection with the Loan, and shall under no circumstances be deemed to be charges for the use of money. All charges referred to in herein shall be fully earned when due and non-refundable when paid.

7.11 Headings. Headings used in this Agreement are for convenience only and shall not be used in connection with the interpretation of any provision hereof.

7.12 Pronouns. The pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the grammatical construction of sentences shall conform thereto.

7.13 Entire Agreement: Amendments. This Agreement and the other Loan Documents represent the entire agreement between Borrower and Lender with respect to the subject matter of this transaction. No amendment or modification of the terms and provisions of this Agreement shall be effective unless in writing and signed by Borrower and Lender, approved by the Servicer and filed with the Collateral Trustee.

7.14 Interpretation. No provision of this Agreement or any of the other Loan Documents shall be construed against or interpreted to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of such party having or being deemed to have structured or dictated such provision.

7.15 Jurisdiction and Venue. AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED, AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PLACE OF BUSINESS OF BORROWER OR LENDER, BORROWER HEREBY CONSENTS AND AGREES THAT THE STATE COURTS OF GEORGIA SITTING IN FULTON COUNTY, GEORGIA, OR, AT LENDER'S OPTION, THE UNITED STATES DISTRICT COURT SITTING IN SAID COUNTY, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND LENDER PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN. BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO PERSONAL JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT WITH RESPECT TO ANY SUCH MATTERS, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS WITH RESPECT TO ANY SUCH ACTIONS OR PROCEEDINGS. BORROWER HEREBY WAIVES PERSONAL SERVICE OF THE SUMMONS, COMPLAINT AND OTHER PROCESS ISSUED IN ANY SUCH ACTION OR SUIT AND AGREES THAT SERVICE OF SUCH SUMMONS, COMPLAINT AND OTHER PROCESS MAY BE

MADE IN ACCORDANCE WITH THE PROVISIONS OF SECTION 7.1 OF THIS AGREEMENT. NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO AFFECT THE RIGHT OF LENDER TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW, OR TO PRECLUDE THE ENFORCEMENT BY LENDER OF ANY JUDGMENT OR ORDER OBTAINED IN SUCH FORUM OR THE TAKING OF ANY ACTION UNDER THIS AGREEMENT TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION.

7.16 Additional Provisions and Terms. The additional provisions and terms set forth in Schedule 2 hereto shall apply in all instances to this Agreement and the interpretation of the provisions hereof and are hereby incorporated herein by reference and shall for all purposes constitute a part of this Agreement. In the event of inconsistency between the additional provisions and terms (if any) set forth on Schedule 2 hereto and the provisions of this Agreement contained in Article 1 through Article 7 hereof, the provisions and terms set forth on said Schedule 2 shall govern the application and interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused it to be executed under seal by their duly authorized officers, all as of the day and year first above.

BORROWER:

AMERICAN RENOVATION & CONSTRUCTION COMPANY

By: *Anthony P. Dethloff*
Anthony P. Dethloff
Vice President/Advancement

[SEAL]

LENDER:

CLASSICAL RECEIVABLES FUNDING COMPANY, L.L.C.

By: *[signature]* [SEAL]

Title: *manager*

ate: *August 22, 1996*

73826.W51
·911.0000

**SCHEDULE 2**
**to**
**Loan Agreement**

Additional provisions and terms applicable to this Loan Agreement are as follows:

1. The first paragraph on page 3 of the Loan Agreement is amended by adding at the end of said paragraph the following additional language:

"The cover sheet is an integral part of this Loan Agreement."

2. Article 1 of the Loan Agreement is hereby amended to add thereto an additional defined term as follows:

> "*Bankruptcy Event*" shall be deemed to have occurred on (i) the date which is thirty (30) days following entry of a decree or order by a court having jurisdiction in the premises constituting an order for relief in respect of Borrower under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy law or other similar law, or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator, or similar official of Borrower or of any substantial part of its properties or of any of the Collateral, or ordering the winding-up or liquidation of the affairs of Borrower, unless such decree or order shall have been withdrawn or rescinded prior to the expiration of such 30-day period, or (ii) the date on which Borrower shall file a petition, answer, or consent seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy law or other similar law, or Borrower shall consent to the institution of proceedings thereunder or to the filing of any such petition or to the appointment or taking of possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator, or other similar official of Borrower or of any substantial part of its properties or of any of the Collateral, or Borrower shall fail generally to pay its debts as such debts become due, or Borrower shall take any corporate action in furtherance of any such action.

