000273825

# CLASSICAL RECEIVABLES FUNDING COMPANY, L.L.C.

## Government Receivables Financing Program

## ASSIGNMENT AND SECURITY AGREEMENT

dated as of

July 15, 1996

| | |
|---|---|
| LENDER: | Classical Receivables Funding Company, L.L.C., a Tennessee limited liability company |
| BORROWER: | American Renovation & Construction Company, a California corporation |
| BORROWER'S ADDRESS (CHIEF EXECUTIVE OFFICE): | 3645 Camino Del Rio South<br>San Diego, California 92108-4004<br>County: San Diego<br>Attention: Kimberly K. McMahon, Treasurer<br>Telecopy No. (619) 824-8120 |
| INITIAL COMMITMENT AMOUNT: | U.S. $2,000,000 |
| SERVICER: | Classical Receivables Funding Company, L.L.C. |
| SERVICER'S ADDRESS: | 4646 Poplar Avenue<br>Suite 213<br>Memphis, Tennessee 38117-4432<br>Attention: Dennis R. Terhune, Operating Manager<br>Telecopy No.: (901) 682-6022 |

**THIS ASSIGNMENT AND SECURITY AGREEMENT** ("Assignment") is made by and between the Borrower and the Lender identified on the cover page hereof. Capitalized terms used in this Assignment which appear on the cover page hereof shall have the meanings set forth on the cover page. Capitalized terms used in this Assignment (including the Preamble) and not otherwise defined or limited herein shall have the same meanings as are ascribed to such terms in the Loan Agreement hereinafter referred to.

## PREAMBLE

Pursuant to that certain Loan Agreement dated as of the date hereof (as the same may be amended, extended, supplemented or restated from time to time, the "Loan Agreement") between Lender and Borrower, Lender has agreed to extend certain financial accommodations to Borrower (the "Loan") in the maximum principal amount outstanding at any time equal to the Initial Commitment Amount in order to fund costs of Borrower associated with performance of one or more contracts for sale or lease of goods or for services to be rendered between Borrower and the United States of America or a department, agency or instrumentality thereof hereinafter identified (each a "Designated Contract" and collectively the "Designated Contracts").

The obligation of Borrower to repay the Loan is further evidenced by that certain Promissory Note dated the date hereof (as the same may be amended, extended, renewed, supplemented or restated from time to time, the "Note") issued by Borrower and payable to the order of Lender in the face principal amount outstanding at any time equal to the Initial Commitment Amount.

Under the terms of the Loan Agreement, the payment obligations of Borrower under the Note and the Loan Agreement and all other Obligations are to be secured by pledge and assignment by Borrower to Lender of one or more Designated Contracts hereinafter identified.

Pursuant to that certain Collateral Trust and Collection Agency Agreement dated as of July 15, 1996 (the "Collateral Trust Agreement"), between Lender and Reliance Trust Company, as Collateral Trustee (the "Collateral Trustee") and the Funding Source therein named (the "Funding Source"), Lender has pledged, assigned and granted a security interest to the Collateral Trustee in all of the right, title and interest of Lender in, to and under the Loan Agreement and the other Loan Documents, has endorsed the Note to the order of the Collateral Trustee, and has agreed to assign and pledge all of its rights, title and interest in and to this Assignment, the Designated Contracts herein identified and all other Collateral to the Collateral Trustee in order to secure obligations of Lender to the Funding Source by reason of advance of funds by the Funding Source to fund the Loan, and in order to provide for collection and application of Loan Payments, proceeds of the Designated Contracts and proceeds of all other Collateral in the manner and for the purposes herein provided.

Prior to delivery of a Request for Advance to Lender with respect to any Designated Contract, Borrower will execute and deliver to the Collateral Trustee a separate assignment of

such Designated Contract to the Collateral Trustee in such form as may be designated by Lender and the Collateral Trustee and complying with applicable requirements of the federal Assignment of Claims Act, 31 U.S.C. § 3727, *et seq.* (the "Assignment of Claims Act"), covering all unpaid amounts payable under the Designated Contract. Borrower acknowledges that the Collateral Trustee constitutes a financing institution participating in the financing of the Designated Contract within the meaning of the Assignment of Claims Act.

