No. 03-1798C
(Chief Judge Damich)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

AMERICAN RENOVATION AND,
CONSTRUCTION COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S OPPOSITION TO CLASSICAL FINANCIAL SERVICES, LLC'S MOTION TO INTERVENE

---

Peter D. Keisler
Assistant Attorney General

David M. Cohen
Director

ROBERT E. KIRSCHMAN, JR.
Assistant Director

Michael N. O'Connell
TRIAL ATTORNEY
Commercial Litigation Branch
Civil Division
Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

December 3, 2004

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. The Standard . . . . . . . . . . . . . . . . . . . . . 6

II. Classical Has Not Acted In A Timely Manner . . . . . . 8

III. There Has Been No Valid Assignment To Classical By ARC . . . . . . . . . . . . . . . . . . . 10

IV. This Court Lacks Jurisdiction To Consider Classical's Complaint . . . . . . . . . . . . . . . . 13

V. There Has Been No Waiver Of Sovereign Immunity For Classical's Claim As A Judgment Lien Holder . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

Page(s)

American Maritime Transport, Inc. v. United States,
870 F.2d 1559 (Fed. Cir. 1989) . . . . . . . . . . . . . . . 7

Banco Bilbao Vizcaya-Puerto Rico v. United States,
48 Fed. Cl. 29 (2000) . . . . . . . . . . . . . . . . . . 10, 11

Belton Industrial, Inc. Inc. v. United States,
6 F.3d 756 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . 8

Cascade Natural Gas Corp. v. El Paso Natural Gas Corp.,
386 U.S. 129 (1967) . . . . . . . . . . . . . . . . . . . . 16

Department of the Army v. Blue Fox, Inc.,
525 U.S. 255 (1999) . . . . . . . . . . . . . . . . . . . . 15

Fireman's Fund v. England,
313 F.3d 1344 (Fed. Cir. 2002) . . . . . . . . . . . . . . 10

Freeman v. United States,
50 Fed. Cl. 305 (2001) . . . . . . . . . . . . . . . . . 7, 14

Houston v. United States,
60 Fed. Cl. 507 (2004) . . . . . . . . . . . . . . . . . . 14

Lalic v. Chicago, Burlington & Quincy Railroad Co.,
263 F. Supp. 987 (N.D. Ill. 1967) . . . . . . . . . . . . . 15

Orion Scientific Systems v. United States,
28 Fed. Cl. 669 (1993) . . . . . . . . . . . . . . . . . . . 7

Riviera Finance of Texas, Inc. v. United States
58 Fed. Cl. 528 (2003) . . . . . . . . . . . . . . . . . . 10

Smith v Gales
144 U.S. 509 (1892) . . . . . . . . . . . . . . . . . . . . 7

United States v. El Paso Natural Gas Corp.,
376 U.S. 651 (1964) . . . . . . . . . . . . . . . . . . . . 16

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . 14

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

41 U.S.C. § 15 . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 1491(b)(2) . . . . . . . . . . . . . . . . . . 13

31 U.S.C. § 3727 . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN RENOVATION AND, CONSTRUCTION COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-1798c (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO CLASSICAL FINANCIAL SERVICES, LLC'S MOTION TO INTERVENE

Defendant, the United States, respectfully submits this opposition to the motion to intervene filed by Classical Financial Services, LLC ("Classical").[1]

STATEMENT OF ISSUES

1. Whether Classical has a sufficient interest in this lawsuit which requires the Court to allow it to intervene.

2. Whether Classical's motion to intervene is timely.

3. Whether Classical has identified an assignment to it by ARC which meets the requirements of the Anti-Assignment Act and its implementing regulations.

4. Whether the Court possesses jurisdiction to consider Classified's complaint because it seeks declaratory relief.

5. Whether Classified has identified a waiver of sovereign immunity which would allow it to assert its claims against the United States.

---

[1] If the Court grants Classical's motion, defendant respectfully requests that the Court grant defendant 30-days from the date of the order to respond to Classical's complaint.

