**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERICAN RENOVATION AND CONSTRUCTION COMPANY,** | ) | |
| **Plaintiff,** | ) | **Case No. 03-1798C (Chief Judge Damich)** |
| **v.** | ) | |
| **THE UNITED STATES** | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CLASSICAL FINANCIAL SERVICES, LLC'S MOTION TO INTERVENE AS PLAINTIFF**

Respectfully submitted this 6th day of December 2004.


AMERICAN RENOVATION AND
CONSTRUCTION COMPANY

By Counsel:

s/- Harish Mirchandani
HARISH C. MIRCHANDANI
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
hmirchan@wthf.com

Of Counsel:

ROBERT G. WATT, ESQ.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
rwatt@wthf.com

TABLE OF CONTENTS

QUESTIONS PRESENTED ........ 1

CONCISE STATEMENT OF MATERIAL FACTS ........ 2

ARGUMENT ........ 3

I. THE APPLICANT DOES NOT HAVE ANY INTEREST IN THE SUBJECT MATTER OF THIS LAWSUIT ........ 3

A. The Applicant Does Not Have an Interest in the Subject Matter of This Lawsuit Because Equitable Subrogation Rights of the Completing Surety Pursuant to the Bond are Superior to any Right of an Assignee or Creditor of the Defaulted Contractor to the Contract Proceeds ........ 4

B. The Applicant Does Not Have an Interest in the Subject Matter of This Lawsuit as an Assignee Because The Supposed Assignment of Contract Proceeds to the Applicant is Not Valid and Enforceable as a Matter of Law ........ 8

II. THE APPLICANT'S CLAIM AGAINST PLAINTIFF AND THE PRESENT LAWSUIT HAVE NO COMMON ISSUES OF FACT OR LAW ........ 11

III. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

### Federal Cases

*Aetna Insurance Co. v. Poole and Kent Co.*, 303 F.Supp. 963 (S.D.Fla 1969) ..... 7

*American Financial Assocs., Ltd. v. United States*, 5 Cl.Ct. 761 (1984), *aff'd*, 755 F.2d 912 (Fed.Cir. 1985) ..... 9

*Appeal of Christine Bell*, 2004 WL 2231564 (P.S.B.C.A.), PSBCA No. 5037, Oct 04, 2004 ..... 11

*Appeal of Omar's Machine*, 1997 WL 665056 (H.U.D.B.C.A.), 97-2 BCA p 29,329, HUDBCA No. 92-G-7604-c12, HUDBCA No. 93-G-C5, Oct 17, 1997 11

*Balboa Insurance Co. v. U.S.*, 775 F.2d 1158, 1163 (D.C.1985) ..... 6

*Banco Bilbao Vizcaya-Puerto Rico v. United States*, 48 Fed.Cl. 29, 32 (2000). 8, 9

*Centex-Simpson Const. Co. v. Fidelity & Deposit Co. of Maryland*, 795 F.Supp. 35, 39 (D.Me. 1992) ..... 5, 6

*Federal Insurance Co. v. Constructora Maza, Inc.*, 500 F.Supp. 246, 251 (D.P.R. 1979) ..... 7

*Framingham Trust Company v. Gould-National Batteries, Inc.*, 427 F.2d 856 (1st Cir. 1970) ..... 7

*Insurance Co. of the West v. U.S.*, 243 F.3d 1367 (Fed.Cir. 2001 ..... 4

*Insurance Co. of the West v. U.S.*, 55 Fed.Cl. 529, 541 (2003) ..... 5

*National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) ..... 5, 6

*National Surety Corp. v. U.S.*, 319 F.Supp. 45,49 (N.D.Ala.1970) ..... 6

*Preferred National Insurance Co. v. U.S.*, 54 Fed.Cl. 600, 604 (2002) ..... 5, 7

*Riviera Finance of Texas, Inc. v. United States*, 58 Fed.Cl. 528 (2003) ..... 9

*Transamerica Insurance Co. v. U.S.*, 31 Fed.Cl. 602, 606 (1994) ..... 5

*United California Discount Corp. v. United States*, 19 Cl.Ct. 504 (1990) ..... 9

