**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **AMERICAN RENOVATION AND CONSTRUCTION COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **CLASSICAL FINANCIAL SERVICES, LLC,** | ) | **CIVIL ACTION** |
| **Intervenor,** | ) | **FILE NO. 1:03-CV-01798-EJD** |
| **v.** | ) | **(Chief Judge Damich)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**INTERVENOR'S REPLY TO PLAINTIFF'S AND DEFENDANT'S OPPOSITION TO MOTION TO INTERVENE**

COMES NOW Intervenor Classical Financial Services, LLC ("Classical Financial" or "Intervenor") and hereby submits its Reply to Plaintiff's and Defendant's Opposition to Intervenor's Motion to Intervene.[1]

## I. ARGUMENT AND CITATION OF AUTHORITIES

### A. Intervenor's Motion is Timely Because the Case is Still in the Early Stages Procedurally and No Party will be Prejudiced by the Intervention at this Time.

In its first brief, Intervenor showed that its motion met the timeliness requirement of Rule 24 of the Rules of the Court of Federal Claims ("RCFC") because the case was still in its procedural infancy. (Intervenor's Brief, pp. 5-6). When determining whether a party has acted timely in filing a motion to intervene, the Court should consider the "totality of the

[1] Although Plaintiff and Defendant filed separate opposition briefs, the arguments and issues raised in the briefs are similar, so Intervenor is replying to both opposition briefs herein.

circumstances." United States v. City of Chicago, 908 F.2d 197, 199 (7th Cir. 1990). The most important consideration in this regard is whether the delay will prejudice the original parties to the case. See Nissei Sangyo Am., Ltd. v. United States, 31 F.3d 435, 438 (7th Cir. 1994). The Government's arguments of untimeliness and prejudice are unconvincing and unsupported by the record.

First, the Government argues that the motion to intervene is untimely because the case has been pending for over a year. (Defendant's Response Brief, p. 8). What the Government ignores, however, is that essentially nothing of substance has happened in the case since it was filed on July 28, 2003. In response to the Complaint, the Government sought a 2½ month extension (Docket No. 6) and did not answer until November 25, 2003 (Docket No. 9). Since the filing of the answer, the only activity of record in the case prior to Intervenor's motion has involved the filing of a few status reports. In their most recent status report (dated October 25, 2004, Docket No. 21), the parties reported, inter alia, that (a) they met for the first time on March 8, 2004 and agreed to attempt to negotiate a settlement and informally exchange documents and information; (b) the parties exchanged documents, completing the exchange on September 15, 2004; (c) the Government's consultants completed their initial review of Plaintiff's documents on or about October 22, 2004; (d) the parties expect to complete discovery by April 25, 2005 (six months from the date of the status report); and (e) the parties expect the case to be ready for trial by September 25, 2005 (eleven months from the date of the status report). No substantive motions in the case have been filed, formal discovery has only recently just began, and no trial date has been set. Thus, the procedural posture of the case is virtually unchanged from what it was immediately after the case was filed. A Motion to Intervene filed prior to the initiation of discovery should be deemed timely because there can be no prejudice to the original parties**.** See

Pac for Middle America v. State Board of Elections, 1995 WL 571893 (N.D. Ill.) Accordingly, because this case is still in its early stages, Classical Financial's intervention will cause little if any delay to the proceedings and will therefore not prejudice either of the original parties.

Additionally, Intervenor was not dilatory in asserting its right to intervene. Because Intervenor's claims are partly based upon the judgment entered in its favor against Plaintiff on August 31, 2004, Intervenor's rights did not fully mature until recently, and Intervenor has acted promptly with respect to the filing of its Motion to Intervene, filing its motion less than two months after the expiration of the 30-day appeal period of its judgment against Plaintiff. The Government correctly points out that Intervenor and Plaintiff had major disputes surrounding their lender-borrower relationship. Had Intervenor attempted to intervene prior to the resolution of its lawsuit against Plaintiff, the Government and Plaintiff would likely have contended that the intervention was premature or that the disputed issues between Plaintiff and Intervenor would unnecessarily expand the litigation. Now that Plaintiff's liability to Intervenor has been resolved by the $17,000,000 consent judgment, there can be no disputes about the underlying relationship between Plaintiff and Intervenor, and this is actually a more appropriate time for Classical Financial's intervention than at the beginning of this suit when the Georgia litigation was still pending.

