# In the United States Court of Federal Claims

No. 03-1798C
(Filed: April 28, 2005)

***********************************
**AMERICAN RENOVATION AND CONSTRUCTION COMPANY,**

Plaintiff,

v.

**THE UNITED STATES,**

Defendant.
***********************************

*Harish Mirchandani*, of McLean, VA, for the plaintiff. *Robert G. Watt, Esq.*, of McLean, VA, of counsel.

*Michael N. O'Connell*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, counsel of record for the defendant, with whom were *Robert E. Kirschman, Jr.*, Assistant Director, *David M. Cohen*, Director, and *Peter D. Keisler*, Assistant Attorney General.

*William C. Collins, Jr.* and *Kwende B. Jones*, of Atlanta, GA, for Intervenor-Applicant..

---

## ORDER AND OPINION

---

This matter is before the Court on Classical Financial Services' Motion to Intervene as Plaintiff in this case. Both Plaintiff and Defendant have filed responses opposing the motion. Because Classical Financial Services meets the requirements for intervention as a matter of right under Rule 24 of the Rules of the Court of Federal Claims, the motion is GRANTED.

## I. Background

On July 28, 2003, American Renovation and Construction Company ("Plaintiff"), a government contractor, filed a complaint against the United States ("Defendant") for breach of contract and wrongful termination under the Contract Disputes Act, 41 U.S.C. §§ 601 - 613, and

the Tucker Act, 28 U.S.C. § 1491. The contract at issue in this case, Contract Number F08602-99-CK006 (hereinafter referred to as "the CK006 Contract") was entered into by Plaintiff and Defendant on March 31, 1999. On April 20, 1999, pursuant to terms of the CK006 Contract, the St. Paul Fire and Marine Insurance Company ("Surety" or "St. Paul") executed performance and payment bonds. Classical Financial Services ("Intervenor-Applicant") seeks to intervene as Plaintiff in this case because it alleges that: (1) it is the assignee of the CK006 Contract; (2) it holds a security interest in Plaintiff's claims asserted herein and any and all proceeds thereof; and (3) it recently was awarded a judgment against Plaintiff in the amount of $17 million.

On or about July 15, 1996, almost three years prior to the execution of the CK006 Contract, Plaintiff and Intervenor-Applicant entered into a written loan agreement (hereinafter referred to as "the Loan Agreement") by which Intervenor-Applicant agreed to extend funds to Plaintiff to help finance construction projects undertaken by Plaintiff. Pursuant to the Loan Agreement, Intervenor-Applicant advanced funds to Plaintiff, and Plaintiff executed and delivered a series of promissory notes demonstrating Plaintiff's indebtedness to Intervenor-Applicant. To secure the obligations under the loan agreement and the promissory notes, Plaintiff executed an Assignment and Security Agreement ("A&S Agreement") which granted Intervenor-Applicant a security interest in all proceeds under certain contracts (not including the CK006 Contract, because the CK006 Contract did not yet exist) and all "general intangibles" including "all causes of action." On or about September 16, 1999, Plaintiff, seeking to receive additional funding from Intervenor-Applicant, executed an Instrument of Assignment which purported to assign to Intervenor-Applicant all of its right, title and interest to all payments and proceeds owing from the government under the CK006 Contract.

Sometime in early 2000, Plaintiff defaulted on its various loans, and as a result, Intervenor-Applicant filed suit against Plaintiff seeking damages for the amount owed on the Loan Agreement and Promissory Notes. On August 31, 2004, the United States District Court for the Northern District of Georgia awarded judgment in favor of Intervenor-Applicant and against Plaintiff in the amount of $17 million. Plaintiff has ceased operations, and its sole remaining asset appears to be the proceeds of the claim pending against the government in this case. Intervenor-Applicant seeks to intervene as a matter of right pursuant to Rule 24(a)(2) of the Rules of the Court of Federal Claims ("RCFC"), or, in the alternative, it asks for permissive intervention under RCFC 24(b).

