**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMERICAN RENOVATION AND CONSTRUCTION COMPANY, Plaintiff,** | |
| **v.** | **Case No. 03-1798C (Chief Judge Damich)** |
| **CLASSICAL FINANCIAL SERVICES, LLC, Intervenor Plaintiff,** | |
| **v.** | |
| **UNITED STATES, Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ST. PAUL FIRE & MARINE INSURANCE COMPANY'S**
**MOTION TO INTERVENE AS PLAINTIFF**

COMES NOW the Intervenor-Applicant, St. Paul Fire & Marine Insurance Company ("St. Paul" or "Intervenor-Applicant"), by counsel, and, pursuant to RCFC Rule 24(a), respectfully moves for intervention as a matter of right as Plaintiff in this lawsuit because: (a) St. Paul, a Miller Act Surety, has a legally protectable interest in the subject matter of this lawsuit, pursuant to its equitable subrogation, indemnification and contractual rights; (b) St. Paul's interest may not be adequately protected by the parties already in the lawsuit; and (c) denial of intervention is likely to impair St. Paul's ability to protect its interests. Alternatively, Intervenor-Applicant respectfully moves for intervention under RCFC Rule 24(b) because there are common issues of law or fact between St. Paul's claims and this action. St. Paul's motion for intervention is timely.

In support of its Motion to Intervene, St. Paul states as follows:

## QUESTIONS PRESENTED

1. Whether St. Paul, the completing Miller Act Surety (the "Surety"), has a legally protectable interest in the subject matter of this lawsuit.

2. Whether, if the Court denies St. Paul's intervention, St. Paul's interests may be impaired and may not be adequately protected by the existing parties, following the intervention of another party asserting competing interests.

3. Whether St. Paul's claims, as the Surety that completed the bonded Contract following the Bond Principal's (Contractor's) termination for default, and the contractor's action against the Bond Obligee (Government) arising out of that termination for default, state common issues of fact and law.

4. Whether St. Paul's motion to intervene is timely, where: (a) the likely impairment of St. Paul's right to the Contract funds, and the inability of the contractor (ARC) to adequately protect St. Paul's rights, first became an issue when another party claiming a right to the same Contract funds intervened in this lawsuit on or about May 4, 2005; (b) the prejudice to St. Paul if it is not allowed to intervene will outweigh any possible prejudice to the existing parties; and (c) this case has been stayed and a discovery schedule has not yet been set.

## STATEMENT OF MATERIAL FACTS ("SMF")

1. On March 31, 1999, ARC entered into Contract Number F08602-99-CK006 (the "Contract") with the United States ("Defendant" or "Government") to perform certain construction work on a project known as: Construct JNCO Family Housing Units, Phases III and IV, MacDill AFB, Florida (the "Project"). *See* App. 1, ¶4.

2. On April 20, 1999, The St. Paul Fire and Marine Insurance Company ("Surety" or "St. Paul") executed performance and payment bonds, Bond No. KA6329 (the "Bond"), as a condition of the Contract. *See* App. 1-2, ¶5; App. 4-7.

3. On April 20, 1999, "for the purpose of inducing [St. Paul] to become surety on the [Bond]," ARC, as the Bond Principal, and ARC's indemnitors executed an Agreement of Indemnity relating to the Contract. *See* App. 2, ¶7; App. 8-20.

4. On or about June 22, 2001, the Government Contracting Officer issued Contract Modification No. P00014, duly acknowledging, and incorporating into the Contract, an assignment by ARC of all Contract proceeds to First Union National Bank ("FUNB") in strict accordance with the procedures mandated per the Anti-Assignment Act. Thereafter, Contract proceeds were disbursed in accordance with the Assignment. *See* App. 2, ¶8; App. 21-28. FUNB served as the "Collateral Agent" pursuant to an "Agreement Governing Bonded Contract and Other Collateral," dated May 16, 2001, between St. Paul, ARC and ARC's indemnitors. *See* App. 42-56.

5. On July 29, 2002, Defendant issued a Contracting Officer's Final Decision terminating ARC's Contract for alleged default on the Project. *See* App. 2, ¶9; App. 29-31.

6. On August 7, 2002, St. Paul entered into a Takeover Agreement with the Government to complete the Project. *See* App. 2, ¶10; App. 32-41. Pursuant to numbered paragraph 1 of the Takeover Agreement, "[t]he term 'Contractor' as used in the Contract shall be deemed after the effective date of this Agreement [August 7, 2002] to refer to the Surety rather than American Renovation & Construction Company." *See* App. 37, ¶1.

