IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AMERICAN RENOVATION AND CONSTRUCTION COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant | Case No. 03-1798C<br>(Chief Judge Damich) |

**AFFIDAVIT OF MARC BROWN**

**EXHIBIT 5**

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 3

2. AMENDMENT/MODIFICATION NO.: P00018
3. EFFECTIVE DATE: 07-Aug-2002
4. REQUISITION/PURCHASE REQ. NO.:
5. PROJECT NO. (If applicable):

6. ISSUED BY — CODE F08602
6TH CONTRACTING SQUADRON
2606 BROWN PELICAN AVE
MACDILL AFB FL 33621-5000

7. ADMINISTERED BY (If other than item 6) — CODE F08602
6TH CONTRACTING SQUADRON
2606 BROWN PELICAN AVE
MACDILL AFB FL 33621-5000

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
ST. PAUL FIRE & MARINE INSURANCE CO.
5801 SMITH AVE, MC53
BALTIMORE MD 21209

CODE | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
X 10A. MOD. OF CONTRACT/ORDER NO. F08602-99-C-K006
X 10B. DATED (SEE ITEM 13) 31-Mar-1999

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning ______ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

X B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

☐ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

☐ D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ______ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Takeover Agreement

See continuation sheet

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
BENJAMIN KOSSES / CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE SIGNED
19-Aug-2002

EXCEPTION TO SF 30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

33

F08602-99-C-K006
P00018
Page 2 of 3

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

Changes in Section G

Summary for the Payment Office

The total funded amount of the contract remains unchanged.

A. This modification is issued to incorporate the Takeover Agreement (6 pages) between the United States Air Force and St. Paul Fire & Marine Insurance Co. (surety). Agreement was signed on 7 Aug 02.

B. Total contract value and unpaid balance are as stated on page 2, paragraph 3 of the Takeover Agreement.

C. Original contract completion date and revised contract completion date are as stated on page 3, paragraph 6 of the Takeover Agreement.

D. All payments will be made to the assignee (First Union Bank) as stated on page 3, paragraph 5d of the Takeover Agreement.

E. All other terms and conditions remain unchanged.

## TAKEOVER AGREEMENT

This contract is for the completion of work under Defaulted Contract F08602-99-CK006.

This Takeover Agreement ("Agreement") is made and entered into this 7th day of August 2002, by St. Paul Fire and Marine Insurance Company ("Surety") and the United States of America, acting by and through the Department of the Air Force ("Government").

WHEREAS, American Renovation & Construction Company ("Contractor") entered into Contract No. F08602-99-CK006 ("Contract") with the Government on 1 April 1999 for $6,233,629.00 for JNCO Housing, Phases 3 and 4, at the MacDill Air Force Base in Florida ("Project") in accordance with the terms and conditions of the Contract, including all contract documents forming a part of the Contract;

WHEREAS, as required by the Miller Act (40 U.S.C. 270b) and under the terms and conditions of the Contract, the Contractor and the Surety delivered to the Government, a Performance Bond, No. KA632999 in the penal sum of $6,233,629.00, and a Payment Bond, No. KA63299 in the penal sum of $2,500,000.00, on behalf of ARC as principal and naming the Government as obligee;

WHEREAS, on 29 July 2002 the Government notified the Contractor and Surety that the Contract was terminated for default;

WHEREAS, the Government has called upon the Surety, and the Surety is offering, to fulfill its obligations as surety under the terms of the Performance Bond and to promptly complete the work required by the Contract;

WHEREAS, the Surety has undertaken the completion of the Contract in accordance with the terms of the Performance Bond, the Contract and this Agreement, provided that it will receive up to the entire remaining contract balance as more fully defined and set forth below;

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements contained herein, the Government and the Surety agree as follows:

## AGREEMENTS

1. The Surety, as a "completing surety" under FAR 49.404, hereby agrees to undertake the performance of the Contract, including all modifications thereto, which has not been completed, including warranty work and correction of defective work, in accordance with the terms and provisions thereof, and agrees to be bound by the Contract. The provisions of the Contract, as heretofore modified and amended, are incorporated herein by reference. The Government acknowledges that the Surety, by its execution of this Agreement, is acting in its capacity as surety for the Contractor, in making arrangements for the performance and completion of the Contract (not as a completing contractor), and that the Surety is not assuming any obligations or liabilities beyond those set forth in the Performance Bond for completion of the Contract. As to

the completion of the Contract, except as otherwise provided in this Agreement, the Surety is entitled to all rights, title, and interest of the Contractor to the Contract in all respects as if the Surety were the original party to the Contract. The term "Contractor" as used in the Contract shall be deemed after the effective date of this Agreement to refer to the Surety rather than American Renovation & Construction Company.

