Account. Within ten (10) days of the execution of this Agreement, Principal will provide Surety with a current schedule of Accounts listing the name and address of each Account Debtor along with a description of the services and/or goods supplied together with an aging analysis. Within ten (10) days of the execution of this Agreement, Principal will provide Surety with an accounting of all of Principal's cash, whether held in accounts at banking institutions or otherwise, along with copies of the most recent bank and other account statements pertaining thereto.

5. Operation of the Cash Collateral Account. Principal and Surety acknowledge that Surety will be irrevocably and solely entitled to exercise any and all rights in regard to control, maintenance, and movement of funds from the Cash Collateral Account. Operation of the Cash Collateral Account will be in accordance with the terms and provisions of this Agreement. Delivery to Collateral Agent of funds, checks, drafts, warrants, or other instruments of payment, with or without endorsements, and if endorsed, in whatever manner effected, unless specifically restricted, will be authority to Collateral Agent to place same to the credit of the Cash Collateral Account.

Principal and Surety agree that Collateral Agent may debit the Cash Collateral Account for: (i) fees for the services provided in conjunction with this Agreement in accordance with Collateral Agent's then-current fees and expenses for such services in connection with the administration of the accounts provided for in this Agreement; and (ii) any items deposited in the Cash Collateral Account which may be returned or otherwise not collected.

Any direction or charge (other than wire transfers or reimbursement of Collateral Agents Fees and expenses provided for in the immediately preceding paragraph) on the Cash Collateral Account will require the signature of any two of the hereinafter named authorized representatives of Surety. Wire transfers will be made at the request of one authorized representative of Surety. Authorized representatives of Surety are: (1) Richard Levesque; (2) Scott Cochrane; and (3) Jamie Doody. Surety may at any time upon notice to Principal and three (3) Business Days written notice to Collateral Agent add to, subtract from, or change the names of any of the designees authorized to sign checks and make other transfers on the Cash Collateral Account.

Collateral Agent will forward the monthly statements for Collateral Account to Principal and Surety.

In order to facilitate the operation of and the disbursement of funds from the Cash Collateral Account and further the intent and objectives of this Agreement, Surety may cause to be established other accounts, including, without limitation, the Zero Balance Account hereinafter described in Section 13 of this Agreement.

6. Indemnification of Collateral Agent; Limitation of Remedies. (a) Collateral Agent's sole duty will be to accept deposits of funds and to maintain and disburse such funds in accordance with the terms of this Agreement. No other duties or responsibilities other than those specifically set forth herein shall be implied or read into this Agreement. Principal and Surety jointly and severally agree to save and hold harmless Collateral Agent from any and all liabilities, losses, claims, costs or damages, including reasonable attorneys' fees, which Collateral Agent may

incur in connection with this Agreement and the performance of Collateral Agent's services hereunder; provided, however, Principal and Surety will, in no event, indemnify Collateral Agent with respect to matters determined to have arisen from the gross negligence or willful misconduct of Collateral Agent.

(b) In the event that it is determined that Collateral Agent breaches the standard of care set forth in the immediately preceding paragraph, above, Collateral Agent will be liable to Principal and Surety only for actual damages caused by Collateral Agent's breach. Principal and Surety expressly agree that in no event will Collateral Agent be liable for any special, consequential or punitive damages in connection with Collateral Agent's failure to adhere to the referenced standard of care. Collateral Agent will incur no liability in relying, acting, or proceeding in good faith upon any notice, direction, or other document reasonably believed by it to be genuine, and Collateral Agent will not be required to make any investigation into matters stated or represented therein. Collateral Agent may consult with legal counsel selected by it, and Collateral Agent will be protected in respect to any action taken by it in good faith and in accordance with the opinion of counsel. Fees and expenses incurred with respect to such consultations shall be included in the expenses which are reimbursable to Collateral Agent under Section 5 of this Agreement.

(c) Any determination of gross negligence, willful misconduct or breach on the part of the Collateral Agent must be made by a Court of competent jurisdiction in a final and non-appealable judgment.

7. Term of This Agreement. The security interest in favor of Surety created by Section 3 of this Agreement will terminate when Surety has given written notice to Principal and Collateral Agent to terminate this Agreement. In addition, Surety may terminate the services of First Union National Bank, as Collateral Agent, upon three (3) Business Days written notice to Collateral Agent and Principal. Upon termination, Collateral Agent will immediately deliver any collected funds in the Cash Collateral Account to Surety, or as Surety directs in writing. Collateral Agent may resign upon three (3) business day's written notice to Surety and shall, in such event, likewise deliver to Surety or pay to Surety's order, any collected funds in the Cash Collateral account.

