**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **AMERICAN RENOVATION AND CONSTRUCTION COMPANY,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **CLASSICAL FINANCIAL SERVICES, LLC, Intervenor Plaintiff,** <br><br> **v.** <br><br> **UNITED STATES** <br><br> **Defendant** | **Case No. 03-1798C** <br> **(Chief Judge Damich)** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF ARC'S MOTION TO DISMISS**
**INTERVENOR CLASSICAL FINANCIAL'S COMPLAINT**

COMES NOW the Plaintiff, American Renovation & Construction Company ("ARC"), by counsel, and pursuant to RCFC Rule 12(b)(6), moves for dismissal of Intervenor Classical Financial Services, LLC's ("Classical") Complaint for failure to state a claim upon which relief can be granted because St. Paul Fire & Marine Insurance Company ("St. Paul"), the Performance Bond surety that completed the Contract at issue in this case, asserts competing and superior rights to the remaining Contract proceeds, as a matter of law, pursuant to St. Paul's equitable subrogation, indemnification, assignment and contractual rights. In support of this motion, ARC states as follows:

**QUESTIONS PRESENTED**

1. Whether Classical's claim to recover from the proceeds of a Contract between ARC and the Government, based on a July 1996 Agreement, must be dismissed as

a matter of law, because the July 1996 Agreement did not cover the Contract at issue in this case.

2. Whether Classical's claim to recover from the Contract proceeds, based on a September 16, 1999 Instrument of Assignment, must be dismissed because, as a matter of law, St. Paul's competing and superior rights to the Contract proceeds, under the doctrine of equitable subrogation, indemnification and assignment, had previously accrued as of April 20, 1999.

3. Whether Classical's claim, to recover from the Contract proceeds to satisfy a judgment against ARC, must be denied because, as a matter of law, St. Paul has competing and superior rights to the Contract proceeds, under the doctrine of equitable subrogation, indemnification, assignment and a Takeover Agreement whereby St. Paul completed the Contract.

**STATEMENT OF MATERIAL FACTS ("SMF")**

1. On March 31, 1999, ARC entered into Contract Number F08602-99-CK006 (the "Contract") with the United States ("Defendant" or "Government") to perform certain construction work on a project known as: Construct JNCO Family Housing Units, Phases III and IV, MacDill AFB, Florida (the "Project"). *See* Docket #42, ¶1; Docket #41, p.2.

2. On April 20, 1999, The St. Paul Fire and Marine Insurance Company ("Surety" or "St. Paul") executed performance and payment bonds, Bond No. KA6329 (the "Bond"), as a condition of the Contract. *See* Docket #41, p.2; App. 1-2, ¶5 and App. 4-7.[1]

3. On April 20, 1999, "for the purpose of inducing [St. Paul] to become surety on the [Bond]," ARC, as the Bond Principal, and ARC's indemnitors executed an Agreement of Indemnity relating to the Contract. *See* App. 2, ¶7 and App. 8-20.

4. On or about June 15, 1996, almost three years prior to the execution of the Contract, Classical executed an Assignment and Security Agreement, whereby ARC assigned certain rights to Classical Receivables Funding Company, L.L.C. with respect to certain "designated contracts" enumerated in the A&S Agreement. *See* Docket #42, ¶5; Docket 41, p.10. The "designated contracts" did not include the Contract at issue in this case. *Id.*

5. On or about September 16, 1999, almost five months after the date of the Bond, ARC attempted to assign to Classical certain rights to payments receivable under the Contract. *See* Docket #42, ¶9; Docket #41, p.2.

[1] The Appendix to this Motion and Memorandum was also attached previously with Docket Nos. 29 and 43.

6. On July 29, 2002, Defendant issued a Contracting Officer's Final Decision terminating ARC's Contract for alleged default on the Project. *See* Docket #1, ¶49; App. 2, ¶9 and App. 29-31.

7. On August 7, 2002, St. Paul entered into a Takeover Agreement with the Government to complete the Project. *See* Docket #1, ¶53; App. 2, ¶10 and App. 32-41. Pursuant to numbered paragraph 1 of the Takeover Agreement, "[t]he term 'Contractor' as used in the Contract shall be deemed after the effective date of this Agreement [August 7, 2002] to refer to the Surety rather than American Renovation & Construction Company." *See* App. 37, ¶1.

8. St. Paul has incurred more than $8,431,876 in costs and expenses relating to the performance of work on this Project in excess of Contract revenues it has received to date. *See* App. 3, ¶11.