3. The definition of "*Eligible Receivable*" set forth in Article 1 of the Loan Agreement is amended by adding at the end of the first sentence thereof the following additional language:

> "Evidence of approval for payment and of the authority of the person executing such approval which is transmitted to the Collateral Trustee or to Lender by facsimile shall be sufficient for purposes hereof."

4. Article 1 of the Loan Agreement is hereby further amended to add thereto an additional defined term as follows:

"*Maturity Date*" shall mean the date of maturity of the Note, as specified in the Note, which until such time as it may hereafter be amended, shall be the date which is two calendar months following the Commitment Termination Date.

5. The definition of the term "*Note*" appearing in Article 1 of the Loan Agreement is amended by deleting therefrom the words "on demand."

6 Article 1 of the Loan Agreement is hereby further amended to add thereto an additional defined term as follows:

"*Permitted Overadvance Condition*" shall mean an Overadvance Condition which is permitted under the provisions of Section 3.4 hereof.

7. The Loan Agreement is hereby further amended by deleting Section 2.1 thereof in its entirety and inserting in lieu thereof a new Section 2.1 to read in its entirety as follows:

**2.1** **The Loan.** Lender agrees, upon the terms and subject to the conditions of this Agreement, to make Advances to Borrower on any Business Day prior to the earlier of (i) the date on which demand for payment of the outstanding principal amount of the Loan is made, and (ii) the Commitment Termination Date, upon receipt by Lender of a Request for Advance, in amounts which in the aggregate at any one time outstanding do not exceed the Commitment; provided, however, that Lender shall have no obligation whatsoever to make any Advances to Borrower if, at the time of Borrower's request therefor, the aggregate principal amount of the Loan then exceeds, or would exceed after funding of such Advance, the Borrowing Base. Advances made pursuant to this Section may be repaid and reborrowed in accordance with the terms hereof.

8. Section 2.2 of the Loan Agreement is hereby amended to substitute the words "two (2) Business Days" for the words "three (3) Business Days" appearing in said Section 2.2, and by substituting the term "12:00 Noon" for the term "10:00 A.M." in each instance where it appears in said Section 2.2.

9. Section 2.5 of the Loan Agreement is hereby amended to read in its entirety as follows:

**2.5** **Repayment of the Loan.**

(a) Borrower's obligation to pay the principal of and interest on the Loan shall be evidenced by the Note. The principal of the Loan, and all other Obligations of Borrower not otherwise paid or provided for to the satisfaction of Lender, including, without limitation, interest, fees and expenses, shall be paid by Borrower to Lender (with or without demand by Lender except as otherwise specifically provided herein or in the Note) upon the earliest of: (i) the receipt by Borrower, Lender or the Collateral Trustee on behalf of Lender of any proceeds of any of the Collateral, to the extent of such proceeds, (ii) sixty (60)

days following the date on which payment in full of the Obligations is demanded by Lender in a written notice to Borrower, (iii) the Maturity Date, and (iv) the occurrence of a Bankruptcy Event. Interest accrued on the principal amount of the Loan outstanding from time to time shall be calculated and paid as provided in Section 2.3 hereof.

(b) Notwithstanding anything to the contrary contained elsewhere in this Agreement, if an Overadvance Condition (other than a Permitted Overadvance Condition) shall exist, Borrower shall, without the necessity of a demand, repay the outstanding Loan in an amount sufficient to reduce the aggregate unpaid principal amount of the Loan outstanding by an amount equal to such excess.

10. Subdivision (b) of Section 3.2 of the Loan Agreement is hereby further amended to read in its entirety as follows:

(b) <u>No Overadvance Condition; Permitted Overadvance Condition</u>. No Overadvance Condition (other than a Permitted Overadvance Condition) shall have occurred and be continuing, and funding of such Advance will not cause an Overadvance Condition (other than a Permitted Overadvance Condition) to exist.