It is a condition to the making of the Loan and to Advance of funds thereunder (each such advance of Loan proceeds being herein called an "Advance") that Borrower execute and deliver the Note, this Assignment, the financing statements herein referred to and all other instruments and documents reasonably required by Lender to evidence, effect or secure the transactions herein contemplated (collectively, the "Loan Documents") to Lender.

**NOW, THEREFORE,** for and in consideration of the foregoing premises, the sum of Ten and No/100 Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender hereby agree as follows:

1. **Assignment.** To secure all amounts due from Borrower under the Note from time to time and all other Obligations of Borrower now or hereafter arising under or in connection with this Assignment or any of the other Loan Documents to which Borrower is a party, or the transactions contemplated thereby, including, without limitation, sums herewith or to be advanced to Borrower for the account of Lender, and in accordance with the Assignment of Claims Act, Borrower hereby assigns to Lender, its successors and assigns, and grants to Lender and its successors and assigns a continuing security interest in, all right, title and interest which Borrower has and may in the future have in the following:

(a) *Designated Contracts.* The Designated Contract or Designated Contracts identified on Schedule 1 hereto attached and incorporated herein by this reference, (if any Designated Contract or Designated Contracts are identified on Schedule 1 hereto) and each Designated Contract which may be hereafter assigned by Borrower to Lender, its successors and assigns under the terms of any amendment or supplement to this Assignment, all sums, moneys and payments due and to become due to Borrower thereunder or by reason of the execution, delivery or performance by Borrower thereof including, without limitation, all amounts due or to become due to Borrower by reason of change orders, allowances, concessions, reimbursement of expenses, claims for breach of contract, late payment fees, or any other amounts payable thereunder, together with all cash and non-cash proceeds thereof and all returned, rejected or repossessed goods, the sale or lease of which shall have given or shall give rise to a payment obligation under such Designated Contract, and including specifically all amounts payable to Borrower from time to time by reason of statements or invoices issued and to be issued by Borrower from time to time for payments due under the Designated Contracts (collectively, the "Invoices") and all cash and non-cash proceeds thereof.

(b) *Accounts*. Without limitation to the foregoing, all accounts, accounts receivable, chattel paper, leases, promissory notes, contracts for receipt of money and evidences of indebtedness of or owing to Borrower whether now existing or hereafter arising, including, without limitation, all accounts and other rights to payment of money which arise or result from contracts for the sale or lease of goods or for services to be rendered by Borrower, all amounts due or to become due to Borrower by reason of change orders, allowances, concessions, reimbursement of expenses, claims for breach of contract, late payment fees, or any other amount payable thereunder, together with (i) all cash and non-cash proceeds thereof and (ii) any indemnity payment, guaranty payment, insurance payment or other award or settlement received by Borrower in satisfaction of the foregoing (herein generally referred to as "Accounts" and the person or persons obligated for the payment thereof to Borrower being herein generally referred to as "Account Debtors").

(c) *General Intangibles*. All general intangibles of Borrower, including, without limitation, all choses in action, causes of action, deposit accounts, goodwill, copyrights, registrations, licenses, tax refund claims, computer programs, claims under guarantees, security interests or other security held by or granted to Borrower to secure payment of any of the Accounts by an Account Debtor, all rights to indemnification, and all other intangible property of every kind and nature (the "General Intangibles").

(d) *Equipment*. All of Borrower's equipment, whether now owned or hereafter acquired, together with all replacements thereof and substitutions therefor, and all cash and non-cash proceeds and products thereof (the "Equipment").

The term "Collateral" as used herein means each and all of the items of Collateral herein described, and the term "Proceeds" as used herein includes all recoveries due and to become due from time to time by reason of any such Collateral, whether by reason of payment, collection, liquidation or settlement.