## STATEMENT OF THE CASE

I. Nature Of The Case

American Renovation and Construction Company ("ARC") was the general contractor for the Air Force on contract no. F08602-99-CK-006, which provided for the construction of multi-family housing units at MacDill Air Force Base. This is an action by ARC seeking reversal of the Air Force's termination of the contract for default. There is no money claim pending before the Court.

II. Statement Of Facts

The Air Force awarded the contract to ARC in April, 1999, and issued a notice to proceed in August, 1999. The Air Force terminated the contract for default in July, 2002. The Air Force and ARC's surety, St. Paul Fire and Marine Insurance Co., Inc. ("St. Paul"), thereafter entered into a takeover agreement which provided for the completion of the contract work.

As indicated in Classified's motion to intervene, ARC maintained for several years a lender-borrower relationship with Classified. By approximately April 2000, however, the relationship between ARC and Classical soured. On April 19, 2000, Classical forwarded to the Air Force "six Executed Instruments of Assignment and six Notices of Assignment" purportedly for the MacDill contract. Appendix ("App.") 1. Acceptance of the instrument of assignment was executed by Dennis R. Terhune, Chief Manager of Classical. App. 3. Two days later, ARC wrote to the Air Force stating that it had terminated its

relationship with Classical, that checks from Classical to ARC's vendors and suppliers had been returned for insufficient funds, and that ARC expected Classical to contact the Air Force, which, in fact, Classical had already done. App. 4. The letter further stated:

> Any ARC contract moneys, information, equipment, and/or property for which you have control should <u>under no circumstances</u> be released to Classical or any of its agents.

<u>Id.</u> (Emphasis in original).

On April 26, 2000, ARC wrote to the Air Force stating that ARC "offers official notice that it is not its intent to assign ANY of the contract proceeds/moneys on the" MacDill contract. App. 5. ARC further stated that "any Instrument of Assignment - irrespective of the date signed - should be disregarded." <u>Id.</u>

ARC wrote to the Air Force again on April 27, 2000, stating that any assignments to Classical "are not valid." App. 6. ARC enclosed a September 16, 1999 letter from ARC to Classical. App. 7. The September letter stated that ARC was forwarding an assignment for the MacDill contract and several others to Classical "as you requested, for your upcoming audit." <u>Id.</u> ARC further stated in the September letter that the contract was "backed by Soltek Pacific, Mr. Steve Thompson, and as you know, he will not allow these projects to be assigned to any other entity. . ." <u>Id.</u> ARC's September 4letter concluded "I reiterate, these Assignments CANNOT be executed for any reason." <u>Id.</u>

In a May 1, 2000 letter to the Air Force, ARC restated that it did not intend to assign the contract to Classical as evidenced by the September 16, 1999 letter to Classical. App. 8-9. ARC further pointed out that FAR 32.805 requires that an assignment be attested by the secretary or assistant secretary of a corporation, and that the purported assignment lacked such an attestation. Id.

The Air Force contracting officer wrote to Classical on May 23, 2000, explaining that the assignment did not meet the requirements of FAR 32.805(a)(1)(ii) which requires the assignment be attested by the secretary or assistant secretary of ARC. App. 10.

On May 24, 2000, Dennis Terhune of Classical (Financial) wrote to the Air Force on Classical Receivables Funding Co., LLC letterhead, forwarding to the Air Force a new instrument of assignment dated May 24, 2000. App. 11. Mr. Terhune stated in the letter that ARC, in an "Assignment and Security Agreement" dated July 15, 1996, granted Classical Receivables an irrevocable power of attorney "to execute such documents on behalf of" ARC. Id. Mr. Terhune executed the instrument of assignment upon behalf of ARC and executed acceptance of the assignment upon behalf of Classical Receivables. App. 12.