*United States Fire Insurance Co. v. U.S.*, 61 Fed.Cl. 494, 499 (2004) ..... 4, 5

**Statutes**

41 U.S.C. §15(b)(3)........................................................................................................ 8

## APPENDIX A


| | Pages |
|---|---|
| Affidavit of Marc Brown | 1-3 |
| ▪ Exhibit 1, Performance and Payment Bonds | 4-7 |
| ▪ Exhibit 2, Indemnity Agreement | 8-20 |
| ▪ Exhibit 3, Contract Modification No. P00014 | 21-28 |
| ▪ Exhibit 4, Final Decision, Termination for Default | 29-31 |
| ▪ Exhibit 5, Contract Modification No. P00018 | 32-41 |


## APPENDIX B


| | Pages |
|---|---|
| Department of Air Force Letter to Classical Financial Services | 42-43 |

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERICAN RENOVATION AND CONSTRUCTION COMPANY,** | ) | |
| **Plaintiff,** | ) | **Case No. 03-1798C (Chief Judge Damich)** |
| **v.** | ) | |
| **THE UNITED STATES** | ) | |
| **Defendant** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CLASSICAL FINANCIAL SERVICES, LLC'S MOTION TO INTERVENE AS PLAINTIFF**

COMES NOW the Plaintiff, American Renovation & Construction Company ("ARC" or "Plaintiff"), by counsel, and respectfully opposes Classical Financial Services, LLC's ("Classical" or "Applicant") Motion to Intervene as Plaintiff (Docket No. 26) because (1) Applicant has no interest in the subject matter of this lawsuit that would warrant its intervention as a matter of right pursuant to RCFC Rule 24(a); and (2) there are no common issues of law or fact between this action and the Applicant's alleged claim to justify permissive intervention pursuant to RCFC Rule 24(b).

In support of its opposition to Applicant's Motion to Intervene, Plaintiff states as follows:

**QUESTIONS PRESENTED**

1. Whether a purported creditor and/or assignee of a government contractor who was terminated for default has an interest in the subject matter of a

lawsuit, filed by the contractor to convert the termination for default to a termination for convenience of the government, where the performance bond surety of the defaulted contractor completed the project and is equitably subrogated to the contractor's rights.

2. Whether a purported creditor's and/or assignee's claim against a defaulted contractor for recovery of monies out of contract proceeds, on the one hand, and the contractor's action against the government to convert the termination for default to a termination for convenience of the government, on the other, state common issues of fact and law.

## CONCISE STATEMENT OF MATERIAL FACTS

1. On March 31, 1999, ARC entered into Contract Number F08602-99-CK006 (the "Contract") with the United States ("Defendant" or "Government") to perform certain construction work on a project known as: Construct JNCO Family Housing Units, Phases III and IV, MacDill AFB, Florida (the "Project"). *See* Affidavit of Marc Brown, ¶4. A true copy of the Affidavit is provided as Attachment A hereto.

2. On April 20, 1999, The St. Paul Fire and Marine Insurance Company ("Surety" or "St. Paul") executed performance and payment bonds, Bond No. KA6329 (the "Bond"), as a condition of the Contract. *See* Affidavit of Marc Brown, ¶5.

3. On April 20, 1999, "for the purpose of inducing [St. Paul] to become surety on the [Bond]," ARC, as the Bond Principal, and ARC's indemnitors executed an Agreement of Indemnity relating to the Contract. *See* Affidavit of Marc Brown, ¶7.

4. On July 29, 2002, Defendant issued a Contracting Officer's Final Decision terminating ARC's Contract for alleged default on the Project. *See* Affidavit of Marc Brown, ¶9.

5. On August 7, 2002, St. Paul entered into a Takeover Agreement with the Government to complete the Project. *See* Affidavit of Marc Brown, ¶10.

6. On July 28, 2003, Plaintiff filed the Complaint in this action requesting the Court to set aside the termination for default and convert it into a termination for convenience of the Government. *See* Docket No. 1.