The Government also contends that it has been prejudiced because it has been over four years since Intervenor first notified the Government of its security interest in Plaintiff's contracts and the Government has since recognized another assignment and paid Plaintiff and the new lender "millions of dollars on the contract." (Government's Brief, pp. 8-9). That argument fails, however, because Intervenor is not attempting in this action to recover past amounts paid by the

Government[2] but is rather only attempting to protect its security and judgment lien interests as to any future payments due Plaintiff under the contract. Thus, any delay by Intervenor in formally asserting its rights with regard to this contract has not prejudiced the Government in any way with respect to this action.

Finally, the Government argues that it will be prejudiced if Intervenor is allowed to intervene because it has spent significant time and money analyzing Plaintiff's claims and dealing with Plaintiff's counsel. (Defendant's Response Brief, p. 9). First, the sparse record in this case to date makes it doubtful that the Government has spent an inordinate amount of time or money on this case. The status reports show that the parties have had one meeting and one exchange of documents and not much else. Furthermore, there is no contention that the parties are close to a settlement. Second, the addition of Intervenor will not change the merits of Plaintiff's claims against the Government, so the efforts in "analyz[ing] ARC's claims on the project and discuss[ing] the claims with ARC's representatives" will not have been wasted. Classical Financial's intervention would simply add another voice and another set of eyes and ears to the proceeding.

**B. Intervenor has a sufficient interest in the subject matter of this litigation to allow intervention.**

In its original brief, Intervenor showed that, as a secured lender and judgment creditor of Plaintiff, it has a sufficient interest in the pending lawsuit to warrant intervention under RCFC 24. In response, the Government and Plaintiff argue that Intervenor does not have a substantial interest in the subject matter of this action because of the alleged non-compliance with the Anti-Assignment Act (also known as the Assignment of Claims Act). (Government's Brief, pp. 10-

[2] In any event, claims for wrongful payment of past amounts are subject to a six-year statute of limitations period, 28 U.S.C. § 2501, so Intervenor was under no obligation to file those claims immediately.

12; Plaintiff's Brief, pp. 8-10). The Government's and Plaintiff's arguments on this issue, however, are both premature and irrelevant to the issues presently before the Court.

**1. Intervenor's allegations concerning its interests in the underlying contract must be taken as true.**

In analyzing a matter to Intervene, the Court must take as true all well-pleaded, nonconclusory allegations contained in the Motion to Intervene and supporting documentation. Southwest Center for Biological Diversity v. Berg, 268 F.3d 810 (9th Cir. 2001); See also Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995); Chesapeake Bay Found. v. Am. Recovery Co., 769 F.2d 207, 209 (4th Cir. 1985); Mendenhall v. M/V Toyota Maru No. 11, 511 F.2d 55, 56 n.2 (5th Cir. 1977); Stadin v. Union Elec. Co., 309 F.2d 912, 917 (8th Cir. 1962). In its motion and supporting papers, Intervenor has alleged that it has a valid assignment of and security interest in Plaintiff's rights under the contract at issue. Thus, the allegation must be taken as true for purposes of this motion, and a factual analysis of the assignment and security interests is premature at this stage of the litigation. The only issue before the Court is whether Intervenor's interests, as alleged, are sufficient to warrant intervention. As Intervenor showed in its first brief, its interests meet the criteria for intervention. The issue of compliance with the Anti-Assignment Act is a factual issue to be determined (if deemed relevant by the Court) later in this action following discovery of the relevant documents and facts. Intervenor is entitled to discover and test the factual allegations alleged by the Government and Plaintiff in their responsive papers relating to the assignment.