## II. Intervention Generally

The parties do not dispute the method of analysis that the Court should employ in deciding whether Intervenor-Applicant may intervene in this case – and the Court concurs. The method of analysis begins with the text of RCFC 24. RCFC 24 provides for two types of intervention. RCFC 24(a) provides for intervention as of right and RCFC 24(b) provides for

permissive intervention.[1] Under both RCFC 24(a) and 24(b), a party's application for intervention must be "timely." To intervene as a matter of right, in addition to the text of Rule 24(a), the method of analysis includes the three-part test formulated by the U.S. Court of Appeals for the Federal Circuit in *American Maritime Transport, Inc. v. United States.* In construing the text of the Rule, the Federal Circuit in that case required that the applicant have : "[1] an interest relating to the property or transaction which is the subject of the action and [2] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties." *Am. Mar. Transp, Inc.. v. United States*, 870 F.2d 1559, 1560 (Fed. Cir. 1989). Permissive intervention may be granted in the court's sound discretion "when an applicant's claim or defense and the main action have a question of law or fact in common . . . [in consideration of] whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2).

The general principle to be kept in mind in employing the method of analysis, as stated by the Federal Circuit, is that "the requirements for intervention are to be construed in favor of intervention." *Am. Mar. Transp., Inc.*, 870 F.2d at 1561. Similarly, a number of other circuits have held that Rule 24 is to be construed liberally. *Stupak-Thrall v. Glickman*, 225 F.3d 467, 472 (6th Cir. 2000) (Fed. R. Civ. P. 24 is to be broadly construed in favor of prospective intervenor); *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995) (Fed. R. Civ. P. 24 is to be construed liberally, and doubts resolved in favor of proposed intervenor); *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (Fed. R. Civ. P. 24(a) construed liberally in favor of intervenors); *Federal Savings & Loan v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (any doubts concerning propriety of allowing intervention should be resolved in favor of proposed intervenor because intervention allows the court to resolve related disputes in single action).

---

[1] RCFC 24 reads in relevant part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Generally, courts will accept as true all well-pleaded, nonconclusory allegations in the motion to intervene, in the proposed complaint or answer in intervention, and in declarations supporting the motion, absent sham, frivolity, or other objections. *See Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977); *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819-820 (9th Cir. 2001); *see also* 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE - CIVIL § 24.03 [5][a], at 24-51 (3d ed. 2002).

## III. Analysis

### A. Was the Motion to Intervene Timely Filed?

Under both RCFC 24(a) and 24(b), a party's application for intervention must be "timely." The Federal Circuit has set forth three factors for the Court to consider in determining timeliness: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; and (3) existence of unusual circumstances militating either for or against a determination that the application is timely. *Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993) (citing *Sumitomo Metal Ind., Ltd. v. Babcock & Wilcox*, 69 C.C.P.A. 75, 669 F.2d 703, 707 (C.C.P.A. 1982)). Intervenor-Applicant generally argues that it has met the timeliness requirement of RCFC 24 because "nothing of substance has occurred in the case other than an informal exchange of information and documents and some settlement negotiations." Intervenor-Applicant also points out that because formal discovery has not yet begun, no party would be prejudiced by its participation in this case.

#### 1. Intervenor-Applicant Knew of Some, but Not All of Its Rights

Defendant challenges the timeliness of the Motion to Intervene because Intervenor-Applicant did not seek to intervene for more than a year from the commencement of this lawsuit. On the one hand, the record clearly shows that Intervenor-Applicant has been fully aware of its alleged assignment rights during the entire pendency of this case, which would tend to suggest at least some dilatoriness on the part of Intervenor-Applicant. On the other hand, the case for intervention was considerably strengthened when the Intervenor-Applicant became a judgment creditor. Intervenor-Applicant's rights as a judgment creditor did not fully mature until the Georgia court awarded Intervenor-Applicant the $17 million judgment against Plaintiff on August 31, 2004. That judgment was subject to appeal, so it only became final after thirty additional days, on September 29, 2004. The Motion to Intervene was filed approximately 37 days later. Given the general presumption in favor of intervention, the Court holds that it was reasonable for the Intervenor-Applicant to wait until its status of judgment creditor was determined before it tried to intervene. This factor weighs slightly in favor of timeliness.