7. St. Paul has incurred more than $8,431,876 in costs and expenses relating to the performance of work on this Project in excess of Contract revenues it has received to date. *See* App. 3, ¶11.

8. On July 28, 2003, Plaintiff filed the Complaint in this action requesting the Court to set aside the termination for default and convert it into a termination for convenience of the Government. *See* Docket No. 1.

9. On April 28, 2005, the Court granted a motion by Classical Financial Services, LLC ("Classical") to intervene as plaintiff in this lawsuit. *See* Docket No. 41.

10. On or about May 4, 2005, Classical filed an Intervenor's Complaint in this lawsuit. *See* Docket No. 42.

## <u>ARGUMENT</u>

### I. STANDARD OF REVIEW

In its April 28, 2005 Order, the Court set forth the standard of review for a motion to intervene in this lawsuit, pursuant to Rule 24(a) ("Intervention of Right") and 24(b) ("Permissive Intervention"), as follows:

> ... Under both RCFC 24(a) and 24(b), a party's application for intervention must be "timely." To intervene as a matter of right, in addition to the text of Rule 24(a), the method of analysis includes the three-part test formulated by the U.S. Court of Appeals for the Federal Circuit in *American Maritime Transport, Inc. v. United States.* In construing the text of the Rule, the Federal Circuit in that case required that the applicant have: "[1] an interest relating to the property or transaction which is the subject of the action and [2] he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties." *Am. Mar. Transp, Inc.. v. United States,* 870 F.2d 1559, 1560 (Fed.Cir.1989).

> Permissive intervention may be granted in the court's sound discretion "when an applicant's claim or defense and the main action have a question of law or fact in common ... [in consideration of] whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." RCFC 24(b)(2).
>
> The general principle to be kept in mind in employing the method of analysis, as stated by the Federal Circuit, is that "the requirements for intervention are to be construed in favor of intervention." *Am. Mar. Transp., Inc.,* 870 F.2d at 1561. Similarly, a number of other circuits have held that Rule 24 is to be construed liberally. [Citations omitted.] ... Generally, courts will accept as true all well-pleaded, nonconclusory allegations in the motion to intervene, in the proposed complaint or answer in intervention, and in declarations supporting the motion, absent sham, frivolity, or other objections. [Citations omitted.]

*See* Docket No. 41, pp. 2-4. Applying this method of analysis to the facts in this case, the Court must conclude that St. Paul has a right to intervene under RCFC Rule 24(a) and, in any event, the Court must permit St. Paul to intervene under RCFC Rule 24(b).

## II. ANALYSIS

### A. St. Paul's Motion to Intervene is Timely

This Court adopted the following three factors set forth by the Federal Circuit that the Court must consider in determining timeliness:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of his right to intervene in the case before he applied to intervene; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor by denying intervention; and (3) existence of unusual circumstances militating either for or against a determination that the application is timely.

*See* Docket No. 41, p. 4, *citing Belton Indus., Inc. v. United States,* 6 F.3d 756, 762 (Fed.Cir.1993). Based on this three-part test, St. Paul's motion to intervene is timely.

#### 1. ***Accrual of St. Paul's Right to Intervene***

ARC's Complaint in this lawsuit arises out of the Government's termination for default of ARC's Contract. (SMF 8) On or about May 4, 2005, Classical intervened in

this lawsuit, asserting a claim to the remaining Contract funds. (SMF 10) Classical's claim is adverse to St. Paul's equitable subrogation, indemnification and contractual rights to the Contract funds, as the completing surety. St. Paul shares ARC's objective of having the termination for default overturned and maximizing recovery of the damages suffered by St. Paul and ARC. In fact, ARC and St. Paul share legal counsel with respect to this matter. As such, prior to Classical's intervention, on or about May 4, 2005, ARC adequately represented St. Paul's interests in this lawsuit and St. Paul reasonably believed that it neither had the right nor the need to intervene as a party. St. Paul's filing of this motion to intervene within two weeks after Classical's intervention favors a finding of timeliness.

**2. *Prejudice to St. Paul Outweighs Any Prejudice to the Parties***

Unless the Court allows St. Paul to intervene in this lawsuit, the prejudice to St. Paul would outweigh the prejudice suffered by the existing parties for the same reasons that the Court found in allowing Classical to intervene. *See* Docket No. 41, p. 5. Specifically, a potential judgment recognizing Classical's assignment rights to the Contract funds, without consideration of St. Paul's equitable subrogation, indemnification, contractual and other legal rights to the same funds, could have a preclusive effect in a separate lawsuit by St. Paul to recover from the same funds. *Id*. Moreover, as a practical matter, any possible depletion of the Contract funds will impede St. Paul's ability to recover from those funds. On the other hand, the existing parties may be prejudiced due to duplication of settlement efforts expended so far. *Id*. On balance, the prejudice to St. Paul outweighs the potential prejudice to the existing

parties. Therefore, this factor also favors a finding of timeliness with respect to St. Paul's motion to intervene.