2. The Government acknowledges and provides its approval that the Surety will subcontract the performance of the work under the Contract to Solpac, Inc., d/b/a Soltek Pacific ("Completion Contractor"). The Surety may satisfy the required insurance obligations under the Contract by providing evidence of the required insurance coverage carried by the Completion Contractor, with the Surety being named as an additional insured under the policies. It is acknowledged that no contractual relationship exists between the Completion Contractor and the Government and that the Government shall look only to the Surety for completion of the Contract and for compliance with the terms of this Agreement.

3. The Government and Surety agree that as of the date of this Agreement:

a. The amount of the Contract, including changes and modifications issued to date, is the sum of $15,737,915.67;

b. The Contractor completed work valued at $13,066,580.13 and was paid the sum of $12,230,082.18;

c. The Government is holding the sum of $836,497.95 as retainage pursuant to the terms of the Contract;

d. The Contract Completion Date (1 July 2002) has been reached. The Government has not withheld liquidated damages to date;

e. The "Remaining Contract Balance" is defined as the Contract amount, minus the amount paid to the defaulted Contractor. As of the date of voluntary default, the Remaining Contract Balance is $3,507,833.49.

4. The Government agrees that the Remaining Contract Balance is dedicated and will be applied to the completion of the Contract pursuant to this Agreement and will be paid directly to the Surety, plus or minus any additional amounts of money as a result of any modifications, as the work progresses.

5. The Surety agrees to complete the work according to the terms and conditions of the Contract, and the Government agrees to pay the Surety up to the balance of the Contract price unpaid at the time of default (Remaining Contract Balance), but not in excess of the Surety's costs and expenses, subject to the following:

a. Any unpaid earnings of the defaulted Contractor, including retainage and progress estimates for work accomplished before termination, shall be subject to debts due the Government, by the

defaulted Contractor, except to the extent that unpaid earnings may be used for payment to the Surety for its actual costs and expenses incurred in the completion of work, exclusive of its payments and obligations under the Payment Bond.

b. The Government does not waive or release its right to liquidated damages for delays in completion of the work, except to the extent that such delays are excusable under the Contract.

c. The Surety shall not be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its liabilities under the Payment Bond of the defaulted Contractor. Furthermore, payments to the Surety to reimburse it for discharging its liabilities under the Payment Bond of the defaulted Contractor shall only be on authority of mutual agreement between the Surety and Government, a determination of the Comptroller General, or by order of a court of competent jurisdiction. The Surety agrees to indemnify the Government from claims by the defaulted Contractor for payments to the Surety for reimbursement of Payment Bond losses. Said indemnity shall include defending any such claim by the defaulted Contractor and shall hold the Government harmless from any costs, expense, or judgment arising from said claim.

d. Pursuant to FAR 49.404(e)(3), First Union Bank, located in Tennessee ("Assignee"), is the Assignee of the Contract proceeds and the Surety will not be paid from unpaid earnings unless the Assignee provides written consent.

6. The Surety assumes the completion date of the Contract as originally awarded, 11 Aug 2000, and currently revised to 1 July 2002 under Modification No. P00015. The Government may extend the completion date pursuant to the clauses of the Contract permitting time extensions. The Surety agrees to provide to the Government a schedule for completing the remaining work in accordance with the terms of the Contract within fourteen (14) days of the signing of this Agreement.