8. Notices. Any notice, request, demand, or other communications required, permitted, or otherwise contemplated by this Agreement will be in writing and either delivered personally, sent by regularly scheduled overnight air courier service, with respect to Collateral Agent only by confirmed facsimile transmission, or postage prepaid certified United States mail, return receipt requested, to the following addresses:

Surety:

The St. Paul Companies
P. O. Box 4689, Suite 100
31919 1st Avenue, South
Federal Way, Washington 98003-5258
Attn: Rick Levesque

with a copy to:
Manier & Herod
150 Fourth Avenue North
Suite 2200
Nashville, Tennessee 37219
Attn: J. Michael Franks

| | |
|---|---|
| Principal: | American Renovation and Construction Company<br>3645 Camino Del Rio South<br>San Diego, California 92108-4004<br>Attn: Anthony P. Dethloff<br><br><u>with a copy to:</u><br>Bruckner & Walker<br>4550 Kearny Villa Road #209<br>San Diego, California 92123<br>Attn: William L. Bruckner, Esq. |
| Collateral Agent: | First Union National Bank<br>2525 West End Avenue, Suite 1200<br>Nashville, Tennessee 37203<br>Attn: Corporate Trust Department<br>Greta Wright<br>Facsimile: (615) 341-3927 |

Any such communication will be deemed received at the earliest to occur of: (i) personal receipt; (ii) the date of promised delivery of a regularly scheduled overnight air courier service; (iii) with respect to Collateral Agent <u>only</u> by confirmed facsimile transmission; or (iv) five days after deposit in the United States mail. Any of the foregoing addresses may be changed by means of a written notice furnished in the manner provided herein.

9. <u>Governing Law and Jurisdiction</u>. This Agreement will be deemed to be a contract under the laws of the State of Tennessee and for all purposes will be governed by and construed and enforced in accordance with the laws of such State. Unless the jurisdictional prerequisites are not met, the parties hereto irrevocably consent to the exclusive jurisdiction of Tennessee and of all United States District Courts of Tennessee, for the purpose of any litigation concerning this Agreement.

10. <u>Nonwaiver of Rights</u>. The security interest, trust, and rights granted herein will not be deemed a waiver of Surety's equitable, contractual or common law rights, including, without limitation Surety's equitable subrogation rights or otherwise, said security interest and rights being in addition thereto. No waiver of any right, power, or remedy of Surety will be effective unless said waiver is in writing and signed by Surety. Every power and remedy given by this Agreement to Surety may be exercised from time to time as often as may be deemed expedient by Surety.

11. <u>Binding Effect, Assignment, Amendment, and Negotiation</u>. This Agreement will inure to the benefit of, and will be binding upon, the respective Affiliates, successors and permitted assigns of the parties hereto. Principal and Indemnitors have no right to assign any of their rights or obligations hereunder without the prior written consent of Surety. This Agreement may be amended only by a writing signed on behalf of such party. This Agreement has been negotiated by the parties and each party has had the benefit of counsel. This Agreement will not be construed against any party.

12. Collateral Agent's Security Interest and Setoff Rights. Collateral Agent hereby waives any security interest and any right of setoff or recoupment which it may have, contractual or otherwise, with respect to the Cash Collateral Account, it being the intention of the parties that the Cash Collateral Account and the disposition of the funds therein deposited be governed by this Agreement, except as to the matters expressly provided for in Section 5 of this Agreement. Without limiting the generality of the foregoing, Collateral Agent hereby waives any right to setoff it may have pursuant to Section 14 of its Standard Deposit Agreement and Disclosures (with respect to the Zero Balance Account) or pursuant to any written directions or instructions governing the administration of the trust account, except as to the matters expressly provided for in Section 5 of this Agreement.

13. Zero Balance Account. Contemporaneously with the execution of this Agreement Principal will open a "Zero Balance Account" at First Union National Bank, said account being styled "American Renovation and Construction Company" Account No. 2079900097100. The foregoing account will operate pursuant to the terms of the "Certified Resolutions of Board of Directors of American Renovation and Construction Company, for Zero Balance Account" attached hereto as Exhibit B. Surety authorizes Collateral Agent to make transfers from the Cash Collateral Account to this Zero Balance Account in accordance with Exhibit B.

14. Principal and Indemnitors to Hold Contract Funds in Trust. Principal and Indemnitors agree and expressly declare that all funds due or to become due under the Bonded Contracts will immediately become trust funds, whether in possession of Principal, any Indemnitor or another, for the benefit and the payment of all Persons to whom Principal incurs obligations in the performance of the Bonded Contracts, for which Surety is or may be liable under the Bonds. If Surety discharges any such obligations, with or without a claim asserted against Surety under the Bonds, it will be entitled to assert the right of such Person to the trust fund. All payments received for or on account of any Bonded Contract will be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any Bonded Contract and for labor, materials, and services furnished in the prosecution of the Work in any Bonded Contract or any extension or modification thereof. All monies due and to become due under any Bonded Contract are also trust funds, whether in the possession of Principal, Indemnitors, or otherwise. The trust funds will be for the benefit and payment of all obligations for which Surety is or may be liable under any Bonds. The trust funds will inure to the benefit of Surety for any liability or Surety Loss it may have or sustain under any Bond, and this Agreement and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose as stated in this paragraph will not be modified nor waived by this commingling provision.