9. On July 28, 2003, Plaintiff filed the Complaint in this action requesting the Court to set aside the termination for default and convert it into a termination for convenience of the Government. *See* Docket #1.

10. As of April 1, 2005, ARC and the Government had reached a tentative settlement agreement, subject to approval by the authorized representative of the Attorney General, whereby the Government agreed to make a final payment to close out the Contract that would be substantially lower than $8,431,876.

11. On May 4, 2005, Classical filed an Intervenor's Complaint in this lawsuit. *See* Docket #42.

12. On August 24, 2005, St. Paul filed an Intervenor's Complaint in this lawsuit. *See* Docket #49.

## ARGUMENT

### I. STANDARD OF REVIEW

"The purpose of RCFC 12(b)(6) is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail." *Detroit Edison Co. v. United States*, 56 Fed.Cl. 299, 303 (2003), *citing Advanced Cardiovascular Sys., Inc. v. Scimed life Sys.*, 988 F.2d 1157, 1160 (Fed.Cir. 1993). "Dismissal under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate when the facts as alleged in the complaint do not entitle the plaintiff to a legal remedy. ... In reviewing a motion to dismiss, the court accepts all well-pleaded factual allegations as true, and

draws all reasonable inferences in favor of the plaintiff. ... The case may be properly dismissed, however, if plaintiff 'can prove no set of facts in support of his claim that would entitle him to relief.'" *Holland v. United States*, 59 Fed.Cl. 735, 738 (2004).[2] *See also Adams v. United States*, 391 F.3d 1212, 1218 (Fed.Cir. 2004); *PI Electronics Corp. v. United States*, 55 Fed.Cl. 279, 284-285 (2003); *Schickler, TMD U.S.A., Inc. v. United States*, 54 Fed.Cl. 264, 268 (2002).

In this case, Classical's claim, to recover from any remaining proceeds payable by the Government under the Contract, is fatally flawed and destined to fail for the reasons set forth in this Memorandum. Intervenor Classical's Complaint must be dismissed because Classical can prove no set of facts in support of its claim that would entitle it to relief.

## II. ANALYSIS

Classical asserts a claim to the remaining Contract funds based upon: (1) an Assignment and Security Agreement dated July 15, 1996 (the "A&S Agreement"); (2) a purported Instrument of Assignment dated September 16, 1999; and (3) a judgment against ARC dated August 31, 2004.

Assuming *arguendo* the validity of the instruments upon which they are based, Classical's claims must be dismissed because: (a) the July 15, 1996 A&S Agreement did not cover the Contract at issue in this case; (b) as a matter of law, St. Paul's competing and superior rights to the Contract proceeds, under the doctrine of equitable subrogation, indemnification and assignment, accrued almost five months prior to the attempted

---

[2] *Citing New York Life Ins. Co. v. United States*, 190 F.3d 1372, 1377 (Fed.Cir. 1999); *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir. 1998); *Southfork Sys. Inc. v. United States*, 141 F.3d 1124, 1131 (Fed.Cir. 1998); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir. 2000).

assignment to Classical in September 1999; and (c) the Contract receivables cannot be used to satisfy the August 2004 judgment against ARC because, as a matter of law, the receivables are not included among ARC's assets due to St. Paul's pre-existing and superior rights, as the completing surety.

### A. The Court Has Already Rejected Classical's Claim Under the A&S Agreement Because it Did Not Cover the Contract at Issue in This Case

Even under the exceedingly liberal standards under RCFC 24, whereby "the requirements for intervention are to be construed in favor of intervention," this Court rejected any claims by Classical based on the A&S Agreement. *See* Docket #41, pp. 3, 10. The Court found that the "A&S Agreement was executed in 1996, three years prior to the execution of [this] Contract and only covered certain 'designated contracts' which did not include [this] Contract." *Id.* at 10. Accordingly, the A&S Agreement cannot, as a matter of law, provide grounds for Classical to claim any right to the proceeds from this Contract.

### B. The Court Must Dismiss Classical's Claim Under The September 1999 Instrument of Assignment Because, as a Matter of Law, St. Paul's Competing and Superior Rights to the Contract Proceeds, Under the Doctrine of Equitable Subrogation, Indemnification and Assignment, Had Previously Accrued as of April 20, 1999

ARC's attempted assignment to Classical of rights under the Contract, pursuant to an Instrument of Assignment dated September 16, 1999, was ineffective as a matter of law because, under the doctrine of equitable subrogation, St. Paul's rights to the Contract proceeds dated back to April 20, 1999, the date when St. Paul issued Performance and Payment Bonds for the Project. In other words, ARC did not have any rights to assign to Classical in September 1999 because, as a matter of law, St. Paul had pre-existing rights to the Contract proceeds dating back to April 20, 1999.