11. The Loan Agreement is hereby further amended by adding a new Section 3.4 thereof to read in its entirety as follows:

3.4 <u>Advances Against Allowed Pending Claims</u>. In addition to the provisions of the Loan Agreement authorizing Loans to be made hereunder in the aggregate amount outstanding at any time not exceeding the Borrowing Base, additional Advances may be made to the Borrower and permitted to remain outstanding during the period commencing on the date of the initial Advance hereunder (the "Initial Advance Date") and ending 210 days following the Initial Advance Date, in an amount equal to the lesser of (x) $600,000 and (y) 20% multiplied by the amount of Allowed Pending Claims. The term "Allowed Pending Claims" means claims for additional compensation for work completed under a Designated Contract which had been filed by Borrower with the government contracting officer responsible for the corresponding Designated Contract on or prior to the Initial Advance Date and which claim is pending approval on the Initial Advance Date, provided the following additional requirements set forth in this Section 3.4 exist. No claim will constitute an Allowed Pending Claim unless (i) all rights of Borrower to payment thereof have been assigned to the Collateral Trustee or other designee of Lender, in a manner satisfactory to Lender, so as to comply with the Assignment of Claims Act, and Lender shall have been furnished with such evidence as it deems appropriate of such assignment and of the validity of the claim; (ii) the claim shall have been certified by Borrower to accurately reflect the amount of additional compensation due to Borrower under the corresponding Designated Contract and to be then currently pending and not to have been rejected or disallowed (without regard to

whether such rejection or disallowance is being contested or appealed) on the Initial Advance Date; (iii) the Collateral Trustee has a first priority Lien in all amounts payable to Borrower by reason of such claim pursuant to the Loan Documents; and (iv) the interests and rights of all sureties with respect to the Designated Contract to which such claim pertains shall have been subordinated to the security interest of the Collateral Trustee in such claim to the satisfaction of Lender. A claim shall cease to be an Allowed Pending Claim at such time as such claim or any portion thereof is rejected or disallowed (it being understood that a portion of any such claim may be withdrawn by Borrower or the amount of any such claim may be voluntarily reduced by Borrower and that such actions shall not be deemed to constitute rejection or disallowance thereof). Notwithstanding assignment to Lender or to the Collateral Trustee or other designee of the Lender of any such claims under a Designated Contract as contemplated in this Section 3.4, until such time as Lender, the Collateral Trustee or other such assignees shall acquire ownership thereof following default, Lender, the Collateral Trustee or other such assignees shall have no right to determine the manner in which collection or prosecution of such claims is conducted or to release or compromise any such claims, or to participate in any such collection, prosecution, release or compromise, all such rights to prosecute, release or compromise any such claims being vested solely in Borrower.

3.5 Reassignment of Assigned Receivables and Designated Contracts; Termination of Security Interest. At such time as all Obligations have been paid in full by Borrower and Lender shall have no further obligation or undertaking to make additional Advances under this Agreement, Lender shall execute and deliver to Borrower such instruments and documents (including, without limitation, such instruments and documents as are necessary to effect release of assignment of Designated Contracts and amounts payable thereunder, written notice of such release sufficient to comply with the requirements of the Assignment of Claims Act and the regulations thereunder, and Uniform Commercial Code Termination Statements) as shall be sufficient and appropriate to effect termination of the Assignment and the Lien of the Lender thereunder. In the event that at the time any such instrument or document shall be required to be executed and delivered hereunder the rights of Lender under this Agreement shall have been assigned, Lender shall be obligated to cause such instrument or document to be executed and delivered by such assignee. Lender shall have no responsibility with respect to the adequacy or the effectiveness of any such instrument or document. With respect to any such instruments of release or notices of release, other than Uniform Commercial Code Termination Statements, Lender shall have no responsibility for the preparation thereof.

12. Section 5.10 of the Loan Agreement is hereby amended to add at the end of said Section 5.10 an additional sentence to read as follows:

"In the event that Lender shall take possession of any Collateral, Lender will use reasonable care in the custody and preservation of such Collateral."

13. The following modification shall apply to the requirements concerning annual financial statements set forth in Section 6.1:

> The annual financial statements of Borrower required to be furnished pursuant to Section 6.1 shall be accompanied by the audit report and opinion of an independent certified public accountant or firm thereof with respect to such financial statements (in lieu of the compilation report or compilation letter specified in Section 6.1). Lender agrees that an audit report and opinion of Semple & Cooper, P.L.C., certified public accountants, will be sufficient for purposes of Section 6.1, but that the report and opinion of any other accountant or accounting firm will not satisfy the requirements of this provision until such accountant or accounting firm has been approved by Lender.

14. Subdivision (a) of Section 7.1 of the Loan Agreement is hereby amended to substitute the words "five (5) Business Days" for the words "three (3) Business Days" appearing in said Subdivision (a).