2. **Payment Direction to Agency.** Borrower hereby authorizes and directs the United States of America or the department, agency or instrumentality thereof which is obligated for the payment for the goods or services to be supplied by Borrower under a Designated Contract (the "Agency") to pay all the sums, moneys and payments required to be made with respect to such Designated Contract and all Invoices delivered from time to time thereunder directly to the Collateral Trustee and agrees to provide such notice or notices of such assignment to the Agency as Lender, the Servicer or the Collateral Trustee may request from time to time and as shall be necessary to comply with all requirements of the Assignments of Claims Act. Borrower acknowledges that under the terms of the Loan Agreement, such assignment to the Collateral Trustee and acknowledgement of such assignment by the Agency delivered to the Collateral Trustee is in all instances a condition precedent to the obligation of Lender to make an Advance under the Loan Agreement with respect to any such Designated Contract or any Invoice issued thereunder or pertaining thereto.

3. **Application of Payments on Assigned Receivables.** The Loan shall bear interest as provided in the Note and be subject to certain fees, expenses and other costs, all as more particularly set forth in the Loan Agreement. Upon its receipt from the Agency of payments in respect of the Invoices assigned pursuant hereto, Lender at its option and in its sole discretion may apply the total amount received pursuant to an Invoice assigned to the Collateral Trustee as herein contemplated (the "Invoice Proceeds") to the reduction of the Obligations of Borrower, including interest, fees, expenses, commissions and other charges, from or relating to Advances made with respect to any other Invoice or Invoices, in whole or in part. The failure to apply the Invoice Proceeds to any Obligations of Borrower or disbursement of funds to Borrower notwithstanding other outstanding Obligations shall in no way diminish or impair the obligation of Borrower to pay the same in accordance with the terms of the Loan Agreement and the other Loan Documents.

4. **Borrower's Warranties and Representations.** To induce Lender to advance funds to Borrower, and with full knowledge that the truth and accuracy of the following are being relied upon by Lender, the Funding Source and the Collateral Trustee, Borrower hereby warrants and represents to Lender:

(a) That each Designated Contract is a valid, binding and legally enforceable obligation of the parties thereto;

(b) That, with respect to each Invoice assigned to Lender pursuant to this Assignment, each and every obligation of Borrower under the Designated Contract pursuant to which such Invoice was issued (the "Related Contract") for which payment is requested in such Invoice has been fully and satisfactorily completed and performed; that the Related Contract and Borrower's Invoice for the same have been validly accepted and certified by the Agency as fully and satisfactorily completed and that the Agency has authorized payment of the same; and that Borrower is entitled to full and timely payment under the terms of Related Contract pertaining to such Invoice of the portion of the Contract Price covered by such Invoice;

(c) That Borrower has advised and directed the Agency to pay all sums due or to become due under the Designated Contract directly to the Collateral Trustee;

(d) That Borrower has full lawful authority to enter into this Assignment and that it is not a party to or bound by any contract, agreement, obligation, statute, regulatory provision or other restriction which would prevent, prohibit or adversely affect its ability to carry out the terms and provisions of this Assignment;

(e) That (i) Borrower is the owner of all rights, title and interest in and to any and all payments due and to become due under each Designated Contract, free and clear of any and all Liens whatsoever; (ii) it has not previously assigned, encumbered or in any way impaired its rights under any Designated Contract, and has not impaired any security

given thereunder; and (iii) it has the full lawful right and authority to assign its right to payments due under such Designated Contract to Lender;

(f) That all subcontractors, materialmen and laborers of Borrower under the Designated Contract have been paid in full or will be paid in full out of the sums to be advanced to Borrower by Lender with respect to such Designated Contract under the Loan Agreement and that there are no setoffs, holdbacks, adjustments, qualifications, claims or reductions of any nature whatsoever which may validly be asserted by the Agency, a surety of Borrower or any other party against the proceeds of the Designated Contract;

(g) That there are no sureties on a bond on the Designated Contract other than those sureties which have been disclosed in writing to Lender; and

(h) That the assignment evidenced by this Assignment is irrevocable by Borrower for the period beginning on the Agreement Date and ending at such time as this Assignment has terminated, all Obligations have been paid in full by Borrower and Lender shall have no obligation to make Advances under the Loan Agreement, and payment to anyone other than the Collateral Trustee shall not constitute payment of Borrower's account with Lender.