On June 8, 2000, the contracting officer informed Mr. Terhune that the new assignment still lacked an attestation from ARC's secretary or assistant secretary, as well as the signature of an authorized representative of ARC. App. 14. The

Air Force returned the documents to Mr. Terhune without action. Id.

After receiving a request from Classical that it reconsider its decision, the Air Force reexamined the issue and reviewed the Assignment and Security Agreement. App. 15. On July 17, 2000, the contracting officer again denied Classical's request. The contracting officer agreed that the Assignment and Security Agreement granted Classical [Receivables] a power of attorney, but pointed out that the MacDill contract was not included on the list of "Designated Contracts" to which the grant of a power of attorney applied. Id.

By letter dated July 14, 2000, Classical's attorneys informed the Air Force that "our client regrets that it now has no alternative to file suit against the Department of the Air Force, and such action will be commenced shortly." App. 16-19. Attached to the letter was yet another instrument of assignment. In this assignment, Mr. Terhune again executed the instrument of assignment upon behalf of ARC and executed acceptance upon behalf of Classical (Financial). App. 20.

By letter to the Air Force dated August 24, 2000, Robert G. Watt, attorney for St. Paul, stated that:

> the assignments presented by Classical are not valid and that payments should continue to be made to ARC in order to ensure continued project performance and timely payments to ARC's subcontractors and suppliers.

App. 22-25. Mr. Watt further stated that St. Paul had not received notice of the assignments and that this rendered the

assignments void to the extent that St. Paul was prejudiced. App. 23-24.

ARC thereafter submitted to the Air Force an assignment of claims to First Union National Bank. Upon review, the Air Force recognized the assignment by contract modification 14 on June 22, 2001. App. 26-28.

ARGUMENT

I. The Standard

Rule 24 of the Rules of the Court of Federal Claims ("RCFC") provides two bases for intervention of right pursuant to RCFC 24(a). The first basis for intervention pursuant to RCFC 24(a), intervention pursuant to a statute which confers an unconditional right to intervene, does not appear to be applicable here because Classical cites no statute which grants it an unconditional right to intervene and we are aware of none. RCFC 24(a)(2) allows Classical to intervene if it claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect the interest, unless the applicant's interest is adequately represented by existing parties. RCFC 24(b)(2) allows permissive intervention when an applicant's claim or defense and the main action have a question of law or fact in common. In considering a motion for permissive intervention the Court "shall consider whether the intervention will unduly delay

or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2).

"Intervention is only proper to protect those interests which are 'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation of the judgment.'" American Maritime Transport, Inc. v. United States, 870 F.2d 1559, 1561 (Fed.Cir. 1989) (quoting Smith v. Gale, 144 U.S. 509, 518 (1892)). "The interest thus may not be either indirect or contingent." Id.

Intervention in this Court has historically been disfavored because the Court does not possess jurisdiction to consider disputes between private parties. Freeman v. United States, 50 Fed.Cl. 305, 308 (2001). The Court is limited to adjudicating "public rights." Id. An intervenor accorded full party status may have the power to interfere with, burden or prolong the adjudication of the pending suit by: expanding the scope of discovery beyond that required by the original suit; filing a counterclaim; filing motions on issues extraneous to the claim properly before the Court; and opposing and preventing a settlement agreed to by the original parties. Orion Scientific Systems v. United States, 28 Fed.Cl. 669, 672 (1993).

The threshold question for the Court is whether the applicant's request to intervene is timely. Id. at 308. In evaluating timeliness, the Court considers three factors: (1) the length of delay in making the application for intervention; (2) the prejudice to existing parties from intervention versus the

prejudice to the would-be intervenor if intervention is denied; and (3) any other unusual circumstances militating in favor of or against intervention. Id. at 309 (citing Belton Indus., Inc. Inc. v. United States, 6 F.3d 756, 762 (Fed.Cir. 1993) (Construing Court of International Trade Rule 24)).