7. On November 19, 2004, Applicant filed a motion to intervene as plaintiff in this lawsuit. *See* Docket No. 26.

## ARGUMENT

The Applicant's motion to intervene as a plaintiff in this lawsuit must be denied, as a matter of law, because neither does the Applicant have any interest in the subject matter of this lawsuit, nor are there any common issues of law or fact between Applicant's alleged claims against ARC and the present lawsuit.

### I. THE APPLICANT DOES NOT HAVE ANY INTEREST IN THE SUBJECT MATTER OF THIS LAWSUIT

The Applicant claims an interest in the subject matter of this lawsuit, either as an assignee to the Contract proceeds or as a creditor. First, the Applicant asserts that, pursuant to an Assignment and Security Agreement dated July 15, 1996 (the "July 1996 Agreement")[1] and a purported "Instrument of Assignment" dated September 17, 1999, it has a security interest "that applies to Plaintiff's interest in the Contract and any proceeds or receivables based thereon." Motion at 3-4, Applicant's Exhibits E and G. Second, the Applicant claims an interest in

[1] Applicant represents that the July 15, 1996 agreement was executed by Classical Receivables Funding Company, LLC, which in turn assigned "all right, title and interest" in the agreement to the Applicant on or about August 22, 1996. Motion at 3, Applicant's Exhibit F.

this lawsuit as a creditor, pursuant to a final judgment issued against Plaintiff by the United States District Court for the Northern District of Georgia. Motion at 4, Applicant's Exhibit H.

As a matter of law, however, the Applicant does not have any interest in this action, either as an assignee or a creditor. It is well established that St. Paul's equitable subrogation rights to the Contract proceeds, as a performing surety, are superior to those of Plaintiff's creditors or assignees. In any event, the supposed assignment of Contract proceeds is not valid and enforceable because the Applicant failed to comply with mandatory requirements of the Anti-Assignment Act.

**A. <u>The Applicant Does Not Have an Interest in the Subject Matter of This Lawsuit Because Equitable Subrogation Rights of the Completing Surety Pursuant to the Bond are Superior to any Right of an Assignee or Creditor of the Defaulted Contractor to the Contract Proceeds</u>**

The Applicant cannot establish an interest in the subject matter of this lawsuit because St. Paul, as the completing surety pursuant to its Performance Bond, has superior rights to the Contract proceeds. St. Paul's superior rights arise out of the well-established doctrine of equitable subrogation, as well as the Indemnity Agreement executed on April 20, 1999 by ARC and other Indemnitors as inducement for St. Paul to issue the Bond.

The equitable doctrine of subrogation dates back at least to 1896. *United States Fire Insurance Co. v. U.S.*, 61 Fed.Cl. 494, 499 (2004). Under this doctrine, a bond surety that takes over or finances completion of a defaulted contract "steps into the shoes both of the contractor against the government and

the government against the contractor." *Insurance Co. of the West v. U.S.*, 243 F.3d 1367 (Fed.Cir. 2001); *see also*, *United States Fire Insurance Co.*, *supra* at 501; *Preferred National Insurance Co. v. U.S.*, 54 Fed.Cl. 600, 604 (2002). "Under equitable subrogation, surety claims … must be satisfied before the []contractor and its creditors become entitled to any contract funds. *See*, *e.g*., … *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) (Miller Act Surety's right of subrogation prevailed over the bank's security interest in earned but unpaid contract funds)." *Centex-Simpson Const. Co. v. Fidelity & Deposit Co. of Maryland*, 795 F.Supp. 35, 39 (D.Me. 1992). "[T]he surety's rights of subrogation 'relate back to the date of execution of the surety bonds.'" *Insurance Co. of the West v. U.S.*, 55 Fed.Cl. 529, 541 (2003); *Transamerica Insurance Co. v. U.S.*, 31 Fed.Cl. 602, 606 (1994).