**2. The issue of compliance with the Anti-Assignment Act is irrelevant to Intervenor's motion.**

Although the Government and Plaintiff dispute Intervenor's compliance with the Anti-Assignment Act with respect to the assignment of the contract, the Government and Plaintiff do not and cannot dispute the existence of (a) Intervenor's broad security interest in Plaintiff's

assets, including without limitation Plaintiff's accounts receivable, rights to payment under contracts, and causes of action, or (b) Intervenor's judgment lien against Plaintiff's assets, including this lawsuit and the underlying contract. These interests in the subject of this action exist irrespective of compliance with the Anti-Assignment Act.

Furthermore, Plaintiff's assignment of the underlying contract to Intervenor provides Intervenor with a protectible interest in the Plaintiff's contract rights regardless of whether the assignment complied with the Anti-Assignment Act. While "[f]ailure to comply with the Assignment of Claims Act renders [an] assignment null and void so far as the United States is concerned . . . it does not render the assignment void as between the parties." Freeman v. Ritner, 489 F.2d 431, 432-33 (9th Cir. 1973) (citing Martin v. National Surety Co., 300 U.S. 588, 594-5 (1937). Thus, the Anti-Assignment Act has absolutely no effect on the validity of Intervenor's security interest in the contract and claims based thereon as between Intervenor and Plaintiff. Therefore, because Intervenor indisputably has a security and judgment lien interest in the contract and any and all claims based thereon that is enforceable against Intervenor, Intervenor certainly "claims an interest relating to the property or transaction which is the subject of the action," and Intervenor has therefore met the requirements of RCFC 24(a) and is entitled to protect its interests by participating in this lawsuit.

**C. St. Paul's Alleged Equitable Subrogation Rights Have no Effect on Intervenor's Right to Intervene.**

Plaintiff spends a considerable portion of its opposition brief arguing that the alleged equitable subrogation rights of its surety, St. Paul, are superior to Intervenor's rights and that Intervenor's motion should be denied. (Plaintiff's Brief, pp. 3-8). This argument fails for at least three reasons. First, and perhaps most obviously, St. Paul is not a party to this case. If St. Paul wants to protect its alleged equitable subrogation rights under the contract at issue, then it

should file its own Motion to Intervene. Based on the claims currently asserted -- claims by ARC against the Government -- any unasserted rights of St. Paul are irrelevant to the issue of Intervenor's right to intervene.

Second, while the well-pleaded allegations of Intervenor are to be taken as true for purposes of the motion, there is no like rule for assertions by a party opposing intervention. Thus, Plaintiff's allegations concerning St. Paul's subrogation rights are not to be taken at face value. Intervenor is entitled to discovery regarding the alleged bonding relationship to test the allegations relating to, inter alia, the existence and nature of the bonding relationship and the amount of the surety's claims.

Third, even assuming arguendo that St. Paul has equitable subrogation rights superior to Intervenor's, those rights would not extinguish Intervenor's rights to the contract proceeds, but would rather simply have priority. St. Paul's equitable subrogation rights, to the extent they even exist, are limited to a recovery of only the balance of the contract. Hartford Fire Ins. Co. v. United States, 40 Fed.Cl. 520, 522 (1988). In this case, Plaintiff has asserted that it has sustained "substantial damages" arising from the Government's wrongful termination of the contract and has prayed for the Court to "award Plaintiff all relief provided under the Contract and applicable laws and regulations, to include attorney's fees, costs and such other relief as the Court deems proper." Thus, should Plaintiff ultimately prevail on its claims, it is possible it could recover damages, including lost profits, liquidated damages and attorney's fees, above and beyond the contract balance amount, and St. Paul's equitable subrogation rights would not extend to those excess funds. The excess amount would be subject to Intervenor's lien rights. Thus, regardless of the validity of St. Paul's alleged subrogation rights, Intervenor still has an interest in the subject matter of this suit that Intervenor is entitled to protect through intervention.