2. Prejudice to Intervenor Outweighs Prejudice Suffered by Parties

Defendant maintains that it would be unduly prejudiced by the dilatoriness of Intervenor-Applicant's actions because Defendant recognized Plaintiff's assignment of the CK006 Contract to a different assignee, the First Union National Bank ("First Union"). Defendant argues that because Intervenor-Applicant did not promptly attempt to enforce its purported assignment rights, the government believed that there was no issue as to Intervenor-Applicant's interest in the contract, and thus recognized Plaintiff's subsequent assignment of the CK006 Contract to First Union. This argument misunderstands the focus of the Court's inquiry. The inquiry regarding prejudice to the parties relates to prejudice resulting from the delay in *seeking intervention*, not, as Defendant seems to suggest, from prejudice suffered outside of the case. The government's recognition of First Union's assignment right does not constitute prejudice that can be attributed to Intervenor-Applicant's delay in seeking intervention in this case. Tellingly, the government's brief indicates that it recognized the assignment to First Union in 2001, two years prior to the commencement of this lawsuit. Thus, even if Intervenor-Applicant had sought intervention the day after this lawsuit was filed, the government would have already recognized the assignment to First Union. Because the government recognized the assignment to First Union long before it was even possible for Intervenor-Applicant to file its motion, the recognition of First Union as an assignee of the CK006 Contract does not inform the Court's inquiry on this issue.

Defendant also argues that it has spent significant time analyzing Plaintiff's claims and that allowing Intervenor-Applicant to intervene would result in much of this effort being wasted or duplicated. While the Court agrees with Defendant that allowing intervention could require the existing parties to duplicate previous settlement efforts, or might even derail settlement completely, the Court must weigh this potential prejudice against the prejudice that would be suffered by Intervenor-Applicant if intervention were denied. As pointed out in Intervenor-Applicant's brief, the claim asserted in this case is Plaintiff's only remaining asset. Thus, Intervenor-Applicant's best chance at recovering the money that it is allegedly owed would be as an intervenor in this action. Moreover, if Intervenor-Applicant's assignment rights are not determined within this action, a judgment in favor of Plaintiff could have a *res judicata* effect, preventing it from attempting to enforce any rights it might have under the contract. On balance, therefore, the potential for prejudice to Intervenor-Applicant is more significant than the prejudice on the parties of duplicative time and effort. Moreover, given that the rules governing intervention are to be construed liberally and in favor of the proposed intervenor, *Am. Mar. Transp., Inc.*, 870 F.2d at 156, the Court holds that this factor also favors a conclusion of timeliness.

3. Special Circumstances are Present

Lastly, there is a "special circumstance" present in this case which weighs in favor of timeliness. As Intervenor-Applicant points out in its brief, this case has been stayed for some time, and a discovery schedule has not yet been set. Given that the case remains stayed, and that

formal discovery in this case has yet to be scheduled, it hardly seems unreasonable that Intervenor-Applicant waited for its judgment lien rights to fully mature prior to seeking intervention. Given the general presumption in favor of intervention, and considering the length of time, prejudice to the parties, and existence of unusual circumstances taken together, the Court concludes that Intervenor-Applicant's motion was timely filed.

B. Intervention as a Matter of Right Under RCFC 24(a)

Having determined that the motion was timely filed, the Court must now examine the remaining requirements of RCFC 24(a)(2). As noted above, the text of the rule and its interpretation by the Federal Circuit in *American Maritime* require that the Intervenor-Applicant demonstrate (1) an interest in the subject matter of the litigation; (2) an impairment of that interest if intervention is denied; and (3) inadequate representation of its interests by the parties in the action.

Intervenor-Applicant generally asserts three bases for interest in the subject matter of the litigation. First, it asserts that it is the assignee of the CK006 Contract at issue in the case by virtue of either the A&S Agreement or the Instrument of Assignment. Second, it asserts that it holds a security interest in Plaintiff's claims by way of the A&S Agreement and an Assignment of Loan Documents executed on August 22, 1999. Third, Intervenor-Applicant asserts that its $17 million judgment against Plaintiff entitles it to any proceeds from the instant lawsuit.