**3. *Special Circumstances are Present***

The special circumstances that the Court noted in its April 28, 2005 Order, "that this case has been stayed for some time and a discovery schedule has not yet been set" (*id*.), also justify a finding that St. Paul's motion is timely.

**B. St. Paul Must be Allowed to Intervene as a Matter of Right**

Applying the three-part test recognized by the Court, the Court must find that St. Paul has a right to intervene in this lawsuit because:

**1. *St. Paul Has an Adequate Interest in This Litigation***

St. Paul, as the completing surety pursuant to its Performance Bond, has a "significantly protectable" interest in the subject matter of this litigation pursuant to its equitable subrogation, indemnification and contractual rights.[1]

---

[1] This Court enunciated the criteria for determining whether an intervenor-applicant has an adequate interest in the lawsuit as follows:

> In applying Rule 24, the Supreme Court characterized the adequate interest requirement as requiring that applicant have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable" *Donaldson v. United States,* 400 U.S. 517, 531 (1971). The Supreme Court did not explain what it meant by "significantly protectable" leaving it to the circuit courts to develop more specific standards. Several circuits, including the Federal Circuit, have concluded that a significantly protectable interest is one which is "legally protectable." *Am. Mar. Transp., Inc.,* 870 F.2d at 1561; *see also Conference v. Kelley,* 747 F.2d 777, 779 (D.C.Cir.1984); *Harris v. Pernsley,* 820 F.2d 592, 596 (3d Cir.1987). The Federal Circuit has provided additional guidance by indicating that the interest must be more than a mere economic interest, and not indirect or contingent. *Am. Mar. Transp., Inc.,* 870 F.2d at 1561. Finally, intervention is proper only if the proposed intervenor's interests are "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *Id.*

*See* Docket No. 41, p. 6.

### a. ***St. Paul's Equitable Subrogation Rights***

The equitable doctrine of subrogation dates back at least to 1896*. United States Fire Insurance Co. v. U.S.*, 61 Fed.Cl. 494, 499 (2004). Under this doctrine, a bond surety that takes over or finances completion of a defaulted contract "steps into the shoes both of the contractor against the government and the government against the contractor." *Insurance Co. of the West v. U.S.*, 243 F.3d 1367 (Fed.Cir. 2001); *see also*, *United States Fire Insurance Co.*, *supra* at 501; *Preferred National Insurance Co. v. U.S.*, 54 Fed.Cl. 600, 604 (2002). "[T]he surety's rights of subrogation 'relate back to the date of execution of the surety bonds.'" *Insurance Co. of the West v. U.S.*, 55 Fed.Cl. 529, 541 (2003); *Transamerica Insurance Co. v. U.S.*, 31 Fed.Cl. 602, 606 (1994).

"Under equitable subrogation, surety claims … must be satisfied before the []contractor and its creditors become entitled to any contract funds. *See*, *e.g.*, [citation omitted]; *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) (Miller Act Surety's right of subrogation prevailed over the bank's security interest in earned but unpaid contract funds)." *Centex-Simpson Const. Co. v. Fidelity & Deposit Co. of Maryland*, 795 F.Supp. 35, 39 (D.Me. 1992).[2]

As the Miller Act completing surety in this case, St. Paul's equitable subrogation rights prevail over any other competing claim to the Contract proceeds. Moreover, as a

[2] *See also, Federal Insurance Co. v. Constructora Maza, Inc.*, 500 F.Supp. 246, 251 (D.P.R. 1979); *Framingham Trust Company v. Gould-National Batteries, Inc.*, 427 F.2d 856 (1st Cir. 1970) (surety's right of subrogation prevailed over the rights of an assignee with a perfected security interest); *Aetna Insurance Co. v. Poole and Kent Co.*, 303 F.Supp. 963 (S.D.Fla 1969) (surety had priority over assignee bank; reiterating "the general rule of suretyship law that ... the surety acquires an equitable lien against any sum due its principal remaining in the hands of the one for whose protection the bond was written").

matter of law, St. Paul's rights relate back to April 20, 1999, the date of execution of the surety bonds. (SMF 2) Thus, under the doctrine of equitable subrogation, St. Paul has a significantly protectable interest in the subject matter of this litigation.