7. To the extent the Government has any right, title or interest therein, the Government agrees that the Surety and Completion Contractor shall have the right to use, without charge, any of the equipment, materials and appurtenances furnished or supplied by the defaulted Contractor for this Project, which may be stored on or about the premises of the Project site. In addition, they may use materials that may have been fabricated for the use in connection with the Contract, whether or not presently upon the Project site within fourteen days of signing of this agreement

8. The Surety shall specifically authorize, in writing, who will be its representative ("Authorized Individual") solely for the purposes set forth in this paragraph. For purposes of this Agreement, the Surety designates Dave Carlin as the

Authorized Individual for representing the Surety in dealing with the Government on day-to-day construction issues and contract administration with respect to the Project. The Surety hereby designates the Authorized Individual to prepare and process invoices and pay estimates on the Contract as work progresses. However, the Surety will sign all invoices for pay estimates submitted to the Government. After execution of this Agreement, a letter of authority shall be issued from the Surety outlining the parameters and dollar limits of the authority of the Authorized Individual to negotiate and settle modifications to the Contract.

9. Surety agrees that nothing contained herein shall be construed as constituting an acceptance by the Government of the work heretofore performed by the Contractor.

10. The total liability of the Surety under this Agreement and the Performance Bond for the performance of work, after the expenditure of the remaining Contract balance, shall not exceed $6,233,629.00 and the amount of any future Contract modifications properly issued under the Contract. All payments properly made by the Surety for the performance of the Contract shall be credited against the penal sum of the Performance Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase or decrease in the liability of the Surety under the Performance Bond. Surety may cause further work to complete the Contract to cease on its behalf if it has expended the penal sum of the Performance Bond.

11. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions. The total liability of the Surety under the Payment Bond is limited to and shall not exceed the penal amount of the Payment Bond in the amount of $2,500,000.00 and the amount of Contract modifications properly issued under the Contract. All Payment Bond payments properly made by the Surety shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase or decrease in the liability of the Surety under the Payment Bond.

12. The Government and Surety agree that the Surety's satisfactory completion of the Contract shall satisfy and discharge Surety's obligation under this Agreement.

13. The Surety shall maintain separate records and accounts covering all costs incurred and expenditures made by Surety in completing the work. The Surety shall make such records and accounts and supporting vouchers available for inspection and verification by the contracting officer, the Comptroller General, or their authorized representatives until the expiration of three years from the date of final payment hereunder.

14. This Agreement is solely for the benefit of the Government and the Surety. The Parties do not intend by any provision of this Agreement to create any rights in, or increase the rights of, any third-party beneficiaries, nor to confer any benefit upon, or any enforceable rights under this Agreement, or otherwise upon anyone other than the parties to this Agreement. Specifically, the Parties acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants, or the

liabilities or obligations of the Surety under the Bonds; nor shall this Agreement be construed to decrease the already existing obligations of the Surety under the Bonds.

15. This Agreement constitutes the whole of the understanding, discussions, and agreements between the Government and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Government and the Surety acknowledge that there have been no oral, written, or other Agreements of any kind as a condition precedent to, or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement. Nothing in this Agreement shall be construed to be a waiver by the Government of the terms of the Contract or the law of the United States.

16. This Agreement shall not be changed, amended or altered in any way except in writing and executed by the Parties.

17. This Agreement shall be binding on the parties and their respective successors and assigns.

18. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal or unenforceable in any respect, unless such invalidity, illegality or unenforceability shall be tantamount to a failure of consideration, the validity, legality and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

19. It is understood and agreed by the Government and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party drafting this Agreement.

20. The Surety expressly reserves all prior rights, equitable liens and subrogation rights under the Contract, at law or in equity, including those rights and remedies that accrued prior to the execution of this Agreement and those rights and remedies that may accrue during the completion of the Contract. No waiver of such rights is agreed to or implied or intended, regardless of any provisions of this Agreement to the contrary. Nothing contained herein shall be construed to waive or modify any right, claim, defense and/or remedy of Contractor (American Renovation & Construction Company) related to the Contract, and all such rights are expressly reserved.

21. The Government expressly reserves any and all prior rights under the Contract or at law. No waiver of such rights is agreed to or implied or intended, regardless of any provisions of this Agreement to the contrary.

22. The Surety will commence work at the site within ten days (10) of signing this agreement and agrees that time is of the essence in completing the Contract.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the date indicated above and each of the undersigned personally represent and warrant that they have the full power, right and authority to execute this Agreement on behalf of the respective Parties.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

BY________________________________________

UNITED STATES OF AMERICA

**BENJAMIN KOSSES**
**Contracting Officer**

BY________________________________________
Contracting Officer