17. Controlling Agreement. Except as specifically provided elsewhere herein, this Agreement supersedes all other understandings and agreements, whether written or oral, between Surety, Collateral Agent, and/or Principal and/or Indemnitors relating to the subject matter hereof and will govern in the event of any conflicts between this Agreement and any other agreement to which Surety, Collateral Agent, and/or Principal and/or Indemnitors are parties. This Agreement supersedes in its entirety and replaces as Appendix E to the Multi-Party Agreement the Trust Agreement dated February 13, 2001, and upon execution hereof, such Trust Agreement shall be of no further force or effect.

18. Severability. The provisions of this Agreement are intended to be severable. If any provision of this Agreement is held invalid or unenforceable in whole or in part in any jurisdiction, such provision will, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without in any manner affecting the validity or enforceability of such provision in any other jurisdiction or the remaining provisions of this Agreement in any jurisdiction.

19. Counterparts. This Agreement may be executed by the parties independently in any number of counterparts, all of which together will constitute but one and the same instrument which is valid and effective as if all parties had executed the same counterpart.

20. Corporate Authority. Principal represents and warrants that the execution of this Agreement has been duly authorized by its Board of Directors.

21. Section Headings. The section headings in this Agreement are for convenience only and do not limit, define, or construe the contents of the sections.

22. Investment of Funds. Collateral Agent will invest and reinvest the funds held in the Cash Collateral Account as the authorized representatives of Surety will direct (subject to applicable minimum investment requirements) by the furnishing of written direction; provided, however, that no investment or reinvestment may be made except in the following:

(a) direct obligations of the United States of America or obligations the principal of and the interest on which are unconditionally guaranteed by the United States of America;

(b) certificates of deposit issued by any bank, bank and trust company, or national banking association (including Collateral Agent and its Affiliates), which certificates of deposit are insured by the Federal Deposit Insurance Corporation or a similar governmental agency;

(c) repurchase agreements with any bank, trust company, or national banking association (including Collateral Agent and its Affiliates); or

(d) any money market fund substantially all of which is invested in the foregoing investment categories, including any money market fund managed by Collateral Agent and any of its Affiliates.

If Collateral Agent has not received written direction at any time that an investment decision must be made, Collateral Agent will invest the Cash Collateral Account, or such portion thereof as to which no written direction has been received, in investments described in the above clause (d). Each of the foregoing investments will be made in the name of Collateral Agent. No investment will be made in any instrument or security that has a maturity of greater than six (6)

months. Notwithstanding anything to the contrary contained herein, Collateral Agent may, without notice to the authorized representatives of Surety, sell or liquidate any of the foregoing investments at any time if the proceeds thereof are required for any release of funds permitted or required hereunder, and Collateral Agent will not be liable or responsive for any loss, cost, or penalty resulting from any such sale or liquidation. With respect to any funds received by Collateral Agent for deposit into the Cash Collateral Account or any written direction received by Collateral Agent with respect to investment of any funds in the Cash Collateral Account after ten o'clock a.m., Nashville, Tennessee time, Collateral Agent will not be required to invest such funds or to effect such investment instruction until the next day upon which banks in Nashville, Tennessee are open for business.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized officer on the day and year first above written.

COLLATERAL AGENT:

FIRST UNION NATIONAL BANK, a national banking association

By: [signature]
Its: Vice President

SURETY:

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
ST. PAUL MERCURY INSURANCE COMPANY

By: ______________________
Its: ______________________

PRINCIPAL:

AMERICAN RENOVATION AND CONSTRUCTION COMPANY

By: ______________________
Its: ______________________

months. Notwithstanding anything to the contrary contained herein, Collateral Agent may, without notice to the authorized representatives of Surety, sell or liquidate any of the foregoing investments at any time if the proceeds thereof are required for any release of funds permitted or required hereunder, and Collateral Agent will not be liable or responsive for any loss, cost, or penalty resulting from any such sale or liquidation. With respect to any funds received by Collateral Agent for deposit into the Cash Collateral Account or any written direction received by Collateral Agent with respect to investment of any funds in the Cash Collateral Account after ten o'clock a.m., Nashville, Tennessee time, Collateral Agent will not be required to invest such funds or to effect such investment instruction until the next day upon which banks in Nashville, Tennessee are open for business.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized officer on the day and year first above written.

COLLATERAL AGENT:

FIRST UNION NATIONAL BANK, a national banking association

By: ______________________________
Its: ______________________________

SURETY:

ST. PAUL FIRE AND MARINE INSURANCE COMPANY
ST. PAUL MERCURY INSURANCE COMPANY

By: [signature]
Its: Authorized Representative

PRINCIPAL:

AMERICAN RENOVATION AND CONSTRUCTION COMPANY

By: [signature]
Its: President



179229

INDIVIDUAL INDEMNITORS:

Anthony P. Dethloff

Anthony J. Jemison

Kimberly K. McMahon

Francis N. Todd

Ivan L. Velasquez