The doctrine of equitable subrogation is well established and the legal precedent dates back to at least 1896. *United States Fire Insurance Co. v. U.S.*, 61 Fed.Cl. 494, 499 (2004). Under this doctrine, a bond surety that takes over or finances completion of a defaulted contract "steps into the shoes both of the contractor against the government and the government against the contractor." *Insurance Co. of the West v. U.S.*, 243 F.3d 1367 (Fed.Cir. 2001); *see also, United States Fire Insurance Co.*, *supra* at 501; *Preferred National Insurance Co. v. U.S.*, 54 Fed.Cl. 600, 604 (2002). "[T]he surety's rights of subrogation 'relate back to the date of execution of the surety bonds.'" *Insurance Co. of the West v. U.S.*, 55 Fed.Cl. 529, 541 (2003) (emphasis added); *Transamerica Insurance Co. v. U.S.*, 31 Fed.Cl. 602, 606 (1994).

"Under equitable subrogation, surety claims … must be satisfied before the []contractor and its creditors become entitled to any contract funds. *See, e.g.*, ... *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) (Miller Act Surety's right of subrogation prevailed over the bank's security interest in earned but unpaid contract funds)." *Centex-Simpson Const. Co. v. Fidelity & Deposit Co. of Maryland*, 795 F.Supp. 35, 39 (D.Me. 1992). *See also, Federal Insurance Co. v. Constructora Maza, Inc.*, 500 F.Supp. 246, 251 (D.P.R. 1979); *Framingham Trust Company v. Gould-National Batteries, Inc.*, 427 F.2d 856 (1st Cir. 1970) (surety's right of subrogation prevailed over the rights of an assignee with a perfected security interest); *Aetna Insurance Co. v. Poole and Kent Co.*, 303 F.Supp. 963 (S.D.Fla 1969) (surety had priority over assignee bank; reiterating "the general rule of suretyship law that ... the surety acquires an equitable lien against any sum due its principal remaining in the hands of the one for whose protection the bond was written").

In *Centex-Simpson*, *supra*, based on its analysis of the legal precedent, the Court concluded: "the doctrine of equitable subrogation, grounded in equity not contract, protects the Miller Act completing surety by ensuring that such surety has priority over other parties with respect to either unpaid progress payments or retainages of the defaulting subcontractor." 795 F.Supp. at 40. The Court further explained: "… 'the 'total fund' remaining in the [owner]'s possession, to the extent the surety has obligations arising under the contract, is available to the surety.'" *Id.* at n.12, *quoting Balboa Insurance Co. v. U.S.*, 775 F.2d 1158, 1163 (D.C.1985). In other words: "'[The surety] is subrogated not only to the right of the [owner] to pay laborers and materialmen from funds retained out of progress payments, but also to the [owner]'s right to apply to the cost of completion the earned but unpaid progress payments in its hands at the time of default.'" *Id., quoting National Shawmut Bank*, 411 F.2d at 848. Stated otherwise: "'Courts make no distinction between earned progress payments and retained percentages in determining the surety's equitable rights upon the contractor's default.'" *Id., quoting National Surety Corp. v. U.S.*, 319 F.Supp. 45, 49 (N.D.Ala.1970).

As the Miller Act completing surety in this case, St. Paul's equitable subrogation rights prevail over any other competing claim to the Contract proceeds. Significantly, as a matter of law, St. Paul's equitable subrogation rights relate back to <u>April 20, 1999</u>, the date of execution of the Performance Bond. *See* SMF 2. On the same date, ARC and its co-indemnitors also executed an Agreement of Indemnity "for the purpose of inducing St. Paul to become surety on the bond." *See* SMF 3. Under the terms of the Agreement of Indemnity, all Contract proceeds payable to ARC were held in trust for the payment of obligations incurred by St. Paul. *Id.* at App. 9, ¶5. Moreover, under the terms of the

Agreement of Indemnity, ARC also assigned to St. Paul any and all of its rights to the Contract proceeds as of April 20, 1999. *Id.* at App. 10, ¶10.

Thus, approximately five months before the alleged Assignment of the Contract proceeds by ARC to Classical, dated September 16, 1999, St. Paul's equitable subrogation rights to these proceeds had accrued and, in addition, ARC had assigned these proceeds to St. Paul. In effect, assuming *arguendo* the validity of the purported Assignment dated September 16, 1999, any rights that ARC could have assigned to Classical were inferior to St. Paul's equitable subrogation and prior indemnification and assignment rights. Thus, until and unless St. Paul is fully compensated for the costs and expenses it incurred as the performing surety, in an amount not less than $8,431,876 (*see* SMF 8), Classical has no right to the Contract proceeds.

**C. The Court Must Dismiss Classical's Claim Under The August 31, 2004 Judgment Because the Contract Receivables Are Not Part of ARC's Available Assets Due to St. Paul's Pre-existing and Superior Rights, as a Matter of Law, Under the Doctrine of Equitable Subrogation, Indemnification, Assignment and St. Paul's August 2002 Takeover Agreement to Complete the Project**

As the Court in *Centex-Simpson, supra,* reasoned, "the funds in question never became the property of [the defaulted contractor], which did not complete its performance as a []contractor, and, hence, FDIC's security interest in [the defaulted contractor's] accounts receivable does not include the earned but unpaid payments … . As a result, those funds cannot be found to be an asset 'acquired by' [the defaulted contractor] and, therefore, by the FDIC." 795 F.Supp. at 39. Similarly, in this case, because ARC did not complete its performance under the Contract, but rather, St. Paul completed the Project pursuant to a Takeover Agreement with the Government, the remaining Contract funds are not assets acquired by ARC.

Specifically, on July 29, 2002, Defendant issued a Contracting Officer's Final Decision terminating ARC's Contract for alleged default on the Project. *See* SMF 6. On August 7, 2002, St. Paul entered into a Takeover Agreement with the Government to complete the Project. *See* SMF 7. Pursuant to the August 7, 2002 Takeover Agreement between St. Paul and the Government, St. Paul assumed the role of the contractor to perform work on the Project and to receive all Contract proceeds. *Id.*; *see also*, *Preferred National Insurance Co, supra,* 54 Fed.Cl. at 603 ("surety may assert contract rights of its own arising out of a separate agreement to take over for a defaulting contractor").

A surety who has executed a take-over agreement fixing the surety’s right to payment of unpaid prior earnings and fulfilled its obligations under a performance bond will have priority over the IRS, Government agencies, and any contractor assignees. *See Trinity Universal Ins. Co. v. United States*, 383 F.2d 317, 320-21 (5th Cir. 1967); *Security Ins. Co. v. United States*, 428 F.2d 838, 843 (Cl.Ct. 1970); FAR § 49.404(d). It is well established that the performing Surety's rights have priority with regard to earned but unpaid funds, retainage held by the obligee, as well as all other funds held by the obligee, whether they are for extras, bonuses, claims or incomplete work. As the Court of Claims explained almost 60 years ago, "the surety, ... having stepped in and completed the contract work upon default of the original contractor, is entitled, as against the plaintiff [], as assignee of the contractor, to recover the balance due from the Government under the contract for performance of the work called for thereby. Since the Government might have used and applied the earned as well as the unearned portion of the contract price toward completion, the surety having completed the work called for by the contract is

entitled to the balance of the contract price due." *Hardin County Sav. Bank v. United States*, 65 F.Supp. 1017 (Ct.Cl. 1946).

The Federal Acquisition Regulations ("FAR") specifically address the effect of a take-over agreement on the surety's right to unpaid earnings of the defaulting contractor. FAR § 49.404 (e)(1). The FAR recognizes that the surety is entitled to unpaid earnings, and will have priority over debts due to the Government, if the unpaid earnings are required to permit payment of the completing surety's actual costs and expenses.

Thus, in this case, all the Contract funds payable by the Government under the Contract are available to compensate St. Paul for its actual costs and expenses incurred in the completion of the work. Because the remaining Contract receivables are substantially less than St. Paul's un-reimbursed completion costs, which are in excess of $8,431,876 (*see* SMF 8), no portion of the Contract receivables can be considered assets of ARC. Therefore, these funds are not available to satisfy any judgment against ARC.

WHEREFORE, Plaintiff ARC respectively requests the Court for an order dismissing Intervenor Classical's Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted this 24th day of August 2005.

AMERICAN RENOVATION AND
CONSTRUCTION COMPANY

By Counsel:

s/- Harish Mirchandani
HARISH C. MIRCHANDANI
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
hmirchan@wthf.com

Of Counsel:

ROBERT G. WATT, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
Ph: (703) 749-1000
Fax: (703) 893-8029
rwatt@wthf.com