Borrower further warrants that sufficient funds have been appropriated to the Agency to enable the Agency to satisfy its obligations under the Designated Contract and that there are no adjustments, holdbacks, setoffs, reductions or qualifications of any kind applicable to Borrower's account with the Agency. Borrower shall notify Lender immediately upon the occurrence of any event that might in any way impair or adversely affect Borrower's or Lender's interest in the Designated Contract.

5. **Effect of Termination of Commitment.** In the event the Commitment established under the Loan Agreement is cancelled or terminated, such cancellation or termination shall not affect the rights or obligations of the parties under this Assignment with respect to any Obligations of Borrower then outstanding, and this Assignment shall remain in full force and effect until Borrower's Obligations have been fully satisfied.

6. **Security Interest Documentation.** As a further condition to Lender's obligation to fund any Advance to Borrower, Borrower shall have executed and delivered to Lender original UCC-1 financing statements (collectively, the "Financing Statements") designating Borrower as debtor, Lender as secured party, and the Collateral Trustee as assignee, evidencing the security interest in the Collateral granted to Lender hereunder, and such Financing Statements shall have been filed with the appropriate filing officer in the jurisdiction where Borrower's chief executive office is located, in each jurisdiction in which Borrower will perform any portion of the Designated Contract and in any other jurisdiction required by Lender or the Collateral Trustee. Lender shall be entitled to file and record the Financing Statements with any appropriate governmental agencies for the purpose of perfecting its security interests made by

this Assignment. Borrower hereby authorizes Lender to file a photostatic or photographic copy or other optical image reproduction of any Financing Statement executed by Borrower in any jurisdiction or filing office which Lender or the Collateral Trustee shall determine to be necessary or appropriate to perfect or continue perfection of the security interest in the Collateral granted to Lender hereunder with the same effect as though such photostatic or photographic copy or optical image reproduction constituted an original Financing Statement executed by Borrower, as debtor, and hereby grants a power of attorney to Lender and to the Collateral Trustee, or either of them acting separately, to execute in its behalf such other or additional Financing Statements as Lender, the Collateral Trustee, or either of them, shall deem appropriate and which contain a description of Collateral substantially the same as the description of Collateral contained in any Financing Statement executed on behalf of Borrower or as is set forth in this Assignment and any amendment or supplement thereto, for filing in any jurisdiction required by Lender or the Collateral Trustee or in order to correct or replace any defective or incomplete Financing Statement executed by Borrower. Borrower further agrees to perform such other acts and to execute such further documents, all at its sole cost and expense, as Lender may consider to be necessary or advisable to further evidence or secure for Lender and the Collateral Trustee the interests of Borrower assigned hereunder. Borrower hereby grants a power of attorney to Lender and to the Collateral Trustee, or either of them acting separately, to execute in its behalf amended Financing Statements and other security documents as Lender or the Collateral Trustee deems to be necessary or appropriate to evidence the interest of Lender and the Collateral Trustee in the Collateral or any part thereof, which power of attorney shall be irrevocable and coupled with an interest. Borrower agrees to provide Lender with a true and correct copy of each Invoice issued after the date of this Assignment and to be assigned to the Collateral Trustee. Borrower further agrees that the security interest granted to Lender hereunder and the Financing Statements executed simultaneously herewith shall cover and include each Invoice issued by Borrower pursuant to the Designated Contract at any time. Borrower shall further execute and deliver to the Collateral Trustee a notice of assignment to be provided to the Agency and any sureties, if any, on each Designated Contract.

7. **Failure of the Agency to Make Payment on the Designated Contract.** In the event the Agency shall refuse or fail, for whatever reason, to make the payments or any part of the payments to the Collateral Trustee required of the Agency under the Designated Contract, Lender shall have full recourse against Borrower, and Borrower shall promptly, upon written notice from Lender, pay and transfer to Lender an amount equal to all Obligations then outstanding with respect to such Designated Contract.

8. **Recourse.** In the event any Invoice is not paid by the Agency and received by the Collateral Trustee on or before the earlier of seventy-five (75) days after the original due date of such Invoice and one hundred five (105) days after the date of such Invoice, then at Lender's sole discretion, Borrower shall immediately either pay the entire amount owing to the Collateral Trustee with respect to such Invoice or deliver to Lender one or more additional Invoices issued under such Designated Contract and assigned to the Collateral Trustee as shall be acceptable to Lender, of equal or greater amount than the Invoice(s) being replaced. The replacement Invoice(s) shall be subject to all the terms and conditions of this Assignment.

9. **Limitation of Assignment.** Nothing in this Assignment shall constitute or be construed as an assignment to or assumption by Lender or the Collateral Trustee of Borrower's obligations and duties to perform and fulfill the terms and conditions imposed upon Borrower under the Designated Contract.

10. **Indemnification.** Borrower hereby agrees to indemnify and hold Lender, the Collateral Trustee, the Servicer and each Funding Source, and their respective officers, directors, affiliates and assigns (each an "Indemnified Party") harmless from any and all claims, losses, damages or liabilities, of whatever nature, to which an Indemnified Party may become subject, together with any and all costs, settlements, and expenses associated with such claims, losses, damages or liabilities, including reasonable attorneys fees and expenses, arising from or based, in whole or in part, upon (i) the failure or refusal, for whatever reason, of the Agency to pay to the Collateral Trustee on a timely basis any and all amounts due under any Designated Contract; (ii) any claims of any surety of Borrower, or any other party, to all or any portion of amounts paid or payable under any Designated Contract; or (iii) any representation, warranty, agreement or covenant of Borrower contained in or made in connection with this Assignment proving to have been false, inaccurate or misleading when made. All attorneys fees and expenses to be paid hereunder, to the extent permitted by applicable law, shall be paid without any reduction or setoff for any reason, including specifically the success of any counterclaim or defense to enforcement of this Assignment, or any other claim of Borrower against any Indemnified Party.

11. **Power of Attorney.** Borrower irrevocably appoints Lender, its successors and assigns, the attorney-in-fact for Borrower, with full power of substitution and revocation, at the expense of Borrower and in its name or otherwise, to collect, sue for, receive, and furnish receipts for the moneys or any part therefor due under each Designated Contract; to negotiate by endorsement or otherwise in the name of Borrower by or for Lender's benefit all instruments, whether negotiable or not, including checks, drafts, and notes; to execute in its behalf amended financing statements and other security documents as Lender deems to be necessary or appropriate to evidence or secure Borrower's interest; and to settle or discontinue any proceedings pertaining to this Assignment. Such power of attorney is coupled with an interest and shall be irrevocable for the period beginning on the Agreement Date and ending at such time as this Assignment has terminated, all Obligations have been paid in full by Borrower and Lender shall have no obligation or undertaking to make additional Advances under the Loan Agreement. Borrower acknowledges and agrees that all checks, drafts and notes received by Lender which are made payable to the joint order of Borrower and Lender, or otherwise, will be negotiated by Lender pursuant to the terms of this paragraph and applied pursuant to the provisions of this Assignment and the Loan Agreement.

12. **Waiver.** The failure of either party to enforce at any time or for any period the provisions of this Assignment shall not be construed as a waiver of such provisions or of the right of the party thereafter to enforce each and every provision contained herein. The waiver of any default or the failure to exercise any of the foregoing rights shall not be deemed to be a waiver of any subsequent default or a waiver of the right to exercise any right granted.

13. **Severability.** In the event that any provision in this Assignment is declared void or unenforceable by any court of competent jurisdiction, such declaration shall not affect the enforceability of any other provision of this Assignment, it being intended that the provisions of this Assignment shall be severable and shall apply as if any such void or unenforceable provision had not been included herein.

14. **Enforceability; Amendment.** No amendment, alteration, or modification of any of the provisions of this Assignment shall be binding unless agreed to in writing and signed by the parties hereto.

15. **Assignment to Collateral Trustee for Benefit of Funding Source.** Lender and Borrower each acknowledge and agree that Lender will assign and transfer the Loan and all rights of Lender thereunder and to the security therefor (including specifically the rights of Lender under this Assignment, and all rights of Lender with respect to each Designated Contract assigned to Lender hereunder and which may hereafter be assigned by Borrower to Lender under the terms of any amendment or supplement to this Assignment, and all other Collateral), to the Collateral Trustee as collateral trustee or collateral agent for the benefit of the Funding Source, as security for obligations of Lender to the Funding Source and for the purposes contemplated in the Collateral Agreement. The parties hereto agree that following any such assignment by Lender to the Collateral Trustee, in the event that Borrower shall receive written notice from Lender which states that the Collateral Trustee has exercised its right to assume the rights, powers and privileges of Lender under this Assignment (such notice being herein called a "Notice of Exercise"), all rights, powers and privileges of Lender under this Assignment shall inure to the benefit of and be exercisable by the Collateral Trustee, no rights or privileges afforded to or vested in Lender under this Assignment shall be exercisable by Lender without the approval or consent of the Collateral Trustee, and from and after receipt by Borrower of such Notice of Exercise and thereafter until such time as Borrower shall receive a written notice executed by the Collateral Trustee that any such Notice of Exercise has been rescinded or withdrawn, the Collateral Trustee shall be deemed to be the "Lender" for all purposes under this Assignment and Borrower shall not be entitled to rely on any action taken by Lender which is required or permitted hereunder unless taken by or with the express written consent of the Collateral Trustee.

16. **Further Assignment.** Notwithstanding anything herein to the contrary, Lender shall be entitled to assign this Assignment and its interest in the Designated Contracts to any third party in accordance with and subject to the limitations of Subpart 32.8 of the Federal Acquisition Regulations without the necessity of notice to or consent of Borrower. Borrower agrees to promptly execute any documents and to take such further steps as may be deemed necessary by Lender in connection with any assignment or reassignment of this Assignment, all at Borrower's sole cost and expense.

17. **Taxpayer Identification Number of Borrower.** Borrower certifies and acknowledges that the number set forth below immediately following the signature of Borrower to this Assignment as the taxpayer identification number of Borrower is accurate and agrees that

Lender shall be authorized, without further direction or consent of Borrower, to include such taxpayer identification number of Borrower in any financing statement, amendment, continuation statement, assignment, release or termination statement which is required or permitted to state the taxpayer identification number of Borrower.

18. **Entire Agreement.** This Assignment and the other Loan Documents contain the entire agreement between Borrower and Lender and, when effective, supersede and cancel all prior agreements between the parties with respect to the subject matter hereof; provided, however, that all assignment and funding agreements between the parties relating to Designated Contracts other than the Designated Contract or Designated Contracts identified in Schedule 1 hereto shall remain in full force and effect; and provided further, that all Financing Statements (and all amendments, assignments and continuations thereof) designating Borrower as debtor thereunder and Lender or the Collateral Trustee as the secured party thereunder shall not be affected by execution and delivery of this Assignment.

19. **Additional Provisions and Terms.** The additional provisions and terms set forth in Schedule 2 hereto (if any) shall apply in all instances to this Assignment and the interpretation of the provisions hereof and are hereby incorporated herein by reference and shall for all purposes constitute a part of this Assignment. In the event of inconsistency between the additional provisions and terms (if any) set forth on Schedule 2 hereto and the provisions of the Assignment contained in Paragraph 1 through Paragraph 18 hereof, the provisions and terms set forth on said Schedule 2 shall govern the application and interpretation of this Assignment.

**IN WITNESS WHEREOF,** Borrower has executed this Agreement or caused it to be executed under seal by its duly authorized officers, all as of the day and year first above.

BORROWER:

AMERICAN RENOVATION & CONSTRUCTION COMPANY

By: ______________________
Name: Anthony P. Dethloff
Title: Vice President/Advancement

Attest: ______________________
Name: Anthony J. Jemison
Title: Secretary

[SEAL]

Taxpayer Identification Number of Borrower: 33-0260362

ACCEPTED:

LENDER:

CLASSICAL RECEIVABLES FUNDING COMPANY, L.L.C.

By: ______________________
Name: Cecil E. Anthony
Title: manager
Date: August 22, 1996

[Assignment and Security Agreement]
00273825.W51

SCHEDULE 1
TO
ASSIGNMENT AND SECURITY AGREEMENT
(Page 1 of 4)

Description of Designated Contract(s)

Assigned on Date of Settlement (if any)

| | |
|---|---|
| Agency (the "Agency"): | Department of the Navy |
| Address: | Officer in Charge of Construction<br>Jacksonville Area<br>Box 139, Naval Air Station<br>Jacksonville, FL 32212-0139 |
| Government Contract No: | N62467-94-C-2570 |
| Description: | Reroof warehouse buildings 162 and 164, Naval Air Station, Jacksonville |
| Contract Date: | 9/30/94 |
| Contract Price: | $1,682,000.00 |

* * *

| | |
|---|---|
| Agency (the "Agency"): | Department of the Navy |
| Address: | Navy Public Works Center Jacksonville<br>Jacksonville, FL 32212-0030 |
| Government Contract No: | N68931-95-D-8374 |
| Description: | Roof repair, various locations, Navy Public Works Center Jacksonville |
| Contract Date: | 11/21/95 |
| Contract Price: | $3,992,585.00 (estimated amount) |

SCHEDULE 1
TO
ASSIGNMENT AND SECURITY AGREEMENT
(Page 2 of 4)

Description of Designated Contract(s)

Assigned on Date of Settlement (if any)

| | |
|---|---|
| Agency (the "Agency"): | Department of the Navy |
| Address: | Naval Facilities Engineering Command<br>Contracts Department<br>1220 Pacific Highway, Building 127<br>San Diego, CA 92132-5187 |
| Government Contract No: | N68711-93-C-1409 |
| Description: | Wholesale repairs and revitalization, FY94 Military Housing Project H394, Silver Strand, Phase I, San Diego, CA |
| Contract Date: | 7/29/94 |
| Contract Price: | $5,326,406.00 |

* * *

| | |
|---|---|
| Agency (the "Agency"): | Department of the Army |
| Address: | U.S. Army Engineer District, Sacramento<br>Corps of Engineers<br>1325 J Street<br>Sacramento, CA 95814-2922 |
| Government Contract No: | DACA05-94-C-0077 |
| Description: | Reroof Building No. 508, Sharpe Site, Lathrop, CA |
| Contract Date: | 9/28/94 |
| Contract Price: | $1,070,316.00 |

# SCHEDULE 1
# TO
# ASSIGNMENT AND SECURITY AGREEMENT
(Page 3 of 4)

Description of Designated Contract(s)

Assigned on Date of Settlement (if any)

| | |
|---|---|
| Agency (the "Agency"): | Department of the Army |
| Address: | U.S. Army Engineer District, Sacramento<br>Corps of Engineers<br>1325 J Street<br>Sacramento, CA 95814-2922 |
| Government Contract No: | DACA05-94-C-0102 |
| Description: | Reroof Buildings 286 and 386, DDRW Sharpe Site, California |
| Contract Date: | 9/28/94 |
| Contract Price: | $2,834,000 (as modified by Modification No. P00002) |

* * *

| | |
|---|---|
| Agency (the "Agency"): | Mesa Grande Indian Housing Authority |
| Address: | 4040 30th, Suite 204<br>San Diego, CA 92104 |
| Government Contract No: | CA 148-1 |
| Description: | Construction of Fifteen Low Rent Dwelling Units on the Mesa Grande Indian Reservation |
| Contract Date: | ________ |
| Contract Price: | $________ |

# SCHEDULE 1
# TO
# ASSIGNMENT AND SECURITY AGREEMENT
(Page 4 of 4)

<u>Description of Designated Contract(s)</u>

<u>Assigned on Date of Settlement (if any)</u>

| | |
|---|---|
| Prime Contractor: | SUNDT/ACTUS/IBC, A Joint Venture |
| Address: | P. O. Box 26685<br>Tucson, AZ 85726 |
| Subcontract No: | GM-8014 |
| Description: | 300 Family Housing Units, PWC, Guam |
| Subcontract Date: | 1/13/95 |
| Subcontract Price: | $2,935,169.00 |
| Prime Contract No: | N62742-93-C-0605 |
| Prime Contract Date: | 3/25/94 |

**SCHEDULE 2**
**TO**
**ASSIGNMENT AND SECURITY AGREEMENT**
**(Page 1 of 1)**

Additional terms and provisions of this Assignment and Security Agreement are as follows:

None