As we establish below, Classical has failed to move to intervene in a timely manner. Moreover, neither intervention as a matter of right nor permissive intervention are appropriate here because: (1) there was no valid assignment to Classical; (2) Classical's complaint does not assert causes of action which this Court possesses jurisdiction to consider; and (3) there has been no waiver of sovereign immunity which would allow Classical to assert its claims against the United States.

## II. Classical Has Not Acted In A Timely Manner

This lawsuit was filed by ARC on July 28, 2003. Classical waited well over a year before it sought to intervene. Moreover, it has been more than four years since Classical informed the Air Force that it would "shortly" commence a lawsuit against the Air Force because the contracting officer refused to recognize the purported assignment as valid. In its brief, Classified does not explain why it waited more than four years for it to attempt to enforce the alleged assignment.

As we establish below, Classical will not be prejudiced if the Court denies its motion to intervene because it has no claims which it can assert in this Court. Conversely, the Air Force has been prejudiced by the dilatoriness of Classified's actions.

First, the Air Force clearly would not have recognized ARC's assignment to First Union National Bank in June 2001 if there was already a valid assignment to Classified. Second, from Classified's threat to sue the Air Force in July 2000 until the termination of ARC in July 2002, the Air Force paid ARC or First Union millions of dollars on the contract. ARC's attempts to obtain a declaration from the Court that the assignment was valid after the passage of so many years prejudices the Government because, if Classical is correct (and we are incorrect) that the assignment was valid, the Government paid money to ARC that it would not have paid. If Classical is correct and had acted promptly to enforce its rights, such payments would have been prevented by prompt action by Classical.

Third, the Government has been prejudiced because the Government has conducted this litigation under the assumption that ARC and/or St. Paul are authorized to act upon behalf of ARC. The Government has spent significant time and money to analyze ARC's claims on the project and discuss the claims with ARC's representatives. The Government has dealt exclusively with the Watt Tieder firm because it represents both ARC and St. Paul. The Government would expect that if Classified is allowed to intervene much of this effort will have been wasted or would have to be duplicated if Classified now joins this lawsuit.

III. There Has Been No Valid Assignment To Classical By ARC

Although Classical argues that it has a direct and substantial interest in the property forming the basis of this action, it does not. As we establish in this section, there has been no assignment to Classical by ARC which complies with the Anti-Assignment Act and its implementing regulations.

The Federal Circuit has explained that what is commonly called the Anti-Assignment Act consists of two statutory provisions. See, Fireman's Fund v. England, 313 F.3d 1344, 1349 (Fed.Cir. 2002); Riviera Finance of Texas, Inc. v. United States; 58 Fed.Cl. 528 (2003). Title 41 U.S.C. § 15 concerns the assignment of contracts. Tile 31 U.S.C. § 3727 concerns the assignment of claims. Federal Acquisition Regulation ("FAR") subpart 32.8 implements the Anti-Assignment Act. Banco Bilbao Vizcaya-Puerto Rico v. United States, 48 Fed.Cl. 29, 33 (2000); Riviera Finance, 58 Fed.Cl. at 530. FAR 32.802, Conditions, provides:

> Under the Assignment of Claims Act, a contractor may assign moneys due or to become due under a contract if the following conditions are met:
>
> *     *     *     *     *
>
> (e) The assignee sends a written notice of assignment together with a true copy of the assignment instrument to the—
>
> (1) Contracting officer or Agency head;
>
> (2) Surety on any bond applicable to the contract; and

(3) Dispersing officer designated in the contract to make payment.

FAR 32.805, Procedure, sets forth the procedural requirements for corporations to assign moneys due or to become due pursuant to contracts as follows:

(1) Assignments by corporations shall be—

(i) Executed by an authorized representative;

(ii) Attested by the secretary or the assistant secretary of the corporation; and

(iii) Impressed with the corporate seal or accompanied by a true copy of the resolution of the corporation's board of directors authorizing the signing representative to execute the assignment.

The instruments of assignment that Classical (Financial and Receivables) sent to the contracting officer were not valid because they did not comply with the procedural requirements of FAR 32.805. This FAR provision requires that the secretary or assistant secretary of the corporation attest to assignments by corporations. The first assignment from Classical stated on its face that it had been attested to by Kim McMahon, the treasurer of the corporation. App. 3. Neither of the later assignments were attested to by anyone at ARC. App. 12, 20. As evidenced by the record, the Air Force at all times demanded strict compliance with the terms of FAR 32.805. Classical's failure to comply with the procedural requirements of the FAR, absent a waiver by the Air Force, rendered the assignment invalid as a matter of law. Banco Bilbao, 48 Fed.Cl. at 32-33.

In its brief, Classical does not argue that any of the three assignments it, or Classical Receivables, submitted to the Air Force in 2000 were valid. Brief at 3. Instead, it argues for the first time that general language in the assignment and security agreement between ARC and Classical Receivables is sufficient to accomplish an enforceable assignment. Classical points to language assigning "Designated Contracts" to ARC, but the MacDill contract is not listed as a designated contract in the schedule attached to the agreement. Motion, Tab E. Classical further points to general language which assigns to Classical ARC's "accounts receivables," and "general intangibles" including "choses in action and causes of action." Id.

Classical simply ignores the requirements of the Anti-Assignment Act and the implementing regulations. The arguments that it now advances in favor of assignment are easily dismissed because Classical makes no argument that the language cited in the assignment and security agreement complies with the provisions of the FAR and, indeed, it could make no such argument. The assignment and security agreement does not purport to assign the contract at issue, and could not because it predates the contract by approximately three years. Thus, there was no valid assignment of the MacDill contract to Classical.

## IV. This Court Lacks Jurisdiction To Consider Classical's Complaint

In its proposed complaint (motion at Ex. 1), Classical attempts to allege three causes of action. Counts one and two seek declaratory judgments from the Court. Although there is no claim for money damages before the Court, count one requests that the Court declare, among other things, that Classified is "the rightful owner by assignment of any award of damages to Plaintiff in this litigation." Proposed complaint at 5. Count two requests that the Court declare, among other things, that Classified "has a continuing security interest in any award of damages to Plaintiff in this litigation." Id. at 6. Count three also essentially seeks declaratory relief because, although it incorporates paragraphs 1 through 66 of ARC's complaint, it requests that the Court declare that Classified "is the rightful owner by assignment of any award of damages to Plaintiff in this litigation." Id. at 7. This is precisely the relief that Classified requested in count one.

In United States v. King, 395 U.S. 1, 5 (1969), the Supreme Court held that the Court of Claims did not possess declaratory judgment jurisdiction. Although Congress has since provided this Court with limited jurisdiction to issue declaratory judgments such as in bid protest actions (28 U.S.C. § 1491(b)(2)), the Supreme Court's holding in King otherwise remains valid precedent. E.g., Houston v. United States, 60 Fed.Cl. 507

(2004). Thus, even if the Court granted Classical's motion to intervene, the complaint should be dismissed for lack of jurisdiction.

Finally, the Court also does not possess jurisdiction because Classified's complaint asks the Court to rule that it, and not ARC, is the rightful owner of any award of damages in this action. There is no money claim before the Court, only a claim relating to the propriety of the termination for default. Even assuming that there is a monetary claim, Classified is requesting that the Court decide a dispute between it and ARC/St.Paul as to which entity would be entitled to payment if the Government in the future makes further payments on this contract. However, the Court does not possess jurisdiction to decide a dispute between ARC/St. Paul and Classical. Freeman v. United States, 50 Fed.Cl. 305, 308 (2001). Thus, the Court does not possess jurisdiction to consider Classical's complaint.

V. There Has Been No Waiver Of Sovereign Immunity For Classical's Claim As A Judgment Lien Holder

In its brief at page 7, Classical alleges that it has "judgment lien rights" against the United States. However, Classified identifies no waiver of sovereign immunity which would allow it to enforce such rights.

The United States, as sovereign, is immune from suit save as it consents to be sued. United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity is to be strictly

construed, in terms of its scope, in favor of the sovereign. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999).

In Sherwood, the Supreme Court held that Congress had not waived sovereign immunity for an action in either a district court or the Court of Claims by a judgment lien holder. Id., 312 U.S. at 589-92. In Blue Fox, the Supreme Court held that an unpaid subcontractor on a Government project could not enforce a lien against the United States. The Court explained that its holding was "in accord with our precedent establishing that sovereign immunity bars creditors from attaching or garnishing funds in the Treasury." Id., 525 U.S. at 264.

The cases Classified cites at pages 5 to 8 of its brief are easily distinguished. None of the cases that Classified cites involves a question of sovereign immunity, the unique jurisdiction of this Court, or the requirements for a valid assignment contained in the Anti-Assignment Act or the FAR. For example, Classified cites Lalic v. Chicago, Burlington & Quincy Railroad Co., 263 F.Supp. 987 (N.D. Ill. 1967). In Lalic, state agencies who had paid disability benefits to an injured employee sought to intervene in a lawsuit between the employee and his employer, and to enforce a lien on funds to be paid by the employer to the employee. The court granted the agencies' motion to intervene and ruled that they had valid liens. Id., 263

F.Supp. at 989. These facts are entirely dissimilar to this case.

Classified also cites Cascade Natural Gas Corp. v. El Paso Natural Gas Corp., 386 U.S. 129 (1967). Cascade is also entirely dissimilar to the present matter. Cascade involved the acquisition of a natural gas company by a competitor. In an earlier case, the Supreme Court had ruled that the acquisition violated section 7 of the Clayton Act, and ordered divestiture of this interest. United States v. El Paso Natural Gas Corp., 376 U.S. 651 (1964). After remand, numerous entities sought to intervene, including the State of California, which wanted to preserve competition in the natural gas market, and a utility which was a large user of natural gas and also desired to maintain a competitive market. Cascade, 386 U.S. at 132-33. As these background facts indicate, Cascade did not involve intervenors which sought to assert claims against the United States, did not involve the FAR, and did not involve this Court's predecessor Court. Thus, Cascade does not help Classified.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny Classified's motion to intervene.

Respectfully Submitted,

Peter D. Keisler
Assistant Attorney General

David M. Cohen
Director

s/Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Assistant Director

s/Michael N. O'Connell
Michael N. O'Connell
TRIAL ATTORNEY
Commercial Litigation Branch
Civil Division
Department of Justice
ATTN: Classification Unit
8th Floor, 1100 L St. NW
Washington, D.C. 20530
Tele: (202) 307-0282
Fax: (202) 514-8624

December 3, 2004

# APPENDIX

| Document | Pages |
|---|---|
| Classical Financial Letter April 19, 2000 | 1 |
| Notice of Assignment | 2 |
| Instrument of Assignment, September 16, 1999 | 3 |
| ARC Letter, April 21, 2000 | 4 |
| ARC Letter, April 26, 2000 | 5 |
| ARC Letter, April 27, 2000 | 6 |
| ARC Letter, September 16, 1999 | 7 |
| ARC Letter, May 1, 2000 | 8-9 |
| Air Force Letter, May 23, 2000 | 10 |
| Classical Receivables Letter, May 24, 2000 | 11 |
| Instrument of Assignment, May 24, 2000 | 12 |
| Notice of Assignment | 13 |
| Air Force Letter, June 8, 2000 | 14 |
| Air Force Letter, June 16, 2000 | 15 |
| Baker & Hostetler Letter, July 14, 2000 | 16-19 |
| Instrument of Assignment, July 6, 2000 | 20 |
| Instrument of Assignment | 21 |
| Watt, Tieder Letter, August 24, 2000 | 22-25 |
| Contract Modification 14 | 26-28 |

CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2004, a copy of foregoing defendant's opposition to Classical Financial Services, LLC's motion to intervene was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Michael N. O'Connell