In *Centex-Simpson*, the Court held that, under the well established equitable doctrine of subrogation, a completing surety's right to recover previously earned but unpaid Contract proceeds was superior to competing claims by the Federal Deposit Insurance Corporation ("FDIC"), as receiver for a bank that held a security interest in the defaulted contractor's accounts receivable as well as a judgment against the defaulted contractor. 795 F.Supp. at 37-39. The Court reasoned that "the funds in question never became the property of [the defaulted contractor], which did not complete its performance as a []contractor, and, hence, FDIC's security interest in [the defaulted contractor's] accounts receivable does not include the earned but unpaid payments … . As a result, those funds cannot

be found to be an asset 'acquired by' [the defaulted contractor] and, therefore, by the FDIC." *Id*. at 39.

Based on its analysis of the legal precedent, the Court concluded: "the doctrine of equitable subrogation, grounded in equity not contract, protects the Miller Act completing surety by ensuring that such surety has priority over other parties with respect to either unpaid progress payments or retainages of the defaulting subcontractor." *Id*. at 40. The Court further explained in a footnote: "… 'the 'total fund' remaining in the [owner]'s possession, to the extent the surety has obligations arising under the contract, is available to the surety.'" *Id*. at n.12, *quoting Balboa Insurance Co. v. U.S.*, 775 F.2d 1158, 1163 (D.C.1985). In other words: "'[The surety] is subrogated not only to the right of the [owner] to pay laborers and materialmen from funds retained out of progress payments, but also to the [owner]'s right to apply to the cost of completion the earned but unpaid progress payments in its hands at the time of default.'" *Id., quoting National Shawmut Bank*, 411 F.2d at 848. Stated otherwise: "'Courts make no distinction between earned progress payments and retained percentages in determining the surety's equitable rights upon the contractor's default.'" *Id., quoting National Surety Corp. v. U.S*., 319 F.Supp. 45,49 (N.D.Ala.1970).

In this case, the Applicant's motion to intervene raises the identical issue that was decided in *Centex-Simpson*, i.e., whether the Applicant has an interest in any remaining Contract proceeds that ARC may have earned prior to its termination. Based on suretyship law and, in particular, the well established doctrine of equitable subrogation, such Contract proceeds never became the

property of ARC because ARC did not complete its performance as a contractor. As such, any alleged security interest that the Applicant may hold in ARC's accounts receivable does not include these Contract proceeds.

In any event, St. Paul, as the completing surety, has priority over any other party with respect to the Contract proceeds. *See, e.g., Federal Insurance Co. v. Constructora Maza, Inc.*, 500 F.Supp. 246, 251 (D.P.R. 1979); *Framingham Trust Company v. Gould-National Batteries, Inc.*, 427 F.2d 856 (1st Cir. 1970) (surety's right of subrogation prevailed over the rights of an assignee with a perfected security interest); *Aetna Insurance Co. v. Poole and Kent Co.*, 303 F.Supp. 963 (S.D.Fla 1969) (surety had priority over assignee bank; reiterating "the general rule of suretyship law that ... the surety acquires an equitable lien against any sum due its principal remaining in the hands of the one for whose protection the bond was written"). Thus, assuming *arguendo*, the Applicant had an otherwise valid and enforceable security interest in the Contract proceeds, the Applicant would not be entitled to any recovery because St. Paul's equitable subrogation right to the Contract proceeds is superior to any such security interest.

Moreover, pursuant to the August 7, 2002 Takeover Agreement between St. Paul and the Government, St. Paul assumed the role of the contractor to perform work on the Project and to receive all Contract proceeds. *See* Affidavit of Marc Brown, ¶10; *Preferred National Insurance Co, supra*, 54 Fed.Cl. at 603 ("surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor"). Accordingly, the Applicant does not have an

interest in the subject matter of this lawsuit and its motion to intervene must be denied.

**B. <u>The Applicant Does Not Have an Interest in the Subject Matter of This Lawsuit as an Assignee Because The Supposed Assignment of Contract Proceeds to the Applicant is Not Valid and Enforceable as a Matter of Law</u>**

The Applicant cannot establish an interest in the Contract proceeds pursuant to the July 1996 Agreement. Per the express terms of the July 1996 Agreement, ARC only attempted to assign specified rights pertaining to certain "Designated Contracts," which were identified in Schedule 1 of the July 1996 Agreement or were expected to be assigned at a later date. *See* Applicant's Exhibit E, para. 1(a). The Contract at issue in this case, which was executed almost three (3) years after the July 1996 Agreement is, of course, not identified in Schedule 1 of the Agreement. Moreover, this Contract is also not a "Designated Contract" by virtue of the subsequent "Instrument of Assignment" dated September 17, 1999. The Instrument of Assignment is ineffective because the Applicant failed to provide notice of the assignment in accordance with the Anti-Assignment Act.

The Anti-Assignment Act, 41 U.S.C. §15(b)(3), and its implementing regulations, 48 C.F.R. 32.802(e) and 32.805,[2] require the supposed assignee of proceeds under a government contract to send a written notice of the attempted

[2] "Under the Assignment of Claims Act, a contractor may assign moneys due or to become due under a contract <u>if all the following conditions are met</u>: ... (e) The assignee sends a written notice of assignment together with a true copy of the assignment instrument to the -- (1) Contracting officer or the agency head; (2) Surety on any bond applicable to the contract; and (3) Disbursing officer designated in the contract to make payment." 48 C.F.R. 38.802 (emphasis added). Further, 48 C.F.R. 32.805 sets forth the procedures for effectuating a valid assignment.

assignment to "the contracting officer, the surety upon the bond or bonds in connection with the contract, and the disbursing officer." *See Banco Bilbao Vizcaya-Puerto Rico v. United States*, 48 Fed.Cl. 29, 32 (2000), *distinguished* (on the facts) *by Riviera Finance of Texas, Inc. v. United States*, 58 Fed.Cl. 528 (2003). "[T]he Act must be 'strictly construed' to determine whether an attempted assignment is valid as an initial matter." *Id*. at 33; *see also*, *United California Discount Corp. v. United States*, 19 Cl.Ct. 504 (1990); *American Financial Assocs., Ltd. v. United States*, 5 Cl.Ct. 761 (1984), *aff'd*, 755 F.2d 912 (Fed.Cir. 1985). A supposed assignee, who fails to comply strictly with the requirements of the Act, may only prevail if the government waives its requirements by accepting the defective assignment. *Banco Bilbao* at 33. "Waiver of the Act has only been recognized where the government has either affirmatively acknowledged an assignment in writing or made payments consistent with the alleged assignment." *Id.* at 34.

In *Riviera Finance of Texas, Inc., supra,* this Court re-confirmed the mandatory notice requirements of the Anti-Assignment Act, stating: "There are numerous reasons for requiring that a true copy of the assignment instrument be submitted in order to effectuate a valid assignment of a Government contract, including accuracy and efficiency. Foremost among these concerns is 'to prevent possible multiple payment of claims, [and] make unnecessary the investigation of alleged assignments." 58 Fed.Cl. at 530. This Court then considered a variety of factors to determine whether the government had waived the mandatory requirements, including whether the Contract was modified according to the

attempted assignment and whether payments were sent to the supposed assignee pursuant to the attempted assignment. *Id*.

In this case, the assignment of the Contract funds to the Applicant, attempted on September 17, 1999, was ineffective because the Applicant did not provide the requisite written notice of the attempted assignment to St. Paul, the Bond surety. *See* Affidavit of Marc Brown, ¶12. In addition, the Government received notice of the attempted assignment on or about April 19, 2000, but deemed the assignment as invalid because the Instrument of Assignment did not comply with the mandatory requirements set forth in FAR 32.805. *See* Attachment B hereto. Furthermore, neither the surety nor the government waived the requirements specified in the Act. Thus, for example, the contracting officer did not modify the Contract or otherwise make payments to the Applicant pursuant to the attempted assignment. *See* Affidavit of Marc Brown, ¶13.[3]

The Applicant's failure, as a supposed assignee of the Contract proceeds, to provide the requisite notice to St. Paul under the Anti-Assignment Act, and to comply with other mandatory requirements set forth in the Act, rendered the September 17, 1999 attempted assignment of the Contract proceeds ineffective as a matter of law. Therefore, the Applicant has no right, pursuant to RCFC Rule 24(a), to intervene in this action as a supposed assignee of the Contract proceeds. Furthermore, in the absence of a valid and enforceable assignment,

---

[3] In contrast, on or about June 22, 2001, the contracting officer issued Contract Modification No. P00014, duly acknowledging, and incorporating into the Contract, an assignment by ARC of all Contract proceeds to First Union National Bank in strict accordance with the procedures mandated per the Anti-Assignment Act. *See* Affidavit of Marc Brown, ¶8. Thereafter, Contract proceeds were disbursed in accordance with the Assignment. *Id*.

there are also no grounds for permitting the Applicant to intervene in this action, pursuant to RCFC Rule 24(b), as an assignee to the Contract proceeds.

## II. THE APPLICANT'S CLAIM AGAINST PLAINTIFF AND THE PRESENT LAWSUIT HAVE NO COMMON ISSUES OF FACT OR LAW

In this lawsuit, Plaintiff has appealed its termination for default and seeks to convert the termination to one for the convenience of the Government. In an appeal from a termination for default, the Government has the initial burden of proving that the termination for default was justified. *Appeal of Christine Bell*, 2004 WL 2231564 (P.S.B.C.A.), PSBCA No. 5037, Oct 04, 2004. If the Government establishes a *prima facie* case for termination for default, it is the appellant's burden to show that its failure to perform was legally justified. *Appeal of Omar's Machine*, 1997 WL 665056 (H.U.D.B.C.A.), 97-2 BCA p 29,329, HUDBCA No. 92-G-7604-c12, HUDBCA No. 93-G-C5, Oct 17, 1997. In other words, the factual and legal issues to be proved in this case, either by the Government or by the Plaintiff, pertain to Plaintiff's performance of work on the Project pursuant to the terms of the Contract.[4]

On the other hand, assuming arguendo, the Applicant is a creditor of the Plaintiff,[5] its creditor claims against Plaintiff do not involve any factual or legal issues relating to Plaintiff's performance of work on the Project. As such, the

[4] The issue of damages arising out of an improper termination for default will not be addressed by the Court, but rather, by subsequent administrative means pursuant to the FAR, Part 49. In any event, as set forth above, St. Paul's right to the Contract proceeds, pursuant to the equitable doctrine of subrogation, the Takeover Agreement and the Agreement of Indemnity, is superior to the rights of any competing claimants.

[5] As set forth above, the Applicant cannot assert any claim to the Contract proceeds as an assignee because it failed to comply with the mandatory requirements of the Anti-Assignment Act and its enforcing regulations.

Applicant's claims have nothing in common with the subject matter of this lawsuit. Therefore, there are no grounds for permitting the Applicant to intervene in this action, pursuant to RCFC Rule 24(b).

## III. CONCLUSION

The Court must deny the Applicant's motion to intervene in this lawsuit , as a matter of right, because the Applicant has no interest in the subject matter of this lawsuit. In particular, the Applicant has no right to the Contract proceeds as an assignee and, in any event, the completing surety's equitable subrogation right to the proceeds is superior to the Applicant's claims as a creditor. Moreover, the Court must not permit the Applicant to intervene in this lawsuit because any claims that the Applicant may assert as a creditor have no issue in common with the subject matter of this lawsuit, i.e., whether Plaintiff performed its work on the Project in accordance with the Contract terms and whether any failure to perform was legally justified.

Respectfully submitted this 6th day of December 2004.

AMERICAN RENOVATION AND
CONSTRUCTION COMPANY

By Counsel:

s/- Harish Mirchandani
HARISH C. MIRCHANDANI
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
hmirchan@wthf.com

Of Counsel:

ROBERT G. WATT, ESQ.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
rwatt@wthf.com

CERTIFICATE OF FILING

I hereby certify that on December 6, 2004, a copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Classical Financial Services, LLC's Motion to Intervene as Plaintiff, and Appendices A and B, were filed electronically. I understand that a copy of the Memorandum will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harish C. Mirchandani