**D. <u>This Court has Jurisdiction over Classical Financial's Intervention Claims</u>.**

The Government misconstrues the nature of Plaintiff's claims when it argues (Government's Brief, pp. 13-14) that the Court lacks jurisdiction to consider Intervenor's Complaint because, according to the Government, Intervenor is seeking a declaratory judgment. Intervenor is not, however, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, but is seeking to do no more than protect its rights as a party with "an interest relating to the property or transaction which is the subject of the action" as provided under RCFC 24(a)(2) and as a party with a claim that has a question of law or fact in common with the main claim under RCFC 24(b). Thus, the subject matter jurisdiction over Intervenor's claims is clearly provided by RCFC 24, provided the Court finds that Intervenor meets the stated criteria of that Rule. None of the cases cited by the Government on this issue involve an attempted intervention and thus do nothing to further the Government's position. Intervenor is seeking nothing more than to, based on its interest in the contract, assert and receive the benefit of the claims asserted by Plaintiff. If the Court believes that Intervenor is entitled to intervene, but that the Court has no jurisdiction to decide Intervenor's claims as asserted, Intervenor moves the Court for leave to amend its proposed Intervenor's Complaint prior to filing.

The Government also argues that Intervenor should not be allowed to intervene because there is no money claim before the Court. To the contrary, Plaintiff pleaded in its Complaint that it has "sustained substantial damages" and has prayed for "all relief provided under the Contract and applicable laws and regulations, to include attorney's fees, costs and such other relief as the Court deems proper," which would also include monetary damages arising under the Contract. Even if Plaintiff's claims do not involve a claim for damages, Intervenor's right to intervene is not affected. The intervention rule, RCFC 24, is not limited to claims for monetary damages but rather applies, by its terms, to any action pending in this Court. Thus, because this action

involves a determination of Plaintiff's rights under the contract at issue (and therefore Intervenor's rights as a secured creditor and judgment lien holder), Intervenor has the right to intervene.

**E. The Government's Sovereign Immunity is not at Issue.**

The Government contends that the doctrine of sovereign immunity bars Intervenor's right to intervene. (Government's Brief, pp. 14-16). Sovereign immunity is not an issue in this case, however, because Intervenor is not suing the Government, but is rather intervening in the suit filed by Plaintiff which is not barred by sovereign immunity. Moreover, to the extent a waiver of sovereign immunity is required for the intervention, that waiver is provided by RCFC 24 providing for intervention by third parties in lawsuits before this Court upon the meeting of the stated criteria. Intervenor is seeking no more than to participate in and obtain the benefit of Plaintiff's claims against the Government. To the extent the Court believes that Intervenor has not properly asserted those claims in its proposed Intervenor's Complaint, Intervenor again requests leave to amend the Intervenor's Complaint prior to filing.

## II. CONCLUSION

For the reasons set forth herein and in Intervenor's previous submissions, Intervenor respectfully requests that this motion be granted.

Respectfully submitted this 7th day of January, 2005.

s/William C. Collins, Jr.
William C. Collins, Jr.
Georgia Bar No. 178847
Kwende B. Jones
Georgia Bar No. 041155
Attorneys for Intervenor
Classical Financial Services, Inc.

BURR & FORMAN LLP
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATE OF SERVICE

I hereby certify that on January 7th, 2005, a copy of foregoing **INTERVENOR'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO INTERVENE** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/William C. Collins, Jr.
William C. Collins, Jr.
Georgia Bar No. 178847
Kwende B. Jones
Georgia Bar No. 041155
Attorneys for Intervenor
Classical Financial Services, Inc.

BURR & FORMAN LLP
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244