1. Does Intervenor Applicant Have an Adequate Interest?

In applying Rule 24, the Supreme Court characterized the adequate interest requirement as requiring that applicant have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable" *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Supreme Court did not explain what it meant by "significantly protectable" leaving it to the circuit courts to develop more specific standards. Several circuits, including the Federal Circuit, have concluded that a significantly protectable interest is one which is "legally protectable." *Am. Mar. Transp., Inc.*, 870 F.2d at 1561; *see also Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). The Federal Circuit has provided additional guidance by indicating that the interest must be more than a mere economic interest, and not indirect or contingent. *Am. Mar. Transp., Inc.*, 870 F.2d at 1561. Finally, intervention is proper only if the proposed intervenor's interests are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Id.*

As an initial matter, Intervenor-Applicant's alleged interest in this litigation is clearly more than an economic interest, as it is alleging an ownership interest in the CK006 Contract which underlies the cause of action in this case. It also seems clear that Intervenor-Applicant's alleged interest is such that it will either gain or lose by the direct legal operation and effect of the judgment because if Intervenor-Applicant can show that it is entitled to any proceeds under

the contract, any award or judgment in this case will bear directly on that interest. The key determination, therefore, is whether Intervenor-Applicant possesses an adequate interest in the litigation that is "legally protectable" in this Court.

Although the Federal Circuit has provided some guidance by describing a legally protectable interest as being an interest recognized in the substantive law, *id.*, it is not immediately apparent how this definition should be applied in view of this Court's jurisdictional grant. The term "protectable" implies that the Court must actually be able to offer some protection to the interest in question. It follows, then, that in order for the Court to "protect" the interest, it must have the power to adjudicate issues relating to that interest, as the power of a court to adjudicate an issue is commensurate with the court's jurisdiction. Jurisdiction is by definition, the power to decide a case.

Obviously this Court has power to decide any proposed intervenor's claim that is cognizable under the Tucker Act or any other statutory grant of jurisdiction. Moreover, the Court possesses ancillary and pendent jurisdiction that allows it to adjudicate issues that are incidental to the court's general jurisdictional authority to render money judgments. For example, both the Federal Circuit and the Court of Claims have granted equitable relief to claimants where such relief was incidental to a money claim under the Tucker Act. See *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) (taking jurisdiction to hear 1st and 5th Amendment claims that were "a factor in" in the Tucker Act claim); *Pauley Petroleum v. United States*, 591 F.2d 1308 (Ct. Cl. 1979) (holding that Court of Claims could exercise equitable powers to rescind contract as incident of its general jurisdiction). The Court has also historically taken jurisdiction to decide a dispute between private parties if the resolution of that dispute bears on a monetary claim against the government. *Great American Ins. Co. v. United States*, 492 F.2d 821 (Ct. Cl. 1974). The range of this Court's ancillary and pendent jurisdiction is not unlimited, however. It does not extend to powers specifically excluded from the Court's jurisdiction, such as claims "sounding in tort." 28 U.S.C. § 1491(a) (2004).

a. Jurisdiction and Sovereign Immunity Do Not Bar Intervention in this Case

The government challenges Intervenor-Applicant's interest in the subject matter of the litigation on jurisdictional grounds. Intervenor-Applicant's proposed complaint asserts three causes of action. Causes of action 1 and 2 are titled "Declaratory Judgment" and "Alternative Declaratory Relief" and generally seek a judgment from the Court that it is entitled to any judgment awarded or settlement paid to Plaintiff in this action. The third cause of action, titled "Claim of ARC" incorporates Plaintiff's complaint by reference, and also seeks almost identical relief as the first cause of action. The government, therefore, argues that because the Intervenor-Applicant's complaint seeks only declaratory relief, the Court lacks jurisdiction over Intervenor-Applicant's causes of action; because the Court lacks jurisdiction, Intervenor-Applicant's interest in the litigation, as embodied in its complaint, is not "legally protectable." Despite the language in the proposed complaint, Intervenor-Applicant responds by stating that the government has

misconstrued the nature of its claim. Intervenor-Applicant suggests that it is not seeking a declaratory judgment pursuant to 28 U.S.C. § 2201, but rather is merely seeking to protect its rights as a party with an interest relating to the subject matter of the action as provided in RCFC 24. Intervenor-Applicant further argues that the subject matter jurisdiction over Intervenor's claims is clearly provided by RCFC 24, provided that it satisfies the criteria of the rule.

Intervenor-Applicant's assertion that RCFC 24 provides an independent basis for jurisdiction, is clearly incorrect. It is well-established that "the [Court of Federal Claims] cannot, through its acknowledged rule-making power, expand its jurisdiction beyond the limits prescribed by Congress." *Rolls-Royce Ltd. v. United States*, 364 F.2d 415, 419 (Ct. Cl. 1966); *see also Widdoss v. Secretary of HHS*, 989 F.2d 1170, 1177-78 (Fed. Cir. 1993). Even so, if Intervenor-Applicant can demonstrate that it possesses an interest that is "legally protectable," it will overcome any jurisdictional impediment to intervention.

Although this Court ordinarily lacks declaratory judgment jurisdiction, *United States v. King*, 395 U.S. 1, 5 (1969), the Court may exercise equitable powers when that exercise is incidental to the Court's general jurisdiction to award money judgments. *See Pauley Petroleum, Inc. v. United States*, 591 F.2d 1308, 1316-17 (Ct. Cl. 1979); *Hartle v. United States*, 18 Cl. Ct. 479, 484 (1989); *cf. Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997). Although Intervenor-Applicant's complaint seems directed mainly toward declaratory relief, form should not trump substance. *Hartle*, 18 Cl. Ct. 479 (1989) ("the court looks at the substance of the claim rather than the terminology or draftsmanship, [focusing instead on] the thrust and intent of [the] claim"). The substance of Intervenor-Applicant's complaint clearly seeks to establish that it is the owner by assignment of the CK006 Contract, and that it was damaged by the government's allegedly wrongful termination. The issue of whether Intervenor-Applicant is the rightful claimant against the government is incidental to the main issue of whether the government improperly terminated the CK006 Contract, and therefore properly before the Court.

The government also contends that the Court lacks jurisdiction because it is being asked to decide a private dispute between Plaintiff and Intervenor-Applicant. While it is true that the Court may not adjudge disputes between private parties, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 67 (1982), allowing Intervenor-Applicant to enter the case does not require the Court to adjudicate private rights in the traditional sense. Rather, in deciding who is entitled to the proceeds from the CK006 Contract, the Court will be determining the ownership of the public right that is at stake in this case, the right to bring suit against the government under the CK006 Contract. Court of Claims precedent unambiguously supports taking jurisdiction to determine whether the proceeds of the instant lawsuit should be paid to Intervenor-Applicant or Plaintiff in this case. In *Great American Ins. Co. v. United States*, 397 F.2d 289 (Ct. Cl. 1968) ("*Great American I*"), the Court of Claims held that its jurisdiction extended to a determination of whether a plaintiff or a third party was entitled to recover a contract balance allegedly due from the government. The similarities between this case and *Great American I* are manifest. Just as in *Great American I*, where the court was asked to determine whether the plaintiff or a third party bank was entitled to disputed contract proceeds,

the Court in this case is being asked to determine whether Plaintiff or a third party (Intervenor-Applicant) is entitled to recover from the government under the CK006 Contract.[2] The opinion in *Great American I*, seemingly recognizing the tension between determining the rights of multiple parties to a single government contract and the Court's lack of jurisdiction to adjudicate private rights, expressly cautioned that it did not have jurisdiction to "entertain actions by third parties against the plaintiff to recover damages on a cause of action that is not cognizable by this court." *Id* at 293. Likewise, in this case the Court will exercise ancillary jurisdiction to determine the rights of Intervenor-Applicant and Plaintiff to the CK006 Contract, but it cannot enforce the legal rights of Intervenor-Applicant specifically against Plaintiff, as such a determination falls outside of the jurisdiction conferred under the Tucker Act.

Relying primarily on *United States v. Sherwood*, 312 U.S. 584 (1941), Defendant also contends that there has been no waiver of sovereign immunity for Intervenor-Applicant's claim as a judgment lien holder, and thus, the court lacks jurisdiction over any claim made on that basis. In *Sherwood*, the Supreme Court held that Congress had not waived sovereign immunity for an action by a judgment creditor against the United States for breaching a contract with the judgment debtor. The government's reliance on *Sherwood* is misplaced. First, this case is factually distinguishable from *Sherwood*. In *Sherwood*, the judgment creditor had received a judgment against the judgment debtor in state court. The state court judge, acting under authority of the state's Civil Practice Act, issued an order authorizing the judgment creditor to begin a new proceeding under the Tucker Act against the United States for breach of its contract with the judgment debtor. The New York Civil Practice Act permitted the judgment debtor to challenge the validity of the state court judgment in the new proceeding. As a result, the court hearing the Tucker Act claim would be required under the Civil Practice Act to review the merits of the original case brought by the judgment creditor against the judgment debtor. The Supreme Court held that the determination regarding the merits of the original case was beyond the jurisdiction conferred by the Tucker Act. The case at bar differs from *Sherwood* in that the validity of the judgment awarded in the Georgia district court is not at issue here. In this case, the only issue that Intervenor-Applicant brings before the Court is whether Plaintiff or Intervenor-Applicant is entitled to proceeds under the CK006 Contract based on its alleged rights to the proceeds of the Contract. Moreover, as will be discussed below, even if sovereign immunity bars any claim brought by a judgment creditor, Intervenor-Applicant's alleged assignment rights are sufficient by themselves to support intervention in this case.

---

[2] A second Court of Claims case, *Great American Insurance Co. v. United States*, 492 F.2d 821 (Ct. Cl. 1974) ("*Great American II*"), further illustrates the point. In *Great American II*, the Court of Claims was "asked to determine the rights of several parties to priority in the balance due under a Government contract." 492 F.2d at 823. The several parties involved in the case included a surety who brought the case as Plaintiff, the government as Defendant, and the government contractor and an assignee bank as third party defendants in the suit.

b. Intervenor-Applicant's Alleged Assignment Interest Satisfies the Adequate Interest Requirement

Intervenor-Applicant argues that it is the assignee to all rights under the CK006 Contract by virtue of the A&S Agreement and the Instrument of Assignment, and that these documents provide it with a sufficient interest to warrant intervention. Plaintiff challenges Intervenor-Applicant's right to intervene as an assignee based on the doctrine of equitable subrogation. Plaintiff argues that Intervenor-Applicant lacks the requisite interest in the subject matter of the litigation because the bond surety, St. Paul, as the completing surety pursuant to the performance and payment bonds, has superior rights to the CK006 Contract proceeds. Intervenor-Applicant responds by noting that St. Paul is not a party to this case, and argues that St. Paul's unasserted rights are irrelevant to the issue of its right to intervene. The Court agrees with Intervenor-Applicant that the unasserted equitable subrogation rights of St. Paul are not pertinent to the pending motion. If St. Paul wishes to assert its rights, it may also file a motion to intervene.

Although the doctrine of equitable subrogation is not a bar to intervention, Intervenor-Applicant must nevertheless affirmatively demonstrate an adequate interest in the litigation to warrant intervention in this case. As noted above, Intervenor-Applicant relies in-part on its interest as an assignee of all rights under the CK006 Contract based on the A&S Agreement and the Instrument of Assignment. Although the A&S Agreement does not create a sufficient interest in the litigation, the Court finds that the Instrument of Assignment creates an interest sufficient to satisfy the adequacy of interest requirement.[3]

The Instrument of Assignment was expressly intended to "assign, set over, and transfer . . . [all] right, title, and interest to all payments . . . accruing under the [CK006 Contract]." The parties opposing intervention argue that this Instrument of Assignment is invalid because it was not executed in compliance with the strict rigors of the Assignment of Claims Act. The problem with this position is that the validity of the Instrument of Assignment is not a threshold issue for deciding whether intervention is warranted in this case. Rather, RCFC 24(a) requires that a validity determination be made within this action provided that the proposed complaint alleges facts and a cause of action cognizable under this Court's jurisdiction. Taking as true the allegations regarding the assignment of the CK006 Contract as stated in Intervenor-Applicant's proposed complaint, a cause of action is described that cognizable under the Court's jurisdiction. Moreover, even if the Instrument of Assignment is invalid for failing to comply with the Assignment of Claims Act, Intervenor-Applicant's claim may still be viable in this Court, as the Court of Claims has held that there are situations in which an assignment that failed to comply with the act was nevertheless enforceable against the government. *Tuftco Corp. v.*

---

[3] The A&S Agreement was executed in 1996, three years prior to the execution of the CK006 Contract and only covered certain "designated contracts" which did not include the CK006 Contract. As a result, the A&S Agreement cannot provide an adequate interest in the CK006 Contract to justify intervention in this case.

*United States*, 614 F.2d 740, 743 (Ct. Cl. 1980); *see also Riviera Finance of Texas, Inc. v. United* States, 58 Fed. Cl. 528 (2003).

The Court acknowledges that Intervenor-Applicant's claim based on its alleged assignment interest may ultimately be deemed without merit. Nevertheless, the alleged interest is a "legally protectable" interest that satisfies the adequate interest requirement of RCFC 24(a) because if Intervenor-Applicant can show that the assignment is valid or enforceable, it would have the right to participate in and even possibly control this action. Because Intervenor-Applicant's alleged assignment interest satisfies the adequate interest requirement, the Court need not consider whether Intervenor-Applicant's additional arguments purporting to show an adequate interest in the litigation, *viz.*, its status as a secured creditor and as a judgment creditor, are "legally protectable" interests in this court.

2. Impairment of Interest

The Federal Circuit has not set forth precise criteria for evaluating whether denial of intervention may, as a practical matter, impair or impede the applicant's ability to protect its interest. Other courts that have applied the rule have noted that the impairment or impediment need not be "of a strictly legal nature." *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978). Moreover, it is generally accepted that the inquiry is fact specific and flexible, and primarily guided by pragmatic considerations. "The practical impairment test is flexible, and its application depends on a pragmatic analysis of the circumstances of a given case . . . ." 6 MOORE'S FEDERAL PRACTICE - CIVIL § 24.03[3][a].

Intervenor-Applicant argues that its interests will be impaired if it is not allowed to participate in settlement because Plaintiff could settle the case for an improperly low amount or fail to settle at a reasonable amount which would result in the diminution of the value of its interest in the CK006 Contract. The Court does not find this "impairment of interest" particularly persuasive because it would be illogical for Plaintiff not to actively seek the best outcome for its stake in the case. The Court also recognizes, however, that as a practical matter, entering this case is Intervenor-Applicant's best (and probably last) chance to enforce its legal rights in connection with the CK006 Contract, given that Plaintiff is insolvent and no longer actively conducting business. Moreover, a judgment in favor of Plaintiff without allowing Intervenor-Applicant to participate in the case could create a *res judicata* defense for the government if Intervenor-Applicant were to attempt to enforce its rights under the CK006 Contract in a separately filed case. Given the general presumption in favor of intervention, along with pragmatic nature of the "practical impairment" test, the Court holds that the interests of Intervenor-Applicant will be sufficiently impaired to warrant intervention in this case.

3. Adequate Representation

An applicant for intervention bears a "minimal" burden to show that its interest would not be adequately represented by parties already in the lawsuit. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). However, when a proposed intervenor has the "same ultimate objective" as a party to the suit, its interests are presumed adequately represented unless the proposed intervenor can show an adversity of interests between itself and the party. *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214 (4th Cir. 1976) (finding proposed intervenor's interests were adequately represented where proposed intervenor asserted same claims as plaintiff and conceded that plaintiff would adequately represent its interests at trial, but was primarily concerned with the ability to participate in settlement discussions), *cited with approval in Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 (5th Cir. 1993); *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979); and *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).

Intervenor-Applicant has met this "minimal" burden. Intervenor-Applicant notes that its past relationship with Plaintiff includes at least three lawsuits stemming from Plaintiff's unwillingness or inability to repay loans. These past lawsuits demonstrate a clear adversity of interest between Intervenor-Applicant and Plaintiff which under *Trbovich* overcomes the presumption of adequate representation in this case. Accordingly, the Court holds that Plaintiff cannot adequately represent the interests of Intervenor-Applicant in this case, and that Intervenor-Applicant is entitled as a matter of right to intervene in this case.

C. Permissive Intervention

Intervenor-Applicant alternatively seeks intervention under RCFC 24(b)(2) which gives the Court discretion to allow a party to intervene. This issue is now moot given that Intervenor-Applicant must be granted intervention as a matter of right.

## IV. Conclusion

Because Intervenor-Applicant has satisfied each of the requirements for intervention of right under RCFC 24(a)(2), the Court GRANTS the Motion to Intervene. Classical Financial Services, hereinafter referred as "Intervenor" in future court filings, shall file its complaint on or before May 4, 2005. Both Plaintiff and Defendant shall separately respond to the complaint and shall do so in accordance with the Rules of the Court of the Federal Claims.

s/ Edward J. Damich
Edward J. Damich
Chief Judge