**b. *St. Paul's Indemnification Rights***

On April 20, 1999, "for the purpose of inducing [St. Paul] to become surety on the [Bond]," ARC, as the Bond Principal, and ARC's indemnitors executed an Agreement of Indemnity relating to the Contract. *See* App. 9 (SMF 3). Under the terms of the Agreement of Indemnity, all Contract proceeds payable to ARC were held in trust for the payment of obligations incurred by St. Paul. *See* App. 9, ¶5. Moreover, ARC assigned to St. Paul any and all of its rights to the Contract proceeds. *See* App. 10, ¶10. Thus, pursuant to the April 20, 1999 Agreement of Indemnity, St. Paul has a significantly protectable interest in the subject matter of this litigation.

**c. *St. Paul's Rights Under the Takeover Agreement***

Pursuant to the August 7, 2002 Takeover Agreement between St. Paul and the Government, St. Paul assumed the role of the contractor to perform work on the Project and to receive all Contract proceeds. *See* App. 37, ¶1; *see also*, *Preferred National Insurance Co, supra*, 54 Fed.Cl. at 603 ("surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor"). Thus, based on its contractual right to receive the remaining Contract funds, St. Paul has a significantly protectable interest in the subject matter of this litigation.

**2. *St. Paul's Interests Will be Impaired if Intervention is Denied***

Classical filed an Intervenor's Complaint in this lawsuit, asserting: (a) an interest in ARC's rights to "any payments and proceeds owed to ARC from the Government in

connection with the Contract;" and (b) that "[Classical] is the legal and equitable owner of this cause of action and any award of damages issued thereon." *See* Docket No. 42, ¶¶ 17, 22 and 25. In other words, both St. Paul and Classical claim a right to any remaining interests of ARC in the Contract funds. Thus, for the same reasons that the Court noted in its April 28, 2005 Order granting Classical's motion to intervene, "a judgment in favor of [Classical] without allowing [St. Paul] to participate in the case could create a *res judicata* defense for the government if St. Paul were to attempt to enforce its rights under the CK006 Contract in a separately filed case." *See* Docket No. 41, pp. 5, 11. Therefore, the Court must find that St. Paul's interests will be sufficiently impaired unless it is allowed to intervene in this case.

**3. *St. Paul's Interests are Not Adequately Represented***

St. Paul and Classical both claim an interest in ARC's cause of action and any rights that ARC may have under the Contract. Whereas Classical has now intervened as a party, St. Paul's equitable subrogation rights, as the Court noted, are "unasserted" in this lawsuit. *See* Docket No. 41, p. 10. Because St. Paul's interests are clearly adverse to those asserted by Classical, St. Paul's interests are not adequately represented.

**C. In the Alternative, the Court Must Exercise its Discretion and Permit St. Paul to Intervene**

In the alternative, St. Paul respectfully requests the Court to exercise its discretion and permit St. Paul to intervene, pursuant to RCFC 24(b)(2). The factual and legal issues in this case pertain to ARC's performance of work under the Bonded Contract and the propriety of the Government's termination of that Contract for default. St. Paul's Performance Bond for the Project incorporated the terms of the Bonded

Contract and St. Paul's performance of work to complete the Bonded Contract was directly related to the declaration of ARC's default. Clearly, therefore, St. Paul's claims, which arise out of its role as the completing surety, have questions of law and fact in common with the main action.

Moreover, the undersigned is authorized to represent on behalf of ARC and the Government that St. Paul's intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Finally, pursuant to the Court's invitation that "[i]f St. Paul wishes to assert its rights, it may also file a motion to intervene" (*see* Docket No. 41, p. 10), St. Paul respectfully requests the Court's permission to do so.

## III. CONCLUSION

The Court must grant St. Paul's motion to intervene, pursuant to RCFC 24(a), to prevent the impairment of St. Paul's equitable subrogation, indemnification and contractual rights, which are no longer adequately represented by the existing parties. Alternatively, St. Paul requests that the Court permit intervention under RCFC 24(b).

Respectfully submitted this 17th day of May 2005.

ST. PAUL FIRE & MARINE INSURANCE COMPANY

By Counsel:
s/- Robert G. Watt
ROBERT G. WATT
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
rwatt@wthf.com

Of Counsel:
HARISH C. MIRCHANDANI
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
hmirchan@wthf.com

CERTIFICATE OF FILING

I hereby certify that on May 17, 2005, a copy of St. Paul's Motion to Intervene, Supporting Memorandum and Appendix, were filed electronically. I understand that a copy of the